R. Joseph Barton, CA Bar No. 212340
Matthew A. Smith
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile:  (202) 408-4699
Email:  jbarton@cohenmilstein.com
        msmith@cohenmilstein.com

Michelle L. Roberts, CA Bar No. 239092
Cassie M. Springer, CA Bar No. 221506
SPRINGER & ROBERTS LLP
410 12th St., Suite 325
Oakland, CA 94607
Telephone: (510) 992-6130
Facsimile:  (510) 280-7564
Email: michelle@ssrlawgroup.com
        cassie@ssrlawgroup.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES L. BUSH<br><br>Plaintiff,<br><br>VS.<br><br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON; HYUNDAI MOTOR AMERICA.<br><br>Defendants. | Case No:  14-1507<br><br>**COMPLAINT FOR DECLARATORY, INJUNCTIVE, EQUITABLE AND OTHER RELIEF (ERISA)**<br><br>CLASS ACTION |

Plaintiff James Bush, by and through his counsel, alleges as follows:

### NATURE OF THE ACTION

1.      This is a civil enforcement action brought pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 et seq., by Plaintiff, on behalf of himself and a Class of veterans who honorably served in the United States Armed Forces, were injured as a result of their military service and now are participants in an ERISA-covered

disability plan by which their benefits are provided pursuant to a group long-term disability ("LTD") insurance policy offered by Liberty Life Assurance Company of Boston ("Liberty Life").  In this action, Plaintiff alleges that Defendant Liberty Life has improperly interpreted its Policy to reduce the benefits required to be paid under the policy by the amount of benefits that veterans receive from the United States Government (through the Veterans Administration) as a result of the injuries sustained during their military service ("Veterans Disability Compensation").

2.     No written document discloses, as required under ERISA, that payment under the Liberty Life Long Term Disability Policy ("Liberty Life LTD Policy") will be offset by Veterans Disability Compensation.  Nor can the written terms of the Liberty Life LTD Policy be construed, under the rules of interpretation, to provide for an offset of Veterans Disability Compensation. Nonetheless, Liberty Life has interpreted certain undefined terms in its own policy in such a way to reduce the amount that it must pay to veterans who suffered wartime injuries, and at least in the case of Plaintiff, interpreted the Policy in such a way to result in him currently receiving no disability payment from Liberty Life, to demand immediate "repayment" of thousands of dollars previously paid, and to hire a debt collection agency to hound him for payment.

3.     This action seeks a determination that Plaintiff and the Class are entitled to receive benefits under the terms of Liberty Life LTD Policy without an offset for the amount received in Veterans Disability Compensation or alternatively that Liberty Life failed to properly disclose the offset and an order reforming the terms of the policy to require payment without such an offset. Additionally, Plaintiff requests that Liberty Life be required to disgorge any profits earned as a result of its wrongful offset of such benefits.  Alternatively, Plaintiff requests that Liberty Life be enjoined from collecting alleged overpayments which it is not entitled to collect under Ninth Circuit law. Finally, this action also seeks a determination on behalf of a separate Class that the specific plan through which Plaintiff received his benefits be determined not to have been established pursuant to a written instrument as required by ERISA and that his former employer and the sponsor of the Plan, Hyundai Motor America, be required to draft such a document.

**JURISDICTION AND VENUE**

4.      **Subject Matter Jurisdiction**.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(a) & (e), 29 U.S.C. § 1132(a) & (e).

5.      **Personal Jurisdiction**.  This Court has personal jurisdiction over Defendants because Defendants transact business in, and have significant contacts with, this District, and because ERISA provides for nationwide service of process pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

6.      **Venue.**  Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), for at least the following reasons:

       (a)      Defendants may be found in this District because they transact business in, and/or have significant contacts with this District; and/or

       (b)      At least some of the alleged breaches took place in this District because, upon information and belief, there are class members who have been or will be denied the benefits sought through this action and should have received or should receive those benefits in this District.

**PARTIES**

7.      Plaintiff James L. Bush is a former employee of Hyundai Capital America, Inc., a captive auto finance company affiliated with Hyundai Motor America, Inc.  Mr. Bush resides in Orange, California.  As a result of his employment with Hyundai, Plaintiff is and has been a participant within the meaning of ERISA § 3(7), in the Hyundai Motor America Group Disability Income Plan ("Hyundai LTD Plan" or the "Plan").  Prior to his employment at Hyundai, Plaintiff served in the United States Marine Corps during the Vietnam War and was honorably discharged in 1972.

8.      Defendant Hyundai Motor America ("Hyundai") is a wholly-owned subsidiary of Hyundai Motor Company which in turn is a South Korean multinational automotive manufacturer headquartered in Seoul, South Korea.  Defendant Hyundai is the Sponsor of the Hyundai LTD Plan within the meaning of ERISA § 3(16)(B) according the Summary Plan Description ("SPD") of the Hyundai LTD Plan.  Defendant Hyundai Motor America is also the Plan Administrator of the

Hyundai LTD Plan within the meaning of ERISA § (3)(16)(A) according to the Summary Plan Description ("SPD") of the Hyundai LTD Plan.

9.     Defendant Liberty Life Assurance Company of Boston is an insurance company and is a subsidiary of Liberty Mutual Insurance Company.  Liberty Life markets and sells, among other products, group disability insurance policies to companies in multiple states, including in California, Oregon, and Washington, which are substantially similar. For those group disability policies, including the Hyundai LTD Plan, Liberty Life is the claims administrator of the Plans and payor of benefits under the Plan.  As Liberty Life is the entity under those plans that makes the decision about the persons eligible for benefits and the decisions about the benefits to be paid under the policy that it issues under those plans, Liberty Life serves as the *de facto* plan administrator under those Plans within the meaning of ERISA § 3(16)(A).  Regardless of its status as the plan administrator, Liberty Life is a fiduciary within the meaning of ERISA § 3(21) as a result of its role in deciding benefit claims under those Plans for which Liberty Life is the insurer issuing group insurance policies.

## CLASS ACTION ALLEGATIONS

10.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class (the "Liberty Life Class") consisting of the following:

(1)     All veterans who were honorably discharged from service in the United States Armed Forces and who are participants in an ERISA-covered long term disability plan offered by their employer pursuant to a long-term disability policy, contract, certificate, or agreement (collectively an "LTD Policy") offered by Liberty Life Assurance Company of Boston and who are residents of California, Montana, Oregon or Washington (or were residents of those states at the time that Liberty Life determined they were eligible to receive or were receiving long term disability benefits), for which the LTD Policy

(a)     provides that the disability benefits paid may be offset by income by an amount for which the covered person is eligible under (i) Workers' or Workmen's Compensation Law; (ii) occupational disease law; (iii)  any compulsory benefit act or law; or (iv)  any other act or law of like intent;  and

(b)     does not specifically identify veterans benefits as an offset under the Policy; and

(c)      either (i) covers or covered residents of the State of Washington or State of California (regardless of whether the LTD Policy contains a discretionary clause) or (ii) covers or covered residents of the State of Oregon or State of Montana and does not contain a discretionary clause.

(2)      The beneficiaries of any such participants.

11.      Plaintiff also brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class (the "Hyundai Class") consisting of all veterans who were honorably discharged from service in the United States Armed Forces and who are participants in the Hyundai Motor America Group Disability Income Plan and their beneficiaries.

12.      Excluded from the Classes are persons who had decision-making or administrative authority relating to the establishment, administration, modification, funding, or interpretation of the Hyundai LTD Plan or persons who had decision-making or administrative authority relating to the establishment, administration, modification, funding, or interpretation of any other employee welfare benefit plan through which the Liberty Life policy, contract, certificate, or agreement is offered.

**Numerosity and Impracticability of Joinder**

13.      Joinder of all members of the Liberty Life Class is impracticable based on the size and geographic diversity of the Class.  Based on the following information, the Liberty Life Class consists of more than a thousand veterans (plus their beneficiaries) who reside in the States of California, Montana, Oregon, and Washington:

(a)      According to marketing materials available on the website of Liberty Life's parent, http://www.libertymutualgroup.com/docs/1240017326499/group-disability.pdf, Defendant Liberty Life "managed more than 200,000 disability claims in 2010 and currently cover[s] *more than two million employees*" nationwide in its group long term disability plans and claims to be the nation's "fastest-growing long-term disability carrier."

(b)      As more than 11% of the total U.S. population lives in the state of California, approximately 220,000 California residents are participants in a group long-term disability plan insured by Liberty Life.  According to the U.S. Department of

Veterans Affairs, http://www.va.gov/opa/publications/factsheets/ss_california.pdf, over 251,000 California residents, or 0.7% of the total population of California, receive monthly Veterans Disability Compensation.  Based on this information, more than 1,500 veterans in California who receive Veterans Disability Compensation and are participants in long-term disability plans with coverage underwritten by a Liberty Life LTD Policy.

(c)     As more than 2% of the total U.S. population lives in the State of Washington, approximately 40,000 Washington residents are participants in a group long-term disability plan insured by Liberty Life.  According to the U.S. Department of Veterans Affairs, http://www.va.gov/opa/publications/factsheets/ss_washington.pdf, over 95,000 Washington residents, or 1.3% of the total population of Washington, receive monthly Veterans Disability Compensation.  Based on this information, more than 500 veterans in the State of Washington receive Veterans Disability Compensation and are participants in long-term disability plans with coverage underwritten by a Liberty Life LTD Policy.

14.     Joinder of all members of the Hyundai Class is impracticable because the Hyundai Class consists of all participants in the Hyundai LTD Plan who are veterans (regardless of their current disability status) and their beneficiaries.  Section 1 of the insurance policy issued by Defendant Liberty Life to Hyundai Motor America states that all employees of Hyundai Motor America and Hyundai Capital America are eligible to participate in the Hyundai LTD Plan.  According to the most recent Form 5500 filed by Defendant Hyundai, there are approximately 1,649 participants in the Hyundai LTD Plan covered by Liberty Life.  As approximately 13% of the overall United States population consists of veterans, the number of veteran-participants in the Hyundai Plan is reasonably estimated at 214.

**Commonality**

15.     Plaintiff's claims raise common questions that will have common answers for each member of the Liberty Life Class with respect to liability.  The central question in this case for the Liberty Life Class is whether Veterans Disability Compensation may be used to offset LTD benefits

under Liberty Life's LTD Policy which provides coverage for all members of the Liberty Life Class. This question will be resolved by interpreting the terms of the written policy and/or the other disclosures issued by Defendant Liberty Life.  As such, the issues of liability are common to all members of the Liberty Life Class.

16.     The issues regarding relief are also common to the members of the Liberty Life Class. The requested relief consists primarily of a declaration that the members of the Liberty Life Class are entitled to LTD benefits under the Liberty Life LTD Policy without an  offset of their Veterans Disability Compensation, an order requiring Liberty Life to provide benefits consistent with that determination, disgorgement of any profits earned on any wrongfully withheld benefits and/or a declaration that Defendant Liberty Life may not seek equitable restitution of allegedly overpaid LTD benefits from members of the Liberty Life Class.

17.     The issues of liability and relief are common to all members of the Hyundai Class. The central issues for the Hyundai Class concern whether Defendant Hyundai properly established the Plan pursuant to a written instrument as required under ERISA, whether Defendant Hyundai or Liberty Life issued an SPD that complied with ERISA, and an order requiring them to do so.

**Typicality**

18.     Plaintiff's claim is typical of the claims of the other members of the Liberty Life Class because his claims arise from the same event, practice and/or course of conduct as other members of the Class.  Plaintiff, on behalf of the Class, challenges Defendant Liberty Life's interpretation of a written policy document, which uniformly defines the types of income that may be used to offset benefits under the Plan and whether Veterans Disability Compensation is either included or was properly disclosed in the SPD, as well as Defendant Liberty Life's practice of seeking to recover allegedly overpaid benefits from Plaintiff and members of the Liberty Life Class.

19.     Plaintiff's claim is typical of the claims of the other members of the Hyundai Class because Plaintiff challenges the adequacy of the documents required under ERISA that are required to be made available and provided to all participants in the Hyundai LTD Plan.

**Adequacy**

20.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Liberty Life Class and the Hyundai Class.

21.     Plaintiff does not have any interests antagonistic to or in conflict with the interests of the Liberty Life Class.  Plaintiff does not have any interests antagonistic to or in conflict with the interests of the Hyundai Class.

22.     Defendants have no unique defenses against Plaintiff that would interfere with Plaintiff's representation of the Liberty Life Class.  Defendants have no unique defenses against Plaintiff that would interfere with Plaintiff's representation of the Hyundai Class.

23.     Plaintiff has engaged counsel with extensive experience prosecuting class actions in general and ERISA class action litigation experience and expertise.

**Rule 23(b)(1)(B)**

24.     The requirements of Fed. R. Civ. P. 23(b)(1)(B) are satisfied as to the Liberty Life Class because the primary issues in this case involve questions concerning whether Veterans Disability Compensation may be used to offset amounts to be paid under the terms of the Liberty Life LTD Policy.

25.     Administration of an ERISA plan requires that all similarly situated participants be treated consistently.  As such, the Liberty Life LTD Policy must be interpreted consistently for all eligible participants in any plan which is funded through the Liberty Life LTD Policy.  The same or substantially similar terms in the Liberty Life LTD Policy must be interpreted consistently for all covered participants regardless of whether they are in the same plan.  As a result, resolution of whether an offset of Veterans Disability Compensation under the Liberty Life LTD Policy in an action by a participant in one such plan would be dispositive, as a practical matter, of the interests of other participants in the same Plan as well as participants in other plans who are subject to the same or essentially similar policy terms.

26.     The requirements of Fed. R. Civ. P. 23(b)(1)(B) are satisfied as to the Hyundai Class because a determination about whether there was a legally sufficient plan document or SPD as required by ERISA would be dispositive of the interests of other participants in the Plan.

**Rule 23(b)(1)(A)**

27.     The requirements of Fed. R. Civ. P. 23(b)(1)(A) are also satisfied because Defendant Liberty Life has a legal obligation to interpret and apply policy terms governing whether LTD benefits may be offset by Veterans Disability Compensation consistently for all similarly situated participants who are eligible for benefits under the Policy.  As the primary issues in this case involve the interpretation of the terms of the Liberty Life LTD Policy, the adequacy of disclosures provided to participants, conflicting interpretations of the same Policy and ERISA-mandated disclosures create the risk of establishing incompatible standards of conduct for Defendant Liberty Life as well as the named fiduciaries, other than Liberty Life, of those plans.

28.     The requirements of Fed. R. Civ. P. 23(b)(1)(A) are also satisfied for the Hyundai Class because Defendant Hyundai, as the Plan Sponsor and the named Plan Administrator of the Plan, and Defendant Liberty Life, as either the *de facto* Plan Administrator and/or the entity actually responsible for drafting the disclosures provided to plan participants, must draft a single written instrument and summary plan description and provide uniform disclosures about the Plan to all participants.

**Rule 23(b)(2)**

29.     The requirements of Fed. R. Civ. P. 23(b)(2) are met in this action as to the Liberty Life Class.  Upon information and belief, Defendant Liberty Life issues the same or substantially similar policies that cover all members of the Class.   As the fiduciary interpreting the terms of its Policy, Defendant Liberty Life is required to interpret the same or substantially similar terms in the Liberty Life LTD Policy consistently for all covered participants regardless of whether they are in the same plan.  As such, and unless Defendant Liberty Life has acted arbitrarily in its interpretation of its own Policy terms, Defendant Liberty Life has acted or refused to act on grounds that apply generally to the Class.

30.     The primarily relief sought on behalf of the Liberty Life Class is a declaration of their right to receive LTD benefits without an offset for their Veterans Disability Compensation, and/or a declaration that Defendant Liberty Life cannot seek recoupment of allegedly overpaid benefits from

the Class.  As such, final declaratory and injunctive relief is appropriate with respect to both the Liberty Life Class as a whole.

31.    The requirements of Fed. R. Civ. P. 23(b)(2) are met in this action as to the Hyundai Class. Defendants Liberty Life and Hyundai Motor America are alleged to have provided the same disclosures to all members of the Hyundai Class, and/or Hyundai failed to establish and maintain the Hyundai LTD Plan pursuant to a written instrument.  As such, the relief to the Hyundai Class will also be on order that uniformly affects all members of the Class.

**Rule 23(b)(3)**

32.    The requirements of Fed. R. Civ. P. 23(b)(3) are met in this action as to the Liberty Life Class because (a) the questions of law and/or fact, including whether Veterans Disability Compensation is eligible to be offset against LTD benefits according to policy terms that refer only to Workers' or Workmen's Compensation Law, occupational disease law, any compulsory benefit act or law, or any other act or law of like intent, are not only common, but will predominate over any individual questions; and (b) a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

33.    The requirements of Fed. R. Civ. P. 23(b)(3) are met in this action as to the Hyundai Class because (a) the questions of law and/or fact, including whether the SPD provided by Defendants Liberty Life and Hyundai Motor America to the Hyundai Class complies with ERISA and whether the Plan is established and maintained pursuant to a written instrument that complies with ERISA, are not only common, but will predominate over any individual questions; and (b) a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

34.    This case involves a determination about the interpretation of terms of the Liberty Life LTD Policy, which must be applied consistently to every participant whose LTD benefits are governed by the Liberty Life LTD Policy.  As such, the individual members of the Class do not have an interest in prosecuting lawsuits separately.

35.    Upon information and belief, there are no other pending lawsuits in which members of the Classes have raised similar allegations involving the Liberty Life LTD Policy.

36.     This is an appropriate forum for these claims because, among other reasons, jurisdiction and venue are proper, one of the Defendants is located in this District, and at least a portion of the Class resides in this District.

37.     There are no difficulties in managing this case as a class action.

## FACTUAL ALLEGATIONS

**Background of Plaintiff Bush**

38.     James Bush served in the United States Marine Corps beginning on June 18, 1968, and was involved in combat operations in the Vietnam War.  He was honorably discharged at the rank of Sergeant on June 17, 1972.

39.     Mr. Bush was employed by Hyundai Capital America from August 2008 until March 14, 2014.  Between August 2008 and October 2011, Plaintiff was as an Assistant Manager in Hyundai Capital America's Tustin, California office.  In October 2011, Plaintiff was hospitalized after suffering a severe nervous breakdown and was on medical leave from his employment at Hyundai between October 2011 and March 2014.  At some time prior to October 2011, Plaintiff became a participant in the Hyundai LTD Plan and was insured under the Liberty Life LTD Policy.

**The Hyundai LTD Plan**

40.     The Hyundai LTD Plan is an "employee welfare benefit plan" within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1).  The Hyundai LTD Plan is offered to eligible employees of Hyundai Motor America and Hyundai Capital America.

41.     According to a letter dated November 25, 2013 from Terry Prichard, Director of H.R. Operations at Hyundai Capital America, in response to Plaintiff's request to the Plan Administrator for a copy of the written instrument governing the Plan, the only document available describing the terms of the Hyundai LTD Plan consists of documents that Ms. Prichard sent to Plaintiff via email on September 9, 2013.  On September 9, 2013, Terry Prichard responded by email to a prior request from Plaintiff to the Plan Administrator by enclosing a copy of a "Certificate of Coverage" (the "Certificate") and a document entitled "Summary Plan Description."

42.     The "Summary Plan Description" explains that benefits under the Hyundai LTD Plan "are provided under the terms of" a Group Disability Income Policy issued by Defendant Liberty

Life to Hyundai Motor America ("the Liberty Life LTD Policy" or "Policy").  Upon information and belief, the terms of the Hyundai LTD Plan are essentially the same or substantially similar to the terms of disability policies that Liberty Life markets, sells, and provides to numerous employers (and employees) throughout California, Montana, Oregon, and Washington.

**Terms of the Liberty Life LTD Policy**

> *Employees Covered Under the Policy*

43.     Covered Person is defined in Section 2 of the Policy as an employee insured under the Policy.  Section 1 of the Policy, entitled "Schedule of Benefits" provides that "[e]mployees working a minimum of 30 regularly scheduled hours per week" are covered under the Policy. Section 3 of the Policy states that the employees of "Associated Companies . . . will be considered Employees of the Sponsor for purposes of this policy."  Section 1 of the Policy identifies Hyundai Capital America as an Associated Company.

> *Persons Qualified To Receive Benefits Under the Policy*

44.     Section 4 of the Policy provides that "[w]hen Liberty [Life] receives proof that a Covered Person is Disabled due to Injury or Sickness and requires the regular attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period."  As such, persons who meet the definition of disabled are eligible to receive benefits under the Policy.

45.     "Disability" or "Disabled" is defined in Section 2 of the Policy:

(1)     For persons other than pilots, co-pilots and crew of an aircraft:

(a)     **"Disability" or "Disabled"** means during the Elimination Period and the next 24 months of Disability, the Covered Person is unable to perform all of the material and substantial duties of his occupation on an Active Employment basis because of Injury or Sickness; and

(b)     After 24 months of benefits have been paid, the Covered Person is unable to perform, with reasonable continuity, all of the material and substantial duties of his own or any other occupation for which he is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity.

(2)     With respect to Covered Persons employed as pilots, co-pilots and crew of an aircraft:

**"Disability" or "Disabled"** means because of Injury or Sickness, the Covered Person cannot perform the material and substantial duties of any gainful occupation for which he is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity.

*Benefits Under the Policy*

46.     The Liberty Life LTD Policy provides LTD benefits in the amount of 60% of a participant's earnings prior to the participant's disability.  Section 1 of the Policy describes the "Amount of Insurance Benefits" as 60% of a covered employee's "Basic Monthly Earnings" up to a maximum of $15,000 per month, "**Less Benefits from Other Income as outlined in Section 4**". (emphasis in original).

47.     Section 2 of the Policy defines "Basic Monthly Earnings" as "the Covered Person's monthly rate of earnings from the Sponsor in effect immediately prior to the date Disability or Partial Disability begins."

48.     Section 4 of the Policy also provides that "[t]he Disability Benefit **payable** will never be less than the Minimum Monthly Benefit shown in the Schedule of Benefits."  (emphasis added). The Schedule of Benefits is set forth in Section 1 of the Policy and provides for a "Minimum Monthly Benefit" equal to "[t]he greater of $100 or 10% of the Covered Person's gross Monthly Benefit."  The "Gross Monthly Benefit" is defined in Section 2 to mean "the Covered Person's Monthly Benefit before any reduction for Benefits from Other Income and earnings."

49.     Section 7 of the Policy, in a paragraph entitled "Time of Payment of Claims," provides that Liberty Life will pay benefits under the Policy "at least monthly."

*Offsets from Other Income Under the Terms of the Policy*

50.     Section 4 of the Policy describes a covered person's "Benefits from Other Income" that may be offset against the person's LTD benefits awarded under the Policy as:

> 1. The amount for which the Covered Person is eligible under:
>    a. Workers' or Workmen's Compensation Law;
>    b. occupational disease law;
>    c. any compulsory benefit act or law; or
>    d. any other act or law of like intent.
>
> 2. The amount of any disability benefits which the Covered Person is eligible to receive under:
>    a. any other group insurance plan of the Sponsor;
>    b. any governmental retirement system as a result of his job with the Sponsor.

3. The amount of benefits the Covered Person receives under the Sponsor's Retirement Plan as follows:  (a) The amount of any Disability Benefits, or Retirement Benefits the Covered Person voluntarily elects to receive as retirement payment under the Sponsor's Retirement Plan; and (b) the amount the Covered Person is eligible to receive as retirement payments when you reach the later of age 62, or normal retirement age as defined in the Sponsor's plan.  [or]

4. The amount of Disability and/or Retirement Benefits under the United States Social Security Act, the Canada Pension Plan, the Quebec Pension Plan, or any similar plan or act, for which:
    a. the Covered Person receives or is eligible for; and
    b. his spouse, child or children receives or are eligible for because of his Disability; or
    c. his spouse, child or children receives or are eligible for because of his eligibility for Retirement Benefits.

These Benefits from Other Income, except Retirement Benefits, must be payable as a result of the same Disability for which we pay a benefit.

51.    Section 4 of the Policy also provides that the Monthly Benefit will not be reduced due to any cost of living increase payable under the Benefits from Other Income provision of the Policy.

52.    Section 7 of the Policy requires "Liberty will provide a Certificate to the Sponsor for delivery to each Covered Person" and requires the Certificate "to state:"

1.   the name of the insurance company and the policy number;
2.   a description of the insurance provided;
3.   the method used to determine the amount of benefits;
4.   to whom benefits are payable;
5.   limitations or reductions that may apply;
6.   the circumstances under which insurance terminates; and
7.   the rights of the Covered Person upon termination of this policy.

53.    Section 7 of the Policy provides that "[i]f the terms of a Certificate and this policy differ, this policy will govern."  The "Certificate of Coverage" and the "Policy" are two separate documents.

**The Discretionary Clause in the Liberty Life LTD Policy Is Inapplicable**

54.    Section 7 of the Liberty Life LTD Policy purports to provide that Defendant Liberty Life "shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder.  Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding."  Section 7 of the "Certificate of Coverage" contains substantially the same language.

-14-

55.     California Insurance Code § 10110.6 renders void and unenforceable any grant of discretionary authority to interpret the terms of a disability insurance policy that provides coverage for California residents and that was issued or renewed on or after January 1, 2012.

56.     Discretionary clauses in disability insurance policies are void and unenforceable in Washington pursuant to Washington Administrative Code ("W.A.C.") § 284-96-012(1) and Revised Code of Washington ("R.C.W.") § 48.18.510.

57.     Between at least 2001 and 2008, if not thereafter, the Montana Commissioner of insurance disapproved any insurance policy or contract containing a "discretionary clause" (i.e. a clause that provides the insurer with the discretion and authority to determine the benefits and amounts payable and/or to construe and interpret all terms and provisions of the plan) pursuant to Mont. Code Ann. § 33–1–502.

58.     Since at least 2011, the Oregon Department of Consumer and Business Services has had a policy not to approve insurance policies containing discretionary clauses, pursuant to Oregon Revised Statues 742.005(3) & (4).

59.     The Liberty Life LTD Policy provides that it shall be renewed annually on January 1 of each year, beginning on January 1, 2011.  As a result, the Liberty Life LTD Policy was renewed before the denial of Plaintiff's claim for benefits on January 1, 2013.

60.     The first page of the Liberty Life LTD Policy issued to Hyundai, and upon information and belief all covered employers in California, provides that the governing jurisdiction of the Liberty Life LTD Policy is California and recognizes that the Policy is subject to the laws of California.  Upon information and belief, the Liberty Life LTD Policy issued to employers in the States of Montana, Oregon, and Washington similarly recognizes that the Policy is subject to the laws of those respective states.

61.     The first page of the Policy states the Policy's effective date is January 1, 2010, and that the "Policy Anniversary" occurs on January 1 of each year beginning in 2011.  The 2013 Liberty Life LTD Policy governing Liberty Life's decision to offset Plaintiff's Veterans Disability Compensation was renewed after January 1, 2012.  As such, Section 7 of the Policy granting Liberty Life discretion is void and ineffective under California Insurance Code § 10110.6, for any Liberty

Life Policy renewed after at least January 1, 2011.  Similar provisions in policies issued in the State of Washington are void and ineffective pursuant to W.A.C. § 284-96-012(1) and R.C.W. § 48.18.510, respectively.

**Liberty Life Awards Plaintiff Long Term Disability Benefits Under the Policy**

62.     Plaintiff's employer, Hyundai Capital America, submitted a claim in March 2012 on behalf of Plaintiff for LTD benefits under the Hyundai LTD Plan, for which funding and benefits are provided through a Liberty Life LTD Policy.

63.     According to notes produced by Defendant Liberty Life as part of the administrative record, during Liberty Life's initial interview with Plaintiff on March 17, 2012, Plaintiff advised that he "ha[d] filed claims with the VA for Agent Orange and PTSD and was told the Agent Orange Claim would be 30%, but ha[d] not heard anything from the PTSD claim."

64.     In a letter dated May 1, 2012, Defendant Liberty Life granted Plaintiff's claim for LTD benefits.  The May 1, 2012 letter explained that Defendant Liberty Life had determined that Plaintiff's date of disability began on October 30, 2011.  As a result of that determination, the May 1, 2012 letter explained that his benefits would begin on April 27, 2012 and the 24-month maximum benefit period would expire on April 26, 2014.

65.     The May 1, 2012 letter also explained that the Liberty Life Policy "provides benefits at 60% of [his] pre-disability earnings less benefits from other income."  The May 1, 2012 letter identified "benefits from the United States Social Security Act, the Public Employees' Retirement Fund, and Workers' Compensation benefits" as "other income" that would be eligible to serve to offset benefits under the Liberty Life Policy.  Nothing in the May 1, 2012 letter mentioned any form of benefits from the Veterans Administration.  Upon information and belief, the May 1, 2012 letter was substantially similar to letters sent to and received by other members of the Liberty Life Class.

66.     No other written communication from Liberty Life or the Hyundai Plan to Plaintiff prior to August 2013 ever identified income from any form of payment from the Veterans Administration as income eligible for offset under the Liberty Life LTDPolicy.

67.     As a result of its determination reflected in the May 1, 2012 letter, Defendant Liberty Life awarded Plaintiff a monthly gross disability benefit of $3,468.27.  Defendant Liberty Life

arrived at this benefit amount by calculating sixty percent of Plaintiff's pre-disability salary from Hyundai Capital America.

**The Department of Veterans Affairs Approves Plaintiff for Veterans Disability Benefits**

68.     Plaintiff Bush submitted claims for service-connected disability compensation ("Veterans Disability Compensation") to the Department of Veterans Affairs (the "VA") in January and March 2012.

69.     In a letter dated February 1, 2013, the VA informed Plaintiff (the "VA Letter") that Plaintiff's claim for Veterans Disability Compensation was granted.  The VA letter attached a Rating Decision dated January 31, 2013.

70.     The February 1, 2013 VA Letter explained that the VA had determined that Plaintiff is (a) 100% disabled due to post-traumatic stress disorder, major depressive disorder, panic disorder, and cognitive disorder due to traumatic brain injury related to Plaintiff's military service; (b) 30% disabled due to each of the following related to Plaintiff's military service: migraine headaches, peripheral neuropathy of the lower left and right extremities; and (c) 20% disabled due to diabetes related to his military service.  As a result, the VA concluded that Plaintiff's combined rating was 100% disabled as a result of conditions related to military service.

71.     The VA Letter explained that Plaintiff is entitled to receive special monthly compensation because Plaintiff is housebound and has lost the use of a creative organ.  Page 4 of the Rating Decision noted that Plaintiff's condition warranted "the highest scheduled evaluation allowed under law for post-traumatic stress disorder."

72.     The VA Letter explained that Plaintiff was entitled to benefits awarded to him effective February 1, 2012 in the amount of $3,354.00, with benefits in the amount of $3,409.00 effective as of December 1, 2012 as a result of a cost of living adjustment.  The VA Letter also explained that this payment "include[d] an additional amount *for your spouse*, Janet."

**Liberty Life Offsets Plaintiff's LTD Benefits With His Veterans Disability Compensation**

73.     Between May 2012 and July 2013, Defendant Liberty Life made no written inquiries requesting information about any income or benefits that Plaintiff received from any other sources.

-17-

74.     Along with a letter dated July 24, 2013, Defendant Liberty Life sent Plaintiff a questionnaire and requested additional information from Plaintiff about his disabilities and his sources of income. In response to Liberty Life's letter, Plaintiff completed the questionnaire in which he disclosed that he had begun receiving Veterans Disability Benefits in February 2013.

75.     Defendant Liberty Life responded with a letter dated August 14, 2013 (the "Claim Denial Letter") informing Plaintiff that the Liberty Life LTD Policy "requires [Liberty Life] to reduce your disability benefits by the amount of income you receive from other sources, including VA benefits."  The letter quoted only the following portion of the Policy in support of Liberty Life's position:

> *Benefits from Other Income means those benefits shown below*:
>
> > *1. The amount for which the Covered Person is eligible under:*
> > *a. Workers' or Workmen's Compensation Law;*
> > *b. occupational disease law;*
> > *c. any compulsory benefit act or law; or*
> > *d. any other act or law of like intent [...].*

76.     The August 14, 2013 letter also advised that Liberty Life "will begin reducing your disability benefit from Liberty to offset your VA benefits" and requested payment of the amount equal to the VA benefits "immediately."

77.     Prior to August 14, 2013, Defendant Liberty Life had issued no communication in writing indicating to Plaintiff that his disability payments under the Plan were subject to offset by the amount of his VA benefits.

78.     After receiving the August 14, 2013 letter, Plaintiff sent a letter on September 30, 2013 to the Plan Administrator pursuant to ERISA § 104(b) and specifically requested "any communications to [him]self or other Plan participants, that explain 'in a manner calculated to be understood by the average plan participant' either ….  The precise meaning of the phrase 'any compulsory act or law' … or "whether and how Veteran's Disability Compensation is considered 'other income' under the Plan."  In response to that request, Plaintiff received no responsive documents.  In addition, the administrative record produced by Defendants does not include a communication to any participant in the Plan that Veterans Benefits was considered "other income" under the Liberty Life LTD Policy.

79.     Plaintiff received from Liberty Life an adjusted gross benefit payment of $346.83 on August 25, 2013.  The payment reflected an offset of $3,121.44 that Liberty Life attributed to Plaintiff's Veterans Disability Compensation.

80.     At approximately the same time, in a letter dated August 26, 2013, Liberty Life informed Plaintiff that it would also begin deducting from his LTD benefit award the amount that he was awarded in Social Security Disability Insurance ("SSDI") benefits.  As explained in the monthly explanation of benefits form sent to Plaintiff for the period ending August 26, 2013, Liberty Life reduced Plaintiff's LTD benefits by $3,121.44, the full amount of his Veterans Disability Compensation.  As explained in the explanation of benefits form for the following month, Liberty Life reduced Plaintiff's LTD benefits by $2,012 as an offset of Plaintiff's SSDI benefits and by an additional $1,109.44 to offset Plaintiff's Veterans Disability Compensation.  As a result of these offsets, Plaintiff's total monthly adjusted gross disability income benefit was $346.83.

81.     The amount of offsets imposed by Liberty Life is the maximum offset permitted under the terms of the Liberty Life LTD Policy.  As Section 1 of the Policy guarantees a "Minimum Monthly Benefit" of "10% of the Covered Person's gross Monthly Benefit," the maximum offset that Liberty Life can impose on Plaintiff is $3,121.44

82.     Without the offset for Veterans Disability Compensation, the monthly benefit that Liberty Life would be required to pay to Plaintiff would be approximately $1,456.27 instead of $346.83.

**Plaintiff Appeals and Exhausts Administrative Remedies Under the Liberty Life LTD Policy**

83.     Plaintiff requested an appeal of Liberty Life's decision to offset his LTD benefits by his Veterans Disability Compensation in a letter dated August 29, 2013.  In that letter, Plaintiff cited the Eighth Circuit decision in *Riley v. Sun Life and Health Insurance* and explained that the "Benefits from Other Income" section of the Liberty Life Policy was "very similar."  In addition, Plaintiff explained that the provision of the Policy on which Liberty Life relied in the Claim Denial Letter does not refer to VA Compensation/VA Benefits.  His letter noted that none of the terms in the definition of "Other Income" under the Liberty Life LTD Policy were defined and explained that "VA compensation is neither Disability, Pension, Workers' Compensation" and was not "a

-19-

compulsory benefit act or law." As such, his letter explained that the provisions on which Liberty Life relied did not entitle Liberty Life to offset his LTD benefits by his Veterans Disability Compensation.

84.     In a letter dated September 9, 2013 and signed by Deena M. LeBel, Disability Management Services ("the Appeal Denial Letter"), Liberty Life denied Plaintiff's appeal of Liberty Life's decision to offset Plaintiff's LTD benefits with his Veterans Disability Compensation. The Appeal Denial Letter explained that "We have determined that the VA benefits that you are receiving are subject to offset based only on the Policy language set forth below:

> *Benefits from Other Income*
>
> *Benefits from Other Income means those benefits shown below:*
>
> *1.     The amount for which the Covered Person is eligible under:*
>
> > *c.     any compulsory benefit act or law; or*
> >
> > *d.     any other act or law of like intent.*

85.     The Appeal Denial Letter explained only that "VA benefits are considered obligatory compensation for injuries to service men and women during military service and are subject to offset under the applicable Policy provisions set forth above."

86.     The Appeal Denial Letter also stated that Liberty Life would deduct the full amount of Plaintiff's Veterans Disability Compensation from his LTD benefits and that, after the deduction, his monthly adjusted gross benefit would be $346.83.

87.     In an email from Liberty Life to Terry Prichard, which Prichard copied and sent to Plaintiff in an email on September 27, 2013, Liberty Life advised that "[i]f after reviewing the policy and letter that was sent to him, if [Mr. Bush] does not agree – his next course of action would typically be to file a civil action against Liberty Mutual."

88.     As a result of Plaintiff's appeal of Defendant Liberty Life's adverse benefits decision, Plaintiff has exhausted his administrative remedies under the Plan and the Policy. Additionally, because neither the Claim Denial Letter nor the Appeal Denial Letter met the requirements of the SPD or ERISA § 503, Plaintiff's claim for benefits would be otherwise deemed exhausted.

**Liberty Life Attempts to Recover & Incorrectly Calculates the "Overpayment"**

89.     Liberty Life claimed in a letter dated September 3, 2013 that its LTD benefit payments made to Plaintiff for the period April 27, 2013 through July 26, 2013, which did not include an offset of Plaintiff's Veterans Disability Compensation, constituted an overpayment of his LTD benefits.  Even before Liberty Life decided Plaintiff's appeal, the September 3, 2013 letter demanded that Plaintiff pay Liberty Life $27,450.90 "due . . . upon receipt of this letter."

90.     Defendant Liberty Life sent a letter dated September 25, 2013 requesting that Plaintiff remit "$27,450.90 payable to Liberty Life Assurance Company of Boston" and advised that if payment of the entire amount was not received by October 9, 2013, Liberty Life would "begin applying [his] disability benefits to the overpayment until the balance is paid in full."

91.     Contrary to the statements in the September 3 and September 25, 2013 letters, Section 7 of the Liberty Life LTD Policy only requires that reimbursement for any payment be made within 60 days.  As there was no claim by Liberty Life of overpayment until the August 14, 2013 letter, no repayment was due until at least October 14, 2013.  As Plaintiff appealed this initial determination and there was no final determination until September 9, 2013, the reimbursement was not due under the terms of the Policy until November 9, 2013.

92.     Defendant Liberty Life informed Plaintiff in a letter dated October 9, 2013 that "since payment [of the $27,450.90] was not received by the requested due date of October 9, 2013, Liberty will apply [his] monthly benefit toward the overpayment until paid in full."  The Letter advised that "Liberty Life will withhold [his] monthly disability payment in the amount of $346.83 beginning with the next payment … on October 20, 2013."

93.     Beginning on October 20, 2013, Liberty Life has ceased making any further payments to Plaintiff pursuant to the Liberty Life LTD Policy.

94.     The October 9, 2013 letter advised that Liberty Life had engaged a debt collector to recoup the full amount of what Liberty Life claimed had been overpaid.  Plaintiff received correspondence dated October 10, 2013 from a debt collection agency, Lamont, Hanley & Associates, Inc., on behalf of Liberty Life demanding immediate payment of $27,450.90.

95.     The October 9, 2013 letter also advised that Liberty Life would "no longer withhold federal or state taxes" on the monthly benefit.  But Liberty Life continued to report the payment of $346.83 as income to the federal and state taxing authorities.  Such reporting would be incorrect as the amount that was originally paid was also reported to tax authorities.  To the extent that the earlier payments were merely advances on the VA Benefits as Liberty Life claims, Veterans Disability Compensation is not taxable.

96.     Liberty Life's overpayment demand insists upon Plaintiff repaying state and federal income taxes that were withheld from his benefit payments and that Plaintiff never received from Liberty Life.  Liberty Life's "overpayment" calculation did not account for state and federal income taxes withheld from his LTD payments.  As a result, even if entitled to repayment, Liberty Life's demand overstates the amount purportedly "overpaid" by at least $3,440.

**Plaintiff's Repeated Requests for Copies of the Plan Documents**

97.     As part of his August 29, 2013 Appeal letter, Plaintiff requested a copy of the Liberty Life LTD Policy.  Plaintiff repeated his request for an appeal and his request for a copy of the Policy in a letter that he sent to Liberty Life on September 9, 2013.

98.     Terry Prichard, Director of H.R. Operations at Hyundai Capital America, sent Plaintiff a copy of a "Certificate of Coverage" (the "Certificate") and a document entitled "Summary Plan Description" in an email on September 9, 2013.  Ms. Prichard did not send Plaintiff a copy of the Liberty Life LTD Policy.

99.     Plaintiff again requested a copy of the Liberty Life LTD Policy in emails to Terry Prichard on September 13 and 16, 2013.  Plaintiff notified Defendant Hyundai that "[he] need[ed] the actual policy to verify the definitions of other income" used to offset his LTD Benefits.  Plaintiff also notified Defendant Hyundai that he had "file[d] an appeal regarding [Liberty Life's] decision to offset" Plaintiff's LTD Benefits, and "to proceed is the reason I'm requesting a copy of the policy."

100.    Ms. Prichard responded in an email sent on September 27, 2013 that the "Certificate of Coverage" and the document entitled "Summary Plan Description" "is the only thing that is issued to employees."

101.    Although the "Certificate of Coverage" was provided to Plaintiff by Hyundai, it was drafted and provided to Hyundai by Liberty Life. Section 7 of the Liberty Life LTD Policy requires Liberty Life to provide the Certificate to Hyundai Motor America as the Sponsor of the Hyundai LTD Plan.  Terry Prichard informed Plaintiff that the Certificate and Summary Plan Description was provided to Hyundai by Liberty Life in an email dated September 23, 2013.

102.    In a letter sent on September 30, 2013 to the Plan Administrator of the Plan, Plaintiff requested that the Administrator provide him the latest updated SPD, Plan Document for the Hyundai LTD Plan, annual report, and any other instruments under which the Hyundai LTD Plan is established or operated, citing ERISA § 104(b), 29 U.S.C. § 1024(b)(4).

103.    In a letter dated November 25, 2013, Terry Prichard finally informed Plaintiff that the "Certificate of Coverage" and "Summary Plan Description" sent to Plaintiff on September 9, 2013, "is the only document that is available" describing the terms of the plan.

**The Liberty Life LTD Policy Does Not Permit an Offset By Veterans Benefits**

104.    In its Appeal Denial Letter, Defendant Liberty Life did not rely on the "Worker's or Workmen's Compensation Law" or the "occupational disease law" provisions in Section 4 to justify its offset of Veterans Benefits.  Instead, Liberty Life justified its offset "based on the Policy language" permitting an offset for amounts "for which the Covered Person is eligible under" either "c. any compulsory benefit act or law; or d. any other act or law of like intent" and by explaining that "VA benefits are considered obligatory compensation for injuries to service men and women during military duty."

*Veterans Benefits*

105.    There is no Veterans Benefit Act.  A variety of laws were consolidated and codified in Title 38 which provides a comprehensive array of benefits and services to veterans.  Title 38 includes a broad range of benefits, including life insurance policies, educational assistance, and loans to purchase or construct a primary residence.

106.    One of the benefits provided under Title 38, as set forth in 38 U.S.C. § 1110, is compensation for disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the

active military, naval, or air service, during a period of war ("Veterans Disability Compensation"). Such compensation is unavailable to veterans who have been dishonorably discharged or whose disability is the result of the veteran's wilful misconduct or abuse of alcohol or drugs.  Veterans Disability Compensation, like other forms of benefits awarded under Title 38, acts as an incentive and a form of recognition for members of the military who serve honorably.

107.    As explained by the website of the United States Department of Veterans Affairs, at http://www.benefits.va.gov/COMPENSATION/types-compensation.asp, "VA disability compensation provides monthly benefits to Veterans in recognition of the effects of disabilities, diseases, or injuries incurred or aggravated during active military service.  The program also provides monthly payments to surviving spouses, dependent children, and dependent parents in recognition of the economic loss caused by a Veteran's death during military service or, after discharge from military service, as a result of a service-connected disability."

*Veterans Disability Compensation Does Not Qualify As Income*

108.    The Liberty Life LTD Policy only permits offsets from "Other Income."  The term "income" is not defined in the Policy or the "Certificate of Coverage."

109.    As explained on the website of the United States Department of Veterans Affairs, http://www.benefits.va.gov/COMPENSATION/types-compensation.asp, Veterans Disability Compensation is "[a] tax-free monetary benefit paid to Veterans with disabilities that are the result of a disease or injury incurred or aggravated during active military service."

*Veterans Benefits Are Not Provided Pursuant to a Compulsory Benefit Act or Law*

110.    The Liberty Life LTD Policy does not define the phrase "compulsory benefit act or law."

111.    Compulsory benefit laws require private actors to participate in a particular state or federal benefits program.  For example, the federal social security laws are compulsory because they require private employers and employees to contribute and participate in an insurance-like system that funds benefits received by employees.  Similarly, the Railroad Retirement Act is compulsory because it compels participation by levying federal taxes on railroad companies, associations, labor organizations, and employees that are earmarked to fund benefits for qualifying former railroad

1   employees.  Finally, most state worker's compensation programs are compulsory because they

2   compel private actors to award or subsidize benefits on the basis of an employment relationship.

3   112.   Veterans Benefits generally and Veterans Disability Compensation specifically are

4   not "compulsory."  Veterans Disability Compensation is voluntarily provided by the United States

5   government because Congress has chosen to provide financial support to those injured during

6   military service.  Nothing compels the United States Congress to provide Veterans Disability

7   Compensation to veterans.  Nor does the United States Government compel any third party to

8   provide service-connected disability benefits to veterans.

9   *Veterans Disability Compensation Is Not Like Compulsory Benefits Acts or Laws*

10   *The Purposes and Intent*

11   113.   The purpose of Veterans Disability Benefits under Title 38, including Veterans

12   Disability Compensation under 38 U.S.C. § 1110 is to care for and support those who have served in

13   the Armed Forces of the United States and their families and to prevent them from being

14   disadvantaged by their military service.

15   114.   Compulsory benefit laws have different purposes than Veterans Disability Benefits

16   awarded under Title 38.  For example, the purpose of workers compensation is to allocate the cost of

17   workplace injuries to employers and their customers rather than society at large, to guarantee a no-

18   fault source of compensation for injured employees, to encourage workplace safety measures, and to

19   determine and limit the amount of employers' liability for workplace injuries.  Similarly, the purpose

20   of Social Security Disability Insurance, as provided in 42 U.S.C. § 423(d), is to provide replacement

21   compensation for workers who are no longer able to engage in any substantial gainful work existing

22   in the national economy.

23   *Qualification for Benefits*

24   115.   A veteran qualifies for Veterans Disability Compensation if the veteran suffers from a

25   disability that was caused or aggravated by his or her active-duty military service.  A veteran does

26   not need to show that the disability affects the veteran's earning capacity in order to qualify for

27   Veterans Disability Benefits.

28

116.     Loss of earning power is not a prerequisite to a veteran's entitlement to Veterans Disability Compensation.  Veterans Disability Compensation is not contingent upon a veteran's present employment.

117.     By contrast, most compulsory benefit laws, including those specifically listed as offsets by the Liberty Life LTD Policy, typically condition eligibility to receive benefits on employment.  For example, Social Security disability is conditioned upon employment and requires a claimant to show disability in his/her own occupation and an inability to work in any occupation for which the claimant is reasonably qualified.  Likewise, for Workers' Compensation benefits, the claimant must be able to show not only a disability, but also employment when injured and a corresponding loss of earning capacity.

*Calculation of Benefits*

118.     The amount of a veteran's benefits award for Veterans Disability Compensation is based on a disability rating assigned to reflect the severity of the veteran's service-connected disabilities.  The amount of benefits awarded in Veterans Disability Compensation is unrelated to the veteran's rank, length of service, or amount of pay received while serving.  The benefit award may be enhanced by special monthly compensation in cases of severe service-connected disability such as loss of one or more creative organs, if the veteran is housebound as a result of his or her injuries, or if the veteran is in need of regular medical or nursing assistance.  But Veterans Disability Compensation is not linked to a veteran's past relationship with an employer or to the veteran's pre-disability income.

119.     By contrast, the benefits provided by compulsory benefits laws frequently base the amount of benefits awarded on the amount of income earned during employment.  For example, an award under the social security disability is based on salary and work credit.

*The Standard for Awarding Benefits*

120.     The standard for awarding Veterans Disability Compensation is pro-claimant.  Pursuant to 38 U.S.C. § 5107(b), when a veteran submits a claim for service-connected disability benefits, the Secretary of Veterans Affairs must consider all lay and medical information, and when the evidence is in equipoise, "the Secretary shall give the benefit of the doubt to the claimant."

*The Funding Source*

121.   Veterans Disability Compensation is funded from the general budget of the Department of Veterans Affairs.  Veterans Disability Compensation is not funded by a tax on the employers and employees of a particular industry.

122.   By contrast, compulsory benefit laws, as the name implies, compel participation through a specific tax or specially imposed payment.  For example, the Black Lung Benefits Act requires coal mine operators to pay monthly payments and medical benefits directly to coal miners for diseases arising from their employment in coal mines.  Similarly, the Social Security program is funded through a special, specific federal payroll tax on employers and employees.  Likewise, Workers' Compensation benefits are funded by employers.

*Plaintiff's Veterans Disability Award Illustrates These Differences*

123.   Plaintiff's VA Letter and attached Rating Decision demonstrate many of the differences between Plaintiff's benefits and the categories of income explicitly eligible to be offset in the Liberty Life LTD Policy.

124.   Pages 1-3 of the Rating Decision explains that Plaintiff's Veterans Disability Compensation was awarded based on (1) whether Plaintiff's disability was connected to his military service, and (2) the rating assigned to each disability.  The "rating" for each disability is calculated based on a range of factors *other than* the impact of Plaintiff's condition on his ability to earn income.

125.   Page 4 of the Rating Decision notes that the VA's 100% evaluation of Plaintiff's post-traumatic stress disorder was based in part on his "impaired impulse control," "near-continuous depression," "suicidal ideation," "flattened affect," and "chronic sleep impairment."  These rating decisions are not based on Plaintiff's lost income or earning potential.

126.   Page 5 of the Rating Decision noted that the VA's 30% evaluation of Plaintiff's migraine headaches was established, even though these headaches *did not* cause "severe economic inadaptability."  This rating decision is not based on Plaintiff's lost income or earning potential.

127.   The VA letter also notified Plaintiff that he may be eligible for other benefits available to veterans, including health and other benefits for dependents, medical care provided by

the VA health system, tax benefits provided under state law, vocational rehabilitation and employment services, and waiver of government life insurance premiums.

## COUNT I:
### CLAIM FOR BENEFITS PURSUANT TO ERISA § 502(A)(1)(B)
**(On Behalf of the Liberty Life Class Against Defendant Liberty Life)**

128.   Plaintiff repeats and re-alleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

129.   ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) authorizes a plan participant to bring a civil action "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

130.   Pursuant to Section 7 of the Policy and the SPD, Defendant Liberty Life is the entity that receives and makes any decisions concerning claims, and receives and makes decisions regarding any appeals. Pursuant to the First Page of the Policy, Defendant Liberty Life is the entity which has agreed to and is ultimately responsible to pay benefits under the Policy.

131.   According to the first page of the Liberty Life LTD Policy, "[t]his policy is a legal contract and is issued" by Liberty Life in return for payment of premiums by the Plan Sponsor(s). As such, Defendant Liberty Life is obligated to pay benefits under the terms of the Policy to those eligible employees whose employers purchased the policy and paid premiums in the amounts required by the Policy, and therefore the Plan(s).

132.   Section 4 of the Liberty Life LTD Policy provides the only categories of income that may be offset against these benefits. None of the categories of income explicitly reference Veterans Benefits as income that can be used as a set-off under the Plan.

133.   As an insurance contract, the Liberty Life LTD Policy must be interpreted in light of the reasonable expectations of participants in the Plans whose employers provide disability benefits through the purchase of a policy from Liberty Life.

134.   Pursuant to California Insurance Code § 10110.6, and W.A.C. § 284-96-012(1) and R.C.W. § 48.18.510, Defendant Liberty Life is not entitled to any discretion in interpreting the terms

of the Plan regardless of the existence of discretionary clauses present in policies issued in those states.

135.    Veterans Disability Compensation is not and cannot reasonably be construed as a "Worker's or Workmen's Compensation law." Veterans Disability Compensation is not and cannot reasonably be construed as an "occupational disease law." Veterans Disability Compensation is not and cannot reasonably be construed as a "compulsory benefit act or law." Veterans Disability Compensation is not and cannot reasonably be construed as an "act or law of like intent" compared to "Worker's or Workmen's Compensation law, "occupational disease law," or "compulsory benefit act or law."

136.    To the extent that the terms in the Policy drafted by Liberty Life, including "Worker's or Workmen's Compensation law, "occupational disease law," "compulsory benefit act or law," and "act or law of like intent" are ambiguous in their application to Veterans Disability Compensation, any ambiguity should be resolved against Defendant Liberty Life as the drafter of these provisions.

137.    By deciding to offset benefits under the Policy with Veterans Disability Compensation, Defendant Liberty Life violated the terms of the Plan and breached its obligation to pay LTD Benefits under the Liberty Life LTD Policy and the terms of the Plan(s).

138.    Alternatively, to the extent that Defendant Liberty Life is permitted to offset Veterans Benefits under the terms of the Liberty Life LTD Policy, the Policy does not permit an offset of the amount of any cost of living increases included in any Veterans Disability Compensation. By including a cost of living increase in the offset, Defendant Liberty Life has violated the terms of its Policy and the terms of the Plan(s).

139.    Additionally and alternatively, to the extent that to the extent that Defendant Liberty Life is permitted to offset Veterans Benefits under the terms of the Liberty Life LTD Policy the terms of the Plan mandate the payment of a minimum monthly benefit. As such, by failing to pay the minimum monthly benefit and applying it to the overpayment, Defendant Liberty Life has violated the terms of its Policy and the terms of the Plan(s).

**COUNT II:**
**CLAIM FOR EQUITABLE RELIEF PURSUANT TO ERISA § 102,**

**29 U.S.C. § 1022, & § 502(A)(3), 29 U.S.C. § 1132(A)(3)**
**(On Behalf of the Hyundai Class Against Defendants Liberty Life and Hyundai)**

140.   Plaintiff repeats and re-alleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

141.   ERISA § 502(a)(3), 29 U.S.C. § 1102(a)(3), authorizes a plan participant to bring a civil action (A) to enjoin any act or practice which violates any provision of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress violations of ERISA or the terms of the plan or (ii) to enforce any provisions of ERISA or the terms of the plan.

142.   ERISA § 102(a), 29 U.S.C. § 1022(a), requires that a "summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 104(b)." ERISA § 102(a) also requires that the SPD include the information required by ERISA § 102(b) and "be written in a manner calculated to be understood by the average participant" and "be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations the plan."

143.   ERISA § 102(b) requires that the SPD to contain, among other things, a description of the "the plan's requirements respecting eligibility for participation or benefits" including the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits."

144.   The DOL Regulations interpreting ERISA § 102, 29 C.F.R. § 2520.102-2, reiterate that an SPD "shall be written in a manner calculated to be understood by the average participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the terms of the plan." 29 C.F.R. § 2520.102-2(a) specifies that an SPD "will usually require . . . the use of clarifying examples and illustrations" to make the terms of the SPD understandable to the average participant.

145.   The DOL Regulations interpreting ERISA § 102, 29 C.F.R. § 2520.102-3(j), require the SPD to include a description of "[t]he plan's requirements respecting eligibility for participation and for benefits," and "also include a statement of the conditions pertaining to eligibility to receive benefits, and a description or summary of the benefits." DOL Regulation 29 C.F.R. § 2520.102-3(l) requires the SPD to include "a statement clearly identifying circumstances which may result in . . .

1   offset . . . of any benefits that a participant or beneficiary might otherwise reasonably expect the plan

2   to provide on the basis of" the plan's description of benefits.

3        146.    According to the November 25, 2013 letter from Ms. Prichard, "the only document

4   that is available" describing the terms of the Plan consists of the document(s) entitled "Certificate of

5   Coverage and "Summary Plan Description" provided to Plaintiff on September 9, 2013  pursuant to

6   Plaintiffs' request under ERISA § 104(b).  According to a September 16, 2013 email from Terry

7   Prichard, that document was "provided from [the] insurance company."  Upon information and

8   belief, based on that September 16, 2013 email and the language in both documents, Defendant

9   Liberty Life drafted both the "Certificate of Coverage and "Summary Plan Description."   Upon

10  information and belief, Defendant Liberty Life drafted a substantially similar "Certificate of

11  Coverage and "Summary Plan Description" for the disability insurance policies for all members of

12  the Hyundai Class.

13       147.    Neither the "Summary Plan Description" nor the "Certificate of Coverage" contains

14  language that reasonably could be calculated to be understood by the average plan participant to

15  identify income received as Veterans Benefits to be income eligible to be offset under the terms of

16  the Liberty Life Policy.  Specifically, neither the "Summary Plan Description" nor the "Certificate of

17  Coverage" mention that benefits or compensation by the Veterans Administration would qualify as

18  "other income" or as an offset to benefits under the Liberty Life LTD Policy.

19       148.    The document entitled "Summary Plan Description" contains no description of the

20  benefits nor any offsets or other circumstances that may result in denial or loss of any benefits under

21  the Liberty Life LTD Policy.

22       149.    Section 4 of the "Certificate of Coverage" explains how to calculate the Monthly

23  Benefit under the Policy and then explains "[d]educt your Benefits from Other Income, (shown in

24  the Benefits from Other Income provision of this coverage), from this amount."  The description of

25  the "Benefits From Other Income" from Section 4 does not mention Veterans Benefits nor does it

26  reasonably describe in a manner understood by the average plan participant that Veterans Benefits,

27  including Veterans Disability Compensation, are among the types of "income" that may be offset

28  against LTD benefits under the Liberty Life LTD Policy.

150.    In response to Plaintiff's September 30, 2013 letter requesting "any communications to [him]self or other Plan participants, that explain 'in a manner calculated to be understood by the average plan participant' either …. the precise meaning of the phrase 'any compulsory act or law' … or "whether and how Veteran's Disability Compensation is considered 'other income' under the Plan," Plaintiff received no responsive documents.  Based on the failure of Defendant(s) to provide any such document in response to that request or as part of the administrative record, there are no communications provided to participants covered by the Liberty Life LTD Policy that explain the meaning of the phrase "any compulsory benefit act or law" or explain in words understandable to the average participant whether or how Veterans Disability Compensation is considered "other income" under the Liberty Life LTD Policy.

151.    The May 1, 2012 letter from Defendant Liberty Life determining Plaintiff was eligible to receive LTD benefits under the Liberty Life Policy identified "benefits from the United States Social Security Act, the Public Employees' Retirement Fund, and Workers' Compensation benefits" as "other income" that would serve to offset benefit under the Liberty Life Policy.  The May 1, 2012 letter did not mention any form of Veterans Benefits.  Upon information and belief, the May 1, 2012 letter was a form letter and was substantially similar to letters sent to and received by other members of the Liberty Life Class.

152.    To the extent that the document entitled "Summary Plan Description" incorporates the "Certificate of Coverage" and together are supposed to constitute the SPD, the combined document fails to comply with ERISA § 102 because it does not describe the conditions that will result in a loss or offset of benefits in a manner calculated to be understood by the average participant.  Specifically, the SPD, even including the Certificate of Coverage, fails to clearly identify the receipt of Veterans Disability Compensation, or any Veterans Benefits, as a circumstance that may result in any denial, loss or offset of any benefits that a participant or beneficiary might otherwise reasonably expect to receive under the Policy.  Neither the "Summary Plan Description" nor the "Certificate of Coverage" contains any clarifying examples or illustrations that would inform an average plan participant that Veterans Disability Compensation is included in the listed categories of income eligible for offset.

153.     To the extent that the document entitled "Summary Plan Description" without the "Certificate of Coverage" is supposed to constitute the SPD, the "Summary Plan Description" contains no description of the benefits and conditions for eligibility under the Plan or Policy and also fails to describe any offsets or other circumstances that may result in denial, loss or offset of any benefits awarded under the Plan or Policy.  The "Summary Plan Description" does not contain any clarifying examples or illustrations that would inform an average plan participant that Veterans Disability Compensation is included in the listed categories of income eligible for offset.

154.     As a result of the failure of Defendant Liberty Life to properly identify Veterans Benefits as income eligible for offset under the Liberty Life Policy, the average plan participant would not have understood from the "Summary Plan Description" alone or in combination with the "Certificate of Coverage" that the receipt of Veterans Disability Compensation would constitute income eligible for offset under the terms of the Liberty Life Policy.

**COUNT III:**
**CLAIM FOR EQUITABLE RELIEF PURSUANT TO ERISA § 502(a)(3),**
**29 U.S.C. § 1102(a)(3)  TO REDRESS VIOLATIONS OF THE TERMS OF THE PLAN**
**(On Behalf of the Liberty Life Class Against Defendant Liberty Life)**

155.     Plaintiff repeats and re-alleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

156.     ERISA § 502(a)(3), 29 U.S.C. § 1102(a)(3), authorizes a plan participant to bring a civil action (A) to enjoin any act or practice which violates any provision of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress violations of ERISA or the terms of the plan or (ii) to enforce any provisions of ERISA or the terms of the plan.

157.     In addition to a declaration of their rights under the terms of the Plan pursuant to ERISA § 502(a)(1)(B), to redress violations of the terms of the Plan and/or violations with respect to the issuance of an SPD, Plaintiff and the Class are entitled, pursuant to ERISA §502(a)(3) to a (A) an order requiring disgorgement of any profits earned by Defendants on benefits wrongfully withheld or untimely distributed under the terms of the governing Plan or prejudgment interest, whichever is greater, and (B) an injunction, to the extent not permitted by ERISA § 502(a)(1)(B), requiring Defendant(s) to administer the Plan without applying an offset for Veterans Benefits to Plaintiff.

**COUNT IV:**
**VIOLATIONS OF ERISA § 104 AND § 402, 29 U.S.C. §§ 1102, 1024, AND MONETARY PENALTIES PURSUANT TO ERISA §§ 502(a)(1)(a), 29 U.S.C. §1132(a)(1)(A)**
**(On Behalf of the Hyundai Class Against Defendants Hyundai and Liberty Life)**

158.    Plaintiff repeats and re-alleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

159.    ERISA § 402, 29 U.S.C. § 1102, provides that every plan will be established pursuant to a written instrument which will provide among other things "for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan" and will "provide a procedure for establishing and carrying out a funding policy and method consistent with the objectives of the plan and the requirements of [Title I of ERISA]."

160.    The Plan Sponsor is responsible for establishing the Plan pursuant to a written instrument that complies with ERISA § 402.  The document entitled "Summary Plan Description" identifies Hyundai Motor America as the Plan Sponsor of the Hyundai Motor America's Group Disability Income Plan.

161.    In a letter dated September 25, 2013 addressed to Hyundai Motor America as the Plan Administrator of the Plan, Plaintiff specifically requested a copy of both SPD and the Plan Document explaining, in part, as follows:

> Pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), I request that you furnish me with the latest updated Summary Plan Description and Plan Document for the [Hyundai Motor America's Group Disability Income Plan].  It is my understanding that the Summary Plan Description and the Plan Document are not the same document and both must be provided to me upon written request. Therefore, I request that documents provided to me be clearly identified as the Summary Plan Document and the Plan Document, respectively.

162.    In a letter dated November 25, 2013, Terry Prichard, Director of HR Operations of Hyundai Capital America, responded to Plaintiff's September 30, 2013 letter by stating that the "53 page" document sent on September 9, 2013 "is the only document that is available."  The 53-page document referenced in Terry Prichard's November 25, 2013 letter is the combined "Certificate of Coverage" and "Summary Plan Description."

163.    As the Supreme Court explained in *Cigna Corp. v. Amara*, 131 S. Ct. 1866 (2011), the summary plan description required under ERISA § 102 is and must be a different document than the written instrument required under ERISA § 402.  The employer (or plan sponsor) is responsible

for establishing the terms of the plan and therefore the written instrument that complies with ERISA § 402.  By contrast, a fiduciary, usually the plan administrator, is responsible for drafting and providing participants with the summary documents that describe the plan pursuant to ERISA § 102 and 104.  As such, the document entitled "Summary Plan Description" is by necessity not the written instrument within the meaning of ERISA § 402.

164.   ERISA § 402(a)-(b) specify the features required of all employee benefit plans.  ERISA § 402(a) requires that the written instrument of the plan identify one or more named fiduciaries.  ERISA § 402(b) requires every ERISA-covered plan to (1) provide a procedure for establishing and carrying out a funding policy; (2) describe any procedure under the plan for the allocation of responsibilities for the operation and administration of the plan; (3) provide a procedure for amending the plan and for identifying the persons who have authority to amend the plan; and (4) specify the basis on which payments are made to and from the plan.

165.   The "Certificate of Coverage," which was provided to Plaintiff on September 9, 2013, does not satisfy the requirements of ERISA § 402.  The "Certificate of Coverage" does not identify any named fiduciary of the plan.  The "Certificate of Coverage" does not describe how the Plan is funded.  The "Certificate of Coverage" does not describe any allocation of duties for the operation and administration of the plan.  The "Certificate of Coverage" does not provide a procedure for amending the Plan or identify who has any authority to amend the Plan.

166.   The Hyundai LTD Plan is not "established and maintained pursuant to" the "Certificate of Coverage." According to the first page of the document entitled "Summary Plan Description," benefits under the Hyundai LTD Plan "are provided under the terms of" the Liberty Life LTD Policy issued to Hyundai Motor America.  The Liberty Life LTD Policy likewise provides that the Certificate is subordinate to the terms of the Policy.  Section 7 of the Policy states that "[i]f the terms of a Certificate and this policy differ, this policy will govern."  Accordingly, neither the Certificate nor the "Summary Plan Description" satisfies the requirements of a plan document under ERISA § 402.

167.   To the extent that the Liberty Life LTD Policy is the plan document, Defendant Hyundai Motor America failed to provide Plaintiff with a copy of the plan document within thirty

days of his September 30, 2013 request, in violation of ERISA §§ 104(b) & 502(c).  In fact, Hyundai as the Plan Administrator advised Plaintiff that the "Certificate of Coverage" and the "Summary Plan Description" were the only documents "available" that described the terms of the Plan.

### *Failure to Issue A Compliant Summary Plan Description*

168.   To the extent that Defendant Hyundai or Defendant Liberty Life contend that the "Certificate of Coverage" is the written instrument pursuant to ERISA § 402, and the "Summary Plan Description" is the "summary plan description" for purposes of ERISA § 102, the "Summary Plan Description" alone does not meet the requirements of ERISA § 102(a).

### *Failure to Provide An Annual Report Upon Request*

169.   ERISA § 103(a) requires employee benefit plans to publish an annual report and provide that report to participants "in accordance with section 104(b)."

170.   ERISA § 104(b)(4) provides that the administrator of an employee benefit plan "shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary[] plan description, and the latest annual report" and "other instruments under which the plan is established or operated" to the participant.

171.   The document entitled "Summary Plan Description" requires the Plan Administrator to provide to participants upon written request "copies of . . . the latest annual report (Form 5500 Series) and updated summary plan description."

172.   On September 30, 2013, Plaintiff made a request to the Plan Administrator for a copy of various plan documents, including the latest annual report.

173.   Defendant Hyundai failed to provide Plaintiff with the Annual Report of the Hyundai LTD Plan within 30 days, as required by ERISA §§ 104(b) and the Hyundai LTD Plan.

### *Remedies For Violations*

174.   Pursuant to ERISA § 502(a)(1)(A) a participant may sue for the relief provided in ERISA § 502(c).  Pursuant to ERISA § 502(c), 29 U.S.C. § 1132(c), "[a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by [ERISA] to furnish" by mailing the requested material to "the requesting participant . . . within 30 days after such request" may be liable for up to $110 per day in civil penalties.

175.    Defendant Hyundai's failure to properly maintain the Plan pursuant to a written instrument that satisfies ERISA § 402, and/or a summary plan description pursuant to ERISA § 102 and/or provide the Liberty Life LTD Policy alters the substantive relationship between Hyundai and the participants in the plan by preventing the participants from referring to documents that control the disposition of their benefit claims.  As a result, Hyundai employees cannot understand the benefits to which they are entitled under the Plan, are impeded from effectively challenging Defendant Liberty Life's benefit determinations without being able to read the Liberty Life LTD Policy and without a valid Summary Plan Description that describes offsets in an understandable manner.

**COUNT V:**
**VIOLATION OF  ERISA § 503, 29 U.S.C. § 1133 & THE TERMS OF THE PLAN**
**(Against Defendants Hyundai and Liberty Life)**

176.    Plaintiff repeats and re-alleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

177.    ERISA § 502(a)(3), 29 U.S.C. § 1102(a)(3), authorizes a plan participant to bring a civil action (A) to enjoin any act or practice which violates any provision of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress violations of ERISA or the terms of the plan or (ii) to enforce any provisions of ERISA or the terms of the plan.

178.    ERISA § 503 requires every employee benefit plan to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant," and must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."

*Failure to Provide Proper Notification of Initial Adverse Benefit Determination*

179.    The DOL Regulations interpreting ERISA § 503, specifically 29 C.F.R. § 2560.503-1(g), require the administrator of an employee benefit plan to "provide a claimant with written or electronic notification of any adverse benefit determination."  The DOL Regulation, 29 C.F.R. § 2560.503-1(m)(4), defines "adverse benefit determination" as "a denial, reduction, or termination of

. . . a benefit[.]"  The August 14, 2013 Claim Denial Letter constitutes an "adverse benefit determination" within the meaning of 29 C.F.R. § 2560.503-1(m)(4) because it reduced Plaintiff's benefits.

180.     Among other things, the DOL Regulations in 29 C.F.R. § 2560.503-1(g)(1) require the notification of an initial adverse benefit determination to "set forth, in a manner calculated to be understood by the claimant— (i) The specific reasons or reasons for the adverse determination; … (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review"

181.     The document entitled "Summary Plan Description" requires that "Liberty's notice of denial shall include:"

1. The specific reason or reasons for denial with reference to those specific Plan provisions on which the denial is based;

2. A description of any additional material or information necessary to perfect the claim and an explanation of why that material or information is necessary;

3. A description of the Plan's appeal procedures and time frames, including a statement of the claimant's right to bring a civil action under ERISA follow an adverse decision on appeal;

4. If applicable, any internal rule, guideline, protocol, or other similar criterion relied upon in making  the adverse decision or a statement such a rule, guideline, protocol, other similar criterion was relied upon and a copy thereof will be provided free of charge upon request; and

5. If the adverse decision was based on a medical necessity, experimental treatment or similar exclusion or limit, and explanation of the scientific or clinical judgment for the adverse decision, or a statement that such explanation will be provided free of charge upon request.

182.     The Claim Denial Letter did not state what aspect of the definition of "Benefits from Other Income" in the Policy that Defendant Liberty Life was relying on to use Plaintiff's Veterans Disability Compensation as an offset and did not explain why Plaintiff's Veterans Disability Compensation is covered by any of the categories of income listed in that provision.  As such, the Claim Denial Letter did not set forth, in a manner calculated to be understood by the claimant the

specific reason or reasons for the adverse determination as required by ERISA § 503 and 29 C.F.R. § 2560.503-1(g)(1)(i) or the terms of the Plan as set forth in the Summary Plan Description.

183.   The Claim Denial Letter did not notify Plaintiff of any procedure to appeal Liberty Life's decision to offset his LTD benefits with his Veterans Disability Compensation.

184.   The Claim Denial Letter did not notify Plaintiff of any internal rule, guideline, protocol or other similar criterion relied upon in making the adverse decision.

185.   The Claim Denial Letter did not inform Plaintiff of any time limit governing his right to use any appeal procedure.

186.   The Claim Denial Letter did not notify Plaintiff of his right to bring an action to challenge Liberty Life's offset decision under ERISA § 502(a).

187.   As a result of the above, the Claim Denial Letter did not comply with ERISA § 503 or 29 C.F.R. § 2560.503-1(g)(1) or the terms of Plan as set forth in the Summary Plan Description.

### *Failure to Provide Proper Notification of Adverse Benefit Determination on Appeal*

188.   The DOL Regulations interpreting ERISA § 503, specifically 29 C.F.R. § 2560.503-1(j) require the administrator of an employee benefit plan to "provide a claimant with written or electronic notification of any adverse benefit determination on review."  For purposes of a claim on review, the DOL Regulation, 29 C.F.R. § 2560.503-1(m)(4), defines "adverse benefit determination" as "a denial, reduction, or termination of . . . a benefit[.]"  The September 9, 2013 Appeal Denial Letter constitutes an "adverse benefit determination" within the meaning of 29 C.F.R. § 2560.503-1(m)(4).

189.   The DOL Regulations governing the issuance of a decision on review, specifically, 29 C.F.R. § 2560.503-1(j), provide: "In the case of an adverse benefit determination, the notification shall set forth, in a manner calculated to be understood by a claimant—

(1)    The specific reason or reasons for the adverse benefit determination

* * * *

(3) A statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits[;]

(4) [A] statement of the claimant's right to bring an action under Section 502(a) of

the Act; and

(5) In the case of a . . . plan providing disability benefits—
. . .
(iii) The following statement:
"You and your plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office and your State insurance regulatory agency."

190.    The document entitled "Summary Plan Description" similarly requires that as to any appeal "Liberty's notice of denial shall include," among other things:

1.    The specific reason or reasons for denial with reference to those Plan provisions on which the denial is based;

2.    A statement that you are entitled to receive, upon request and free of charge, reasonable access to, and copies of all documents, records and other information relevant to your claim;

3.    A statement describing any voluntary appeal procedures offered by Liberty and your right to obtain the information about such procedures, and a statement of your right to bring an action under ERISA;

4.    If applicable, any internal rule, guideline, protocol, or other similar criterion relied upon in making the adverse decision, or a statement such a rule, guideline, protocol, or other similar criterion was relied upon and a copy thereof will be provided free of charge upon request.

191.    The Appeal Denial Letter did not explain what aspect of the definition of "Benefits from Other Income" in the Policy that Defendant Liberty Life was relaying on to use Plaintiff's Veterans Disability Compensation as an offset and did not explain why Plaintiff's Veterans Disability Compensation is covered by any of the categories of income listed in that provision.  As such, the Claim Denial Letter did not set forth, in a manner calculated to be understood by the claimant the specific reason or reasons for the adverse determination as required by ERISA § 503 and 29 C.F.R. § 2560.503-1(j)(1)(i).

192.    The Appeal Denial Letter did not advise Plaintiff that he was entitled to receive, upon request, and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

193.    The Appeal Denial Letter contained no statement regarding the availability of alternative dispute resolution options and information regarding such options from the U.S. Department of Labor and/or California's insurance regulatory agency.

194.     The Appeal Denial Letter did not advise Plaintiff of his right to bring an action under ERISA § 502(a) to challenge Liberty Life's erroneous offset determination.

195.     As a result of the above, the Appeal Denial Letter did not comply with ERISA § 503 or 29 C.F.R. § 2560.503-1(j) or the terms of Plan as set forth in the Summary Plan Description.

**COUNT VI:**
**CLAIM FOR DECLARATORY & INJUNCTIVE RELIEF PURSUANT TO ERISA §**
**502(a)(3), 29 U.S.C. § 1102(a)(3), AND 28 U.S.C § 2201**
**(On Behalf of the Liberty Life Class Against Defendant Liberty Life)**

196.     Plaintiff repeats and re-alleges the allegations contained in the forgoing paragraphs as if fully set forth herein.

197.     28 U.S.C. § 2201 provides in relevant part that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree . . . ."

198.     ERISA § 502(a)(3), 29 U.S.C. § 1102(a)(3), authorizes a participant, beneficiary or fiduciary of the plan to bring a civil action (A) to enjoin any act or practice which violates any provision of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress violations of ERISA or the terms of the plan or (ii) to enforce any provisions of ERISA or the terms of the plan.

199.     As ERISA § 502(a)(3) authorizes only equitable, but not legal, relief, but only by participants, beneficiaries or fiduciaries.  To the extent that Defendant Liberty Life is not a fiduciary of the Hyundai LTD Plan or any other Plan for which it issues group disability insurance, Liberty Life is not entitled to recover under ERISA nor seek recovery of any alleged overpayment by Plaintiff or the Class. To the extent that Defendant Liberty Life is a fiduciary, the relief must redress or enforce ERISA or the terms of the Plan.

200.     To secure an equitable lien by agreement under ERISA requires (1) a promise by the beneficiary to repay benefits paid under the plan in the event of recovery from a third party; (2) the reimbursement agreement must specifically identify a particular fund distinct from the beneficiary's

general assets; and (3) the funds specifically identified must be within the possession and control of the beneficiary.

201.    Nothing in ERISA prohibits a participant to receive both Veterans Disability Benefits and disability benefits under an ERISA-covered disability policy.  As such, Liberty Life can only utilize ERISA § 502(a)(3) to recover payments based on enforcement of  the terms of the Plan.  With respect to at least the Hyundai Plan, there is no written instrument meeting the definition of ERISA § 402 setting forth the terms of the Plan and as such no equitable lien by agreement in a plan document.  To the extent that other plans for which Liberty Life provide coverage fails to have a compliant plan document, or language sufficient to establish an equitable lien, Liberty Life cannot seek overpayment based on an equitable lien.

202.    Section 7 of the "Certificate of Coverage" or the Policy is the provision on which Defendant Liberty Life relies to assert a right to recover an "overpayment" on a claim approved under the Policy.  Neither the "Right of Recovery" provision of Section 7 of the Liberty Life LTD Policy or of the Certificate of Coverage, nor any other provision of the Policy or Certificate, identifies a distinct fund in the possession of Plaintiff (or any other member of the Class) sufficient to constitute an equitable lien by agreement.

203.    In the absence of any equitable lien by agreement, the only remaining equitable remedy for a fiduciary of a plan to collect an overpayment on behalf of a plan is equitable restitution, which is subject to "strict tracing rules."  Under such "strict tracing rules," to the extent that the overpayment has been dissipated, the overpayment is not traceable and therefore not recoverable in equity.

204.    Plaintiff has spent his monthly LTD benefit payments each month as he received them from Liberty Life.  Upon information and belief, Liberty Life has attempted to collect alleged overpayments from other members of the Class who were no longer in possession of the alleged overpayments.

205.    As such, Plaintiff and the Class are entitled to a declaration that the Liberty Life Policy does not contain language sufficient to constitute an equitable lien by agreement and/or that

1   Defendant Liberty Life is not entitled to seek to recoup any alleged overpayments without a showing

2   that the overpayment does in fact remain in their possession or is otherwise traceable.

3        206.   Alternatively, if Defendant Liberty Life is permitted to offset Veterans Benefits under

4   the terms of the Liberty Life LTD Policy with respect to any overpayment calculation performed by

5   Liberty Life as to Plaintiff or any member of the Class, the request for overpayment should not

6   include, and should account for state and federal income taxes withheld from the LTD payments.

7   **<u>PRAYER FOR RELIEF</u>**

8        WHEREFORE, Plaintiff prays that judgment be entered against Defendants on all claims and

9   requests that the Court award the following relief:

10        A.   Declaring that Plaintiff and the Liberty Life Class are entitled to receive long-term

11   disability benefits under the terms of the Liberty Life LTD Policy without offsetting their Veterans

12   Disability Compensation;

13        B.   Ordering that the terms of the Liberty Life LTD Policy or the terms of the Plans for

14   which the Liberty Life LTD Policy serves as funding (i.e. insurance), be reformed as necessary, to

15   provide that long-term disability benefits under the terms of the Liberty Life LTD Policy be

16   provided to members of the Liberty Life Class without an offset for Veterans Disability

17   Compensation;

18        C.   Requiring Defendant Liberty Life to compute and pay benefits to or on behalf of

19   Plaintiff and the Classes without offsetting their Veterans Disability Compensation;

20        D.   Requiring Defendant Liberty Life to pay prejudgment interest or disgorge any profits

21   that Liberty Life has earned on benefits wrongfully withheld and/or untimely distributed to Class

22   Members;

23        E.   Declaring that Defendant Hyundai has failed to establish the Hyundai LTD Plan

24   pursuant to a written instrument pursuant to ERISA § 402 and ordering Defendant Hyundai to do so;

25        F.   Awarding Plaintiff statutory penalties in the amount of $110 per day, per violation,

26   for the failure to provide each of (i) the Hyundai LTD Plan document, (ii) a valid Summary Plan

27   Description of the Hyundai LTD Plan, (iii) an annual report of the Hyundai LTD Plan, and/or (iv)

28   the Liberty Life LTD Policy;

G.     Enjoining Defendant Liberty Life from recovering and from attempting to recover from Plaintiff and the Classes LTD benefits that Defendant Liberty Life claims should have been offset by Plaintiff's Veterans Disability Compensation;

H.     Declaring that Defendant Liberty Life and/or Defendant Hyundai was required to but failed to comply with ERISA § 503 and requiring compliance with the DOL Regulations implementing ERISA § 503 whenever benefits paid under its Policy are reduced;

I.     Declaring that Defendant Liberty Life's LTD Policy does not contain language sufficient to constitute an equitable lien by agreement;

J.     Declaring that Defendant Liberty Life may not seek to recover any alleged overpayments by Plaintiff and the Classes to recover LTD without establishing that there are traceable funds that remain in their respective possession;

K.     Declaring that Defendant Liberty Life is required to make minimum payments as required under the Policy;

L.     Requiring Defendant to pay attorney's fees and the costs of this action pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1) and/or ordering the payment of reasonable fees and expenses of this action to Plaintiff's Counsel on the basis of the common benefit and/or common fund doctrine (and/or other applicable law) out of any money or benefit recovered for the Classes in this Action;

M.     Awarding, declaring or otherwise providing Plaintiff and the Classes all relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems proper.

Dated:  April 1, 2014

/s/ R. Joseph Barton
R. Joseph Barton (Cal Bar No. 212340)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile:  (202) 408-4699
Email: jbarton@cohenmilstein.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ Michelle L. Roberts
Michelle L. Roberts  (CA Bar No. 239092)
SPRINGER & ROBERTS LLP
410 12th St., Suite 325
Oakland, CA 94607
Telephone: (510) 992-6130
Facsimile:  (510) 280-7564
Email: michelle@ssrlawgroup.com

***Attorneys for Plaintiff***