UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES L. BUSH,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, et al.,<br><br>　　　　Defendants. | Case No. 14-cv-01507-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 21 |

　　　　Plaintiff James L. Bush ("Bush") brings this Employee Retirement Income Security Act of 1974, as amended ("ERISA") putative class action against defendants Liberty Life Assurance Company of Boston ("Liberty Life") and Hyundai Motor America ("Hyundai").  The dispute arises from Liberty Life's decision to decrease the long-term disability benefits it paid to Bush by the amount he received from the Department of Veterans Affairs ("VA").  Bush brings six ERISA claims for: (1) disability benefits under section 502(a)(1)(B), against Liberty Life; (2) equitable relief pursuant to sections 102 and 502(a)(3), against both defendants; (3) equitable relief and disgorgement pursuant to section 502(a)(3), against Liberty Life; (4) violations of sections 104 and 402 and monetary penalties under sections 502(a)(1)(A) and 502(c), against both defendants; (5) violation of section 503, against both defendants; and (6) declaratory and injunctive relief pursuant to section 502(a)(3), against Liberty Life.  (Dkt. No. 1 ("Complaint").)

　　　　Pursuant to Federal Rule of Civil Procedure 12(b)(6), Liberty Life filed a Motion to Dismiss Counts II-V on the grounds that they: (1) can only be maintained against the designated plan administrator, Hyundai (Counts II, IV, and V) and (2) are impermissibly duplicative of the relief sought under Count I (Counts II, III, and V).  (Dkt. No. 21 ("Mot.").)  Hyundai joins the second aspect of Liberty Life's motion in part, seeking dismissal of Counts II and V as duplicative.  (Dkt. No. 22.)  Bush opposes the motion.  (Dkt. No. 30 ("Oppo.").)  The Court heard

argument on October 14, 2014.

Having carefully considered the papers submitted, the complaint, and the arguments of counsel, the Court hereby **GRANTS IN PART AND DENIES IN PART** the Motion to Dismiss.

## I. BACKGROUND

Bush's allegations center around Liberty Life's decision to offset the long-term disability benefits he was otherwise owed by the amount he received in VA disability payments.[1]

In August 2008, Bush started working for Hyundai Capital America, Inc. ("HCA"), where he was an assistant manager of its Tustin, California office. (Complaint ¶ 39.) Through this role, he became a participant in an ERISA-governed employee welfare benefit plan available to all Hyundai or HCA employees (the "Plan"). (*Id*. ¶¶ 7, 39-40.) Hyundai is purportedly the plan administrator as the term is defined in ERISA section 3(16)(A). (*Id*. ¶ 8.) As part of his Plan participation, Bush was insured under a long-term disability policy issued by Liberty Life (the "Policy"). (*Id*. ¶¶ 2, 39.)

After suffering a "severe nervous breakdown," Bush went on medical leave from October 2011 through March 2014. (*Id.* ¶ 39.) On May 1, 2012, Liberty Life approved his claim for long-term disability with a gross monthly benefit of $3,468.27, effective as of October 30, 2011. (*Id.* ¶¶ 64, 67.)

Bush also filed a disability claim with the VA. The VA granted his claim for Veterans Disability Compensation on February 1, 2013 in the monthly amount of $3,354 (later increased to $3,409 with a cost-of-living adjustment), finding he was disabled as a result of post-traumatic stress disorder, peripheral neuropathy, and other service-related conditions. (*Id.* ¶¶ 69-70, 72.) He was eligible for these benefit payments as a result of his service in the U.S. Marine Corps during the Vietnam War. (*Id.* ¶ 38.)

In a letter dated August 14, 2013, Liberty Life notified Bush that his monthly disability benefits would be reduced by the amount of disability benefits he received from other sources, including his VA benefits. (*Id.* ¶¶ 75-76.) Liberty Life decreased his benefits to $346.83, the

---

[1] The factual allegations in the complaint are accepted as true for purposes of considering this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1  minimum monthly benefit available under the Plan. (*Id.* ¶¶ 80-81.) Without the VA offset,

2  Bush's monthly benefit payments from Liberty Life would have been $1,456.27 after accounting

3  for an offset of the amount he received in Social Security Disability Insurance ("SSDI") benefits.[2]

4  (*Id.* ¶¶ 80, 82.) In support of its position, Liberty Life quoted the following provision of the

5  Policy:

> *Benefits from Other Income means those benefits shown below:*
> 1.  *The amount for which the Covered Person is eligible under:*
>     a.  *Workers' or Workmen's Compensation Law;*
>     b.  *occupational disease law;*
>     c.  *any compulsory benefit act or law; or*
>     d.  *any other act or law of like intent [...].*

9  (*Id.* ¶ 75 (alteration in original).)

10  Bush appealed Liberty Life's offset decision in August 2013. (*Id.* ¶ 83.) Liberty Life

11  denied the appeal, citing sections 1(c) and 1(d) of the Policy excerpted above. (*Id.* ¶¶ 84-85 ("The

12  Appeal Denial Letter explained only that 'VA benefits are considered obligatory compensation for

13  injuries to service men and women during military service and are subject to offset under the

14  applicable Policy provisions set forth above.'").)

15  Liberty Life admits that even with the disputed offset in place, Bush is entitled to $346.83

16  per month. (*Id.* ¶ 86.) Liberty Life began withholding those payments, however, and applying

17  them to the $27,450.90 amount Liberty Life claims it overpaid him prior to making its offset

18  determination. (*Id.* ¶¶ 92-93.) As of October 9, 2013, Liberty Life had engaged a debt collector to

19  recover the purported overpayment. (*Id.* ¶ 94.)

20  Bush's employment terminated in March 2014. (*Id.* ¶ 39.) He filed the instant case on

21  April 1, 2014. (Dkt. No. 1.) As part of his action, Bush proposes a "Liberty Life Class" of

22  honorably discharged veterans who are residents of California, Montana, Oregon, or Washington

23  participating in a Liberty Life policy that includes the offset provision quoted above. (*Id.* ¶ 10.)

24  He also proposes a "Hyundai Class" of honorably discharged veterans who are participants in the

25  Hyundai Plan. (*Id.* ¶ 11.)

---

[2] Bush does not dispute the SSDI offset.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed as to a particular defendant for failure to state a claim upon which relief may be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. *Walling v. Beverly Enters.*, 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action. *Papasan v. Allain*, 478 U.S. 265 (1986); *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir.1988). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

## III. DISCUSSION

### A. Availability of Claims Against the Plan "Administrator" Only

The Court addresses first the issue of who is a proper defendant for purposes of Counts II (equitable relief under ERISA sections 102 and 502(a)(3)), IV (violations of sections 104 and 402 under sections 502(a)(1)(A) and 502(c)), and V (violation of section 503). These counts are based, at least in part, upon ERISA provisions that target the plan administrator, either providing a cause of action against the plan administrator or establishing statutory requirements for administrators to

4

1  follow.  Liberty Life argues Hyundai is the plan administrator and, accordingly, that Counts II, IV,
2  and V can only be asserted against Hyundai, if at all.  Plaintiff alleges that Liberty Life is a *de*
3  *facto* plan administrator and argues the claims at issue can be asserted against defendants who are
4  not "plan administrators" under the statute.

5      **1. Legal Framework**

6      ERISA defines a plan's "administrator" as: "(i) the person specifically so designated by the
7  terms of the instrument under which the plan is operated; (ii) if an administrator is not so
8  designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not
9  designated and a plan sponsor cannot be identified, such other person as the Secretary may by
10  regulation prescribe." ERISA § 3(16)(A).  The "plan sponsor" is either an employer, an employee
11  organization, or "in the case of a plan established or maintained by two or more employers or
12  jointly by one or more employers and one or more employee organizations, the association,
13  committee, joint board of trustees, or other similar group of representatives of the parties who
14  establish or maintain the plan." *Id.* § 3(16)(B).

15      Even where an insurer takes on a substantial role in operating a plan, the Ninth Circuit has
16  "effectively closed the door" on holding it liable as a *de facto* administrator. *Turnipseed v. Educ.*
17  *Mgmt. LLC's Employee Disability Plan*, Case No. 09-cv-03811 MHP, 2010 WL 140384, at *5
18  (N.D. Cal. Jan. 13, 2010) (citing *Ford v. MCI Commc'ns Corp. Health & Welfare Plan*, 399 F.3d
19  1076, 1081-82 (9th Cir. 2005) *overruled on other grounds by Cyr v. Reliance Standard Life Ins.*
20  *Co.*, 642 F.3d 1202 (9th Cir. 2011)) ("Liberty cannot be considered a *de facto* administrator
21  because plaintiff has not alleged that Liberty's role in the Plan was anything greater than that of a
22  standard third-party insurer with discretion to determine eligibility for benefits. . . .  Even if
23  plaintiff had alleged more, it is not clear that such a claim would be cognizable in the Ninth
24  Circuit regardless of Liberty's role in the Plan."); *see also In re WellPoint, Inc. Out-of-Network*
25  *UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1045-46 (C.D. Cal. 2011) ("The Ninth Circuit has all but
26  slammed the door on the *de facto* administrator theory advanced by Plaintiffs . . . .").

27      Certain substantive provisions of ERISA place obligations specifically on plan
28  administrators.  For example, this applies to sections 102 and 104. *See, e.g.*, ERISA § 102, 29

1  U.S.C. § 1022 ("A summary plan description of any employee benefit plan shall be furnished to
2  participants and beneficiaries as provided in section 1024(b) of this title."); ERISA § 104(b), 29
3  U.S.C. § 1024(b) ("The *administrator* shall furnish to each participant, and each beneficiary
4  receiving benefits under the plan . . . an updated summary plan description described in section
5  1022 of this title . . . ." (emphasis added)); *Prouty v. Hartford Life & Acc. Ins. Co.*, 997 F. Supp.
6  2d 85, 90 (D. Mass. 2014) ("The unambiguous language of the statute places the responsibility for
7  provision of [summary plan descriptions] on plan administrators and not insurers."); *but see*
8  *Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir. 1982) (in discussing section 102 and 402
9  requirements, stating that "these are only the responsibilities of administrators *and fiduciaries* of
10 plans covered by ERISA and are not prerequisites to coverage under the Act" (emphasis added)).
11      Moreover, some ERISA claims can only be brought against plan administrators. For
12 instance, claims for penalties pursuant to ERISA section 502(c) brought under section
13 502(a)(1)(A) may only be asserted against the plan administrator. *See Vaught v. Scottsdale*
14 *Healthcare Corp. Health Plan*, 546 F.3d 620, 633 (9th Cir. 2008) (finding section 502(c) claim
15 fails as a matter of law when not asserted against plan administrator); *McCollum v. Blue Shield of*
16 *Cal. Life & Health Ins. Co.*, Case No. 12-cv-01650 PSG, 2012 WL 5389711, at *3-4 (N.D. Cal.
17 Nov. 2, 2012) (finding claim under section 502(c) can only be asserted against the "plan
18 administrator" and dismissing claim with prejudice where asserted against insurer) (citing *Sgro v.*
19 *Danone Waters of N. Am., Inc.*, 532 F.3d 940, 945 (9th Cir. 2008)).

    **2. Analysis**

       **a. Plan "Administrator" Under ERISA**

22      In his complaint, Bush states that Hyundai is "the Plan Administrator of the Hyundai LTD
23 Plan within the meaning of ERISA § 3(16)(A) according to the Summary Plan Description . . . ."
24 (Complaint ¶ 8.) Bush also states that Hyundai is the "Sponsor" pursuant to ERISA section
25 3(16)(B). (*Id.*) For purposes of this motion, the Court finds that Hyundai is the plan administrator
26 as the term is defined under the statute.
27      Bush alleges that Liberty Life "serves as the *de facto* plan administrator . . . within the
28 meaning of ERISA § 3(16)(A)." (*Id.* ¶ 9.) Bush failed to raise this issue in his opposition brief.

6

1  Moreover, as noted above, courts in the Ninth Circuit have typically rejected extending plan

2  administrator liability beyond the specific entity that formally holds that designation.  The Court

3  declines to do so here, despite Bush's allegations that Hyundai delegated certain of its

4  responsibilities as plan administrator—such as drafting the SPD—to Liberty Life.  (*Id*. ¶ 52, 101,

5  146.)  The Court finds that those activities are insufficient to subject Liberty Life to liability as a

6  *de facto* plan administrator in light of the high bar for such a finding in the Ninth Circuit.

### b. Whether Count II May Be Asserted Against Liberty Life

Count II seeks equitable relief under ERISA sections 102 and 502(a)(3), against both defendants.  (Complaint ¶¶ 141-154.)  While plaintiff correctly points out that claims for equitable relief pursuant to section 502(a)(3) are available against a fiduciary such as Liberty Life, this particular claim is premised on substantive violations of section 102 and related Department of Labor regulations.  Specifically, Count II focuses on alleged failings in the Summary Plan Description ("SPD").  Citing merely dicta, plaintiff has identified no authority supporting contravention of the plain language of the statute and placing section 102 obligations on non-plan administrators.  Thus, the Court finds that because Liberty Life is not the plan administrator it has no section 102 statutory obligations.  Count II therefore fails to state a claim as to Liberty Life.  As any amendment would be futile, leave to amend is not granted.  *See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir.2004) (finding a "district court does not err in denying leave to amend where the amendment would be futile") (quoting *Saul v. United States*, 928 F.2d 829, 843 (9th Cir.1991)); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir.2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir.1996)).

### c. Whether Count IV May Be Asserted Against Liberty Life

Count IV alleges violations of ERISA sections 104 and 402 and seeks monetary penalties under ERISA sections 502(a)(1)(A) and 502(c), against both defendants.[3]  (Complaint ¶¶ 158-175.)  The complaint states: "The employer (or plan sponsor) is responsible for establishing the terms of the plan and therefore the written instrument that complies with ERISA § 402.  By

---

[3] Count IV also references other ERISA provisions, such as section 102, which as noted above applies specifically to plan administrators.

1  contrast, a fiduciary, usually the plan administrator, is responsible for drafting and providing
2  participants with the summary documents that describe the plan pursuant to ERISA § 102 and
3  104." (Complaint ¶ 163.)  As noted above, the party responsible for providing an SPD pursuant to
4  section 104 is Hyundai, the plan administrator.  Moreover, the monetary penalties sought pursuant
5  to section 502(c), as conceded by plaintiff (Oppo. at 2), similarly must be directed solely against
6  the plan administrator.  *See, e.g.*, *Moran v. Aetna Life Ins. Co.*, 872 F.2d 296, 299-300 (9th Cir.
7  1989) ("Because [the insurer] was not designated as plan administrator in the policy and is not the
8  plan sponsor, it is not liable under [ERISA section 502(c)].").  Finally, on its face, the complaint
9  states that the plan sponsor, Hyundai, is responsible for complying with ERISA § 402. (Complaint
10 ¶ 163.)

Plaintiff argues he seeks only declaratory relief—not penalties—as to Liberty Life under Count IV, and claims that this distinction allows him to assert Count IV against Liberty Life even though it would otherwise be barred.  However, plaintiff fails to present any authority supporting that distinction.  Under the statutory scheme, Hyundai would be the party responsible, not Liberty Life.  The Court thus finds that Count IV also fails to state a claim for which relief can be granted against Liberty Life.  Again, as any amendment would be futile, leave to amend is not granted.

### d. Whether Count V May Be Asserted Against Liberty Life

Count V addresses purported violations of substantive requirements in section 503 regarding the notice and appeals process in plaintiff's case.  Liberty Life correctly argues that penalties under section 502(c), as noted above, are only available as to the plan administrator.  But plaintiff counters that Count V does not specifically seek penalties, and that other forms of relief—such as remand—are available.  Plaintiff cites two cases where non-plan administrator insurers were found to violate section 503.  *See Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1087 (8th Cir. 2009) (holding insurer violated section 503(2) and ordering remand); *VanderKlok v. Provident Life & Acc. Ins. Co.*, 956 F.2d 610, 615 (6th Cir. 1992) (finding regulations promulgated under section 503 applied to insurer where the plan delegated certain claims processing and noticing obligations to the insurer).  Liberty Life has failed to put forward legal authority that establishes only plan administrators are responsible for complying with section 503.

1  The cases cited by Liberty Life for this proposition are instead focused on section 502(c) penalties. *See, e.g.*, *Sgro*, 532 F.3d at 945 (9th Cir. 2008). Therefore, the Court declines to dismiss Count V against Liberty Life at this time.

### B. "Duplicative" Counts (II, III, and V)

A developing area of the law concerns the extent to which a plaintiff seeking benefits under ERISA section 502(a)(1)(B) is foreclosed from simultaneously requesting equitable relief under 502(a)(3). Liberty Life seeks dismissal of Counts II and III, which seek equitable relief pursuant to (a)(3), claiming they are impermissibly duplicative of the (a)(1)(B) relief sought in connection with Count I. As Count III is exclusively asserted against Liberty Life, Hyundai only joins this request with respect to Count II. Defendants similarly seek dismissal of Count V on the grounds that it fails to state a claim and is impermissibly duplicative of Count I. Bush argues that he is permitted to plead in the alternative at this stage of the case and, moreover, that he seeks different forms of relief under each count at issue.

#### 1. Legal Framework

Count I is brought pursuant to ERISA section 502(a)(1)(B), which allows a civil action to be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." This section provides a typical route for relief in the case of wrongfully denied ERISA benefits claims.

In contrast, Counts II and III are premised on section 502(a)(3), which allows a civil action to be brought:

> by a participant, beneficiary, or fiduciary
> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
> (B) to obtain other appropriate equitable relief
>   (i)   to redress such violations or
>   (ii)  to enforce any provisions of this subchapter or the terms of the plan.

Section 502(a)(3) has been called a "catchall" provision, a "safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).

1         A claim for relief under section (a)(1)(B) does not automatically preclude a claim under
2  section (a)(3), especially at the pleading stage. Courts of this district have found that (a)(3) claims
3  remain viable even when an (a)(1)(B) claim is asserted, particularly where the relief sought in
4  connection with each claim is distinct. *See Sconiers v. First Unum Life Ins. Co.*, 830 F. Supp. 2d
5  772, 777 (N.D. Cal. 2011) (502(a)(3) claim for reformation and 502(a)(1)(B) claim for benefits
6  could both proceed because equitable relief was based on a separate theory, affirmative
7  misrepresentations about plaintiff's claim); *Echague v. Metro. Life Ins. Co.*, Case No. 12-cv-
8  00640 WHO, 2014 WL 2089331, at *12 (N.D. Cal. May 19, 2014) (claim under section 502(a)(3)
9  is not foreclosed by claim under 502(a)(1)(B), though relief sought was similar).
10        At the pleading stage, a plaintiff may assert section (a)(1)(B) and (a)(3) claims in the
11 alternative if they are premised upon different theories of liability and plaintiff seeks alternative
12 remedies. *See Fowler v. Aetna Life Ins. Co.*, Case No. 08-cv-03463 WHA, 2008 WL 4911172, at
13 *5 (N.D. Cal. Nov. 13, 2008) ("At this early stage in litigation, any dismissal would be premature.
14 Without a more fully-developed record, no one in this action is yet in a position to determine what,
15 if any, equitable relief [plaintiff] may be entitled to or whether or not section 502(a)(1) provides
16 her with adequate relief for any wrong."); *Gurasich v. IBM Ret. Plan*, Case No. 14-cv-02911
17 DMR, 2014 WL 5454525, at *5 (N.D. Cal. Oct. 27, 2014).
18        **2. Analysis**
19        Liberty Life (joined by Hyundai as to Count II) argues Counts II and III, seeking equitable
20 relief pursuant to section 502(a)(3), must be dismissed as duplicative of Count I's section
21 502(a)(1)(B) claim. Defendants also argue Count V should be dismissed for failure to state a
22 claim and because it is impermissibly duplicative of Count I. Counts II, III, and V will be
23 addressed in turn.
24            **a. Count II**
25        Count II seeks equitable relief under ERISA sections 102 and 502(a)(3). (Complaint ¶¶
26 141-154.) As discussed above, Count II is premised upon defendants' alleged failings in
27 connection with the SPD. According to plaintiff, he seeks relief under Count II only if Count I
28 fails. Specifically, only if the terms of the plan are interpreted, under Count I, to permit the VA

benefits offset, then plaintiff seeks reformation under Count II to redress alleged miscommunication of the terms of the Plan in the SPD. (Oppo. at 13-14.) Reformation is available as a remedy under 502(a)(3); it is *not* available as a remedy pursuant to 502(a)(1)(B). *See CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1877-80 (2011). Plaintiff is entitled to pursue these alternative theories, seeking alternative relief, at this early stage in the litigation.

Defendants argue plaintiff has failed to allege facts supporting a finding that their conduct was "false or misleading" (Reply at 4 n.2), a requirement for reformation. Recently, the Ninth Circuit held "[u]nder a fraud theory, a plaintiff may obtain reformation when either (1) '[a trust] was procured by wrongful conduct, such as undue influence, duress, or fraud,' or (2) a 'party's assent [to a contract] was induced by the other party's misrepresentations as to the terms or effect of the contract' and he 'was justified in relying on the other party's misrepresentations.'" *Gabriel v. Alaska Elec. Pension Fund*, Case No. 12-35458, 2014 WL 7139686, at *6 (9th Cir. Dec. 16, 2014) (quoting *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1166 (9th Cir. 2012)). Statements made by fiduciaries that are contrary to clear and express terms of the plan are an insufficient basis for reformation. *Id*. at *7. However, such statements "that are not contrary to the plan's written provisions" and that "may gave effect to interpretations of ambiguous plan provisions" may support a claim seeking reformation. *Id*. (internal quotations omitted). The Court finds that plaintiff's complaint sufficiently alleges facts to support his claim that the SPD misleadingly omitted relevant information about the purported VA benefits offset. (*See, e.g.*, Complaint ¶ 147 ("Neither the 'Summary Plan Description' nor the 'Certificate of Coverage' contains language that reasonably could be calculated to be understood by the average plan participant to identify income received as Veterans Benefits to be income eligible to be offset under the terms of the Liberty Life Policy.").) The motion on this ground is **DENIED**.

### b. Count III

Count III, also pursuant to section 502(a)(3), seeks: (1) disgorgement of profits earned by Liberty Life on allegedly wrongfully withheld benefits, and (2) injunctive relief requiring Liberty Life to administer the plan without a VA benefits offset only to the extent that injunctive relief is not permitted under section 502(a)(1)(B). (Complaint ¶¶ 155-57.) Liberty Life argues such relief

11

is not available because section 502(a)(1)(B) already provides those precise remedies, but offers no binding authority supporting its contention. The Court finds the out-of-circuit authority cited by plaintiff is more persuasive. Those cases hold that interest on wrongfully withheld profits can be recovered under 502(a)(3). *See, e.g., Dunnigan v. Metro. Life Ins. Co.*, 277 F.3d 223, 229 (2d Cir. 2002). Moreover, the injunctive relief sought under Count III is specifically limited in the complaint such that, if available at all, it cannot be duplicative of relief available under Count I. The Court finds that Count III states a claim for relief that is not merely duplicative of the relief available under Count I. The motion on this ground is **DENIED**.

### c. Count V

As previously noted, Count V alleges violation of ERISA section 503, which provides guidelines regarding employee benefit plan denial notices and appeals. Under Count V, plaintiff seeks only declaratory relief based on his allegations that the claim denial letter and appeal denial letter he received did not comply with section 503. (Oppo. at 7.) At issue is whether Count V fails to state a claim or is impermissibly duplicative of Count I. Specifically, defendants argue Count V should be dismissed because:

> (1) an alleged breach of Department of Labor regulations does not support a claim under ERISA § 502(c), 29 U.S.C. §1132(c) or a claim under ERISA § 503, 29 U.S.C. § 1133; (2) a request for claim documents cannot be relied on to seek statutory penalties for violation of the claim regulations set forth in 29 C.F.R. §2560.503-1(h)(2)(iii); and (3) to the extent Plaintiff seeks a remedy of remand under Count V, this claim is duplicative of Count I and also does not seek substantive relief.

(Dkt. No. 33 (Hyundai's Joinder in Reply).)

As to defendants' first and second arguments, Count V does not specifically seek section 502(c) penalties.[4] Plaintiff points out that other forms of relief are available for section 503 violations (e.g., remand or a reversal of an adverse benefits decision or a modified standard of review). On the pleadings, plaintiff is not required to identify specifically the forms of relief sought in connection with a cause of action. The Court notes that while plaintiff's cited authority

---

[4] While defendants appear to argue that an alleged breach of Department of Labor regulations can neither support a claim under section 503 nor section 502(c), defendants failed to cite any authority in support of this contention that did not involve section 502(c) penalties.

12

does indicate the availability of reversal and remand, those cases do not appear to involve claims brought *pursuant* to section 503. Instead, they address standard claims brought under section 502(a) or 502(c), the resolution of which involved the question of whether the defendants complied with section 503. *See, e.g., Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1088 (8th Cir. 2009). Nevertheless, this distinction is merely stylistic, as Count V references section 502(a)(3) in paragraph 177. In regards to defendants' third argument, as addressed above, plaintiff is permitted to advance alternative theories at this early stage. Count V does so by alleging a specific violation of section 503. Of course, no double recovery will be permitted. The Court therefore declines to dismiss Count V at this time and so the motion on this ground is **DENIED**.

**IV. CONCLUSION**

In light of the foregoing, the Court hereby rules as follows:

1. Liberty Life's Motion to Dismiss Count II on the ground that it can only be asserted against the plan administrator is **GRANTED** and Count II is **DISMISSED WITH PREJUDICE** only as to Liberty Life;
2. Liberty Life's Motion to Dismiss Count IV on ground that it can only be asserted against the plan administrator is **GRANTED** and Count IV is **DISMISSED WITH PREJUDICE** only as to Liberty Life;
3. Defendants' Motion to Dismiss Count II on the ground that it is impermissibly duplicative of Count I is **DENIED**;
4. Liberty Life's Motion to Dismiss Count III on the ground that it is impermissibly duplicative of Count I is **DENIED**; and
5. Defendants' Motion to Dismiss Count V alleging violation of section 503 is **DENIED**.

Defendants shall file their answers as to the remaining claims asserted against them by **January 22, 2015**. A Case Management Conference shall be held on the Court's **2 p.m.** calendar on **February 9, 2015**, in Courtroom 1 of the United States Courthouse located at 1301 Clay Street in Oakland, California.

This Order terminates Docket No. 21.

**IT IS SO ORDERED**.

Dated: January 2, 2015

_____
YVONNE GONZALEZ ROGERS
United States District Court Judge

14