1

2

3

4                         UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    JAMES L. BUSH,                              Case No.  14-cv-01507-YGR

                    Plaintiff,
8
          v.                                     ORDER RE: MOTIONS TO DISMISS FIRST
9                                                AMENDED COMPLAINT

10   LIBERTY LIFE ASSURANCE COMPANY OF           Re: Dkt. Nos. 87, 90
     BOSTON, ET AL.,
11
                    Defendants.

12         Plaintiff James L. Bush brings this Employee Retirement Income Security Act of 1974, as

13   amended ("ERISA")[1] putative class action against defendants Liberty Life Assurance Company of

14   Boston ("Liberty Life"), Hyundai Motor America ("Hyundai"), and the proposed "Administrator

15   Class."[2]  The dispute arises from Liberty Life's decision to decrease the long-term disability

16   benefits it paid to plaintiff by the amount he received from the Department of Veterans Affairs

17   ("VA").

18         Plaintiff filed his initial complaint on April 1, 2014.  (Dkt. No. 1 ("Complaint").)  On

19   January 2, 2015, the Court granted in part and denied in part a motion to dismiss filed by Liberty

20   Life and joined, in part, by Hyundai.  *Bush v. Liberty Life Assurance Co. of Boston*, 77 F. Supp. 3d

21   900, 902 (N.D. Cal. 2015) ("*Bush I*").  On April 20, 2015, plaintiff filed a First Amended

22   Complaint, asserting twelve claims for: (1) disability benefits under section 502(a)(1)(B), against

23   Liberty Life; (2) equitable relief pursuant to sections 102 and 502(a)(3), against Hyundai and the

24   Administrator Class; (3) equitable relief and disgorgement pursuant to section 502(a)(3), against

25

26         _____

              [1] Unless otherwise noted, citations to statutory sections herein refer to ERISA.
27
              [2] Newly included in the amended complaint, the "Administrator Class" is a proposed
28   defendant class of Plan Administrators with long-term disability plans issued by Liberty Life.

Liberty Life; (4) breach of fiduciary duty under section 404, against Liberty Life; (5) breach of fiduciary duty under section 404, against Hyundai and the Administrator Class; (6) co-fiduciary liability under section 405(a), against Liberty Life; (7) prohibited transactions under section 406(a) and (b), against Liberty Life; (8) violations of sections 104 and 402 and monetary penalties under sections 502(a)(1)(A) and 502(c), against Hyundai; (9) violation of section 503, against Liberty Life and Hyundai; (10) declaratory and injunctive relief under section 502(a)(3), against Liberty Life; (11) declaratory and injunctive relief and restitution under sections 2201-02, against Liberty Life; and (12) knowing participation in a fiduciary breach by a non-fiduciary under section 502(a)(3), against Liberty Life.  (Dkt. No. 77 ("FAC").)

Liberty Life and Hyundai again moved to dismiss.  (Dkt. Nos. 87, 90.)  Having carefully considered the papers submitted, the record in this case, and the arguments of counsel presented at the July 21, 2015 hearing, and good cause shown, the Court hereby **DENIES** Hyundai's motion and **GRANTS IN PART** and **DENIES IN PART** Liberty Life's motion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's allegations center around Liberty Life's decision to offset the long-term disability benefits he was otherwise owed by the amount he received in VA disability payments.[3] The relevant background was detailed in the Court's January 2, 2015 Order.  *See Bush I*, at 902-03.  Those underlying facts, as pled in the FAC, are largely unchanged.  However, the FAC, as noted, added a proposed defendant class—termed the "Administrator Class"—and doubled the number of counts asserted, from six to twelve.  Certain additional facts are asserted to support the newly alleged ERISA violations, as noted below.

## II.   LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550

---

[3] The factual allegations in the complaint are accepted as true for purposes of considering this motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

U.S. 544, 554 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)). The Court will not assume facts not alleged, nor will it draw unwarranted inferences. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Pursuant to Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Id.* at 678-79; *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (holding a court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

## III.   DISCUSSION

### A.   Hyundai's Motion

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Hyundai filed a motion to dismiss Counts II, V, and VIII on multiple grounds. (Dkt. No. 87 ("Hyundai Mot.").) As to Counts II and V, Hyundai argues: (1) the claims are improperly pled in the alternative to Count I in such a way that it would be "logically impossible" for plaintiff to prevail on those claims; and (2) plaintiff has

3

1 no available remedy under those claims as to Hyundai.  (*Id.* at 6-7.)  As to Count VIII, Hyundai

2 argues that, as a matter of law, the FAC establishes that the plan at issue was maintained pursuant

3 to a "written instrument," undercutting this claim.  (*Id.* at 7.)

4   As a threshold matter, the Court addresses plaintiff's contention that Hyundai's arguments

5 have been waived due to its failure to argue them in connection with its original motion to dismiss

6 (a joinder, in part, in Liberty Life's motion).  Federal Rule of Civil Procedure 12(g)(2) provides

7 that "a party that makes a motion under this rule [including for failure to state a claim] must not

8 make another motion under this rule raising a defense or objection that was available to the party

9 but omitted from its earlier motion."  One treatise describes the rule as follows:

> Simply stated, the objective of the . . . rule is to eliminate
> unnecessary delay at the pleading stage.  Subdivision (g)
> contemplates the presentation of an omnibus pre-answer motion in
> which the defendant advances every available Rule 12 defense and
> objection he may have that is assertable by motion.  The defendant
> cannot delay the filing of a responsive pleading by interposing these
> defenses and objections in piecemeal fashion, but must present them
> simultaneously.  Any defense that is available at the time of the
> original motion, but is not included, may not be the basis of a second
> pre-answer motion.

16 Fed. Prac. & Proc. Civ. § 1384 (3d ed.).  Certain defenses or objections, such as those relating to

17 lack of subject-matter jurisdiction or failure to state a claim, will not be permanently waived.

18 Instead, while the defendant may be precluded from raising them in a pre-answer motion, they

19 may be subsequently raised in a motion for judgment on the pleadings or on summary judgment.

20 *See* Fed. R. Civ. P. 12(h).

21   Hyundai claims its arguments in the instant motion were not available as to the original

22 complaint, but only arose in connection with changes made in the FAC.  This argument does not

23 persuade.  First, in moving to dismiss Counts II and V, Hyundai contends it is "logically

24 impossible" for the plaintiff to ever prevail on these counts.  This argument flows, in broad

25 strokes, as follows: (1) Count I alleges the offset provision of the plan does not permit VA benefits

26 offsets; (2) Counts II and V, pled in the alternative, allege that even if VA offsets are permitted

27 under the plan language, insufficient disclosure of those terms renders the provision

28 unenforceable; (3) because the verbatim offset language from the plan was included in the

United States District Court
Northern District of California

Summary Plan Description ("SPD"), as a matter of law such disclosure would have been sufficient if the plaintiff loses on Count I; and (4) if the plaintiff prevails on Count I, these "alternative" counts necessarily fail.  To the extent Hyundai argues new, unidentified allegations in the FAC describe, for the first time, the inclusion of this offset language in the SPD, Hyundai fails to address the fact that the original complaint also frequently referenced the SPD, such that Hyundai could have requested judicial notice of that document in connection with its first motion.[4]

Second, in moving to dismiss Counts II and V, Hyundai argues no relief is available under those counts because only Liberty Life has the power to reform the terms of the agreement. Hyundai appears to concede that it could have raised this issue in its first motion.

Third, Hyundai claims that because Count V is newly asserted in the FAC, it could not have raised its arguments as to that claim in its original motion.  However, Hyundai raises identical issues with respect to both Counts II and V.  Had it raised these points in connection with its original motion as to Count II, plaintiff could have taken the resulting ruling into account in formulating—or choosing to leave out—the newly pled Count V, thus vitiating the need for further motion practice at the pleading stage.

Finally, Hyundai fails to address why it could not have moved to dismiss Count VIII (included as Count IV in the original complaint) in its first motion.  The Court, in reviewing the respective allegations from each complaint, finds no reason why the argument could not have been raised at that time.

Thus, the Court finds that the grounds for dismissal raised in Hyundai's motion could have properly been raised by Hyundai in its original motion to dismiss—which, in this case, happened to be a joinder, in part, in Hyundai's motion.  Hyundai was free to file a separate motion at that time, raising these issues, but perhaps strategically chose to first await the result of Liberty Life's efforts.  Such an approach needlessly complicated the pleading stage of this case.  While Hyundai

---

[4] Hyundai's argument that the initial complaint did not specifically note Count II was pled in the alternative to Count I is disingenuous, as the motion it joined as to that complaint strenuously argued, as a matter of law, that plaintiff would not be entitled to prevail on both Counts I and II, and indeed plaintiff conceded in its opposition brief that those counts were pled in the alternative.

1    cites authority suggesting the Court may nevertheless consider its arguments at this stage despite

2    the plain language of Rule 12(g)(2), the Court declines, in light of the procedural history of this

3    case, to exercise any such authority.  As a result, Hyundai's motion to dismiss is **DENIED**.

4        **B.    Liberty Life's Motion**

5        Pursuant to Federal Rule of Civil Procedure 12(b)(6), Liberty Life filed a motion to

6    dismiss Counts III, IV, VI, VII, XI, and XII, for failure to state a claim upon which relief can be

7    granted.  The Court addresses each in turn:

8        **1.    Count III**

9        The argument raised by Liberty Life as to Count III (equitable relief and disgorgement

10   pursuant to section 502(a)(3))—that it is impermissibly duplicative of Count I (disability benefits

11   under section 502(a)(1)(B))—was raised in Liberty Life's previous motion, and rejected by the

12   Court.  (*See Bush I*, at 909-10.)[5]  Liberty Life also raises this argument as to certain newly asserted

13   counts.  Liberty Life's motion on this point is, essentially, a procedurally improper motion for

14   reconsideration.  *See* Civil Local Rule 7-9; *Phase Forward Inc. v. Adams*, No. 05-CV-4232-JF,

15   2007 WL 2471486, at *1 (N.D. Cal. Aug. 30, 2007) ("Defendant's request for reconsideration is

16   procedurally deficient because Defendant did not first seek leave to file the request as required by

17   Local Rule 7-9(a).").  Moreover, the only basis for reconsideration put forth by Liberty Life is an

18   intervening decision by the Sixth Circuit, *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364 (6th Cir.

19   2015) (en banc), which is, of course, not binding on this Court.  In connection with its earlier

20   motion, Liberty Life had already, unpersuasively, pointed to similar out-of-circuit authority.  As

21   such, the motion on Count III is **DENIED**.

22       **2.    Count IV**

23       In Count IV (breach of fiduciary duty under section 404), pled in the alternative to Count I,

24   plaintiff challenges Liberty Life's drafting of the Certificate of Coverage and SPD.  Specifically,

25   plaintiff alleges "Liberty Life assumed responsibility for providing participants with information

26

27       [5] To the extent Liberty Life raises new arguments for dismissal of Count III, those
     arguments are procedurally improper for the reasons discussed above in connection with
28   Hyundai's motion.

United States District Court
Northern District of California

1    about their eligibility for benefits . . . and drafted the Certificate of Coverage and [SPD] . . . ."

2    (FAC ¶ 199.)  He then alleges those documents fail to disclose adequately the offset at issue, and

3    that Liberty Life failed to take other steps to so inform participants.  (*Id.* ¶¶ 200-210.)  This claim

4    is presented as one for a breach of fiduciary duty under section 404.  Section 404 provides that

5    fiduciaries must discharge their duties "solely in the interest of the participants and beneficiaries"

6    and with reasonable care and diligence, among other requirements.

7            As to Count IV, Liberty Life renews an argument upon which it prevailed as to two counts

8    asserted against it in the initial complaint—namely, that this claim is only available against the

9    "plan administrator," Hyundai, and so may not be asserted against the insurer, Liberty Life.  The

10   FAC still alleges that "Hyundai Motor America is . . . the Plan Administrator . . . ."  (FAC ¶ 8.)

11   Thus, the Court again finds, for purposes of this motion, that Hyundai is the plan administrator as

12   that term is defined in the statute.  (*See Bush I*, at 905-06.)  The Court also notes that it previously

13   held that only Hyundai was responsible for purported failings in the SPD pursuant to sections 102

14   and 104.  (*Id.* at 906-07.)

15           Liberty Life cites a Fourth Circuit decision which held fiduciaries were not obligated to

16   furnish information to plan participants over and above those documents that administrators must

17   furnish pursuant to section 104.  *See Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 657 (4th Cir.

18   1996) (rejecting the argument that "ERISA's general fiduciary duty provision, § 404(a)(1)(A),

19   requires plan fiduciaries to furnish documents to participants and beneficiaries in addition to the

20   documents that ERISA's specific disclosure provision, § 104(b)(4), requires" because "[s]uch a

21   holding would conflict with the principle that specific statutes govern general statutes").  The

22   Court agrees that, to the extent Count IV seeks to hold a non-plan administrator responsible for

23   obligations of solely the administrator under sections 102 or 104, the claim fails.  However, the

24   claim also alleges a breach of fiduciary duty arising from Liberty Life's purportedly misleading

25   benefits letters.  While it may be true that Liberty Life similarly has no such obligation, it has

26   failed to put forth any authority directly addressing this aspect of the claim.  Given the law

27   continues to develop in this area, the Court declines to dismiss Count IV in its entirety at this time,

28   and **DISMISSES** Count IV only insofar as it seeks to hold Liberty Life responsible for failings in the

United States District Court
Northern District of California

SPD.  As any amendment would be futile, leave to amend as to the dismissed portion of the claim

is not granted.  *See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.,* 368 F.3d 1053, 1061 (9th

Cir. 2004) (finding a "district court does not err in denying leave to amend where the amendment

would be futile") (quoting *Saul v. United States,* 928 F.2d 829, 843 (9th Cir. 1991)); *see*

*also Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Chang v.*

*Chen,* 80 F.3d 1293, 1296 (9th Cir. 1996)).

### 3.    Count VI

In Count VI (co-fiduciary liability under section 405(a)), plaintiff seeks to hold Liberty

Life accountable for an alleged breach of fiduciary responsibility by Hyundai.  Section 405(a)

provides as follows:

> In addition to any liability which he may have under any other
> provisions of this part, a fiduciary with respect to a plan shall be
> liable for a breach of fiduciary responsibility of another fiduciary
> with respect to the same plan in the following circumstances:
>
> (1) if he participates knowingly in, or knowingly undertakes to
> conceal, an act or omission of such other fiduciary, knowing such
> act or omission is a breach;
>
> (2) if, by his failure to comply with section 1104(a)(1) of this title in
> the administration of his specific responsibilities which give rise to
> his status as a fiduciary, he has enabled such other fiduciary to
> commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless
> he makes reasonable efforts under the circumstances to remedy the
> breach.

Plaintiff alleges Liberty Life drafted the Certificate of Coverage and SPD on behalf of a

number of plan administrators for which it provides insurance coverage, including Hyundai.

(FAC ¶¶ 220-21.)  He further alleges that by providing these documents in a manner that "fail[ed]

to disclose that Veterans Disability Benefits is a form of income eligible for offset," and expecting

that those documents would be provided to participants, Liberty Life enabled the plan

administrators to commit a breach of fiduciary duties and took no reasonable steps to remedy

those breaches.  (*Id*. ¶¶ 221-23.)

Liberty Life puts forth two primary arguments in support of dismissal: (1) that the

allegations put forth in support of Count VI are conclusory and insufficient to render the claim

8

plausible; and (2) that Count VI is impermissibly duplicative of Count I.  As to the first point, the non-binding authority put forth by Liberty Life in support of its position is distinguishable and does not persuade.  *See, e.g.*, *In re Syncor ERISA Litig.*, 351 F. Supp. 2d 970, 988 (C.D. Cal. 2004) (dismissing co-fiduciary liability claim where the plaintiffs provided "no facts to support" their conclusory allegations).  Here, the FAC does not merely present conclusory allegations, but instead offers a theory of co-fiduciary liability premised upon specific conduct by Liberty Life— its provision of purportedly deficient plan documents to plan administrators with the knowledge that those administrators would distribute said documents to members.  These allegations are sufficient to render plausible plaintiff's claim of a violation of at least subsections 405(a)(1) and (3).

As to Liberty Life's second point, the Court finds this count properly pled in the alternative at this early stage in the case for the same reasons enumerated in *Bush I*.

Thus, the motion as to Count VI is **DENIED**.

### 4.    Count VII

Count VII accuses Liberty Life of violating sections 406(a) and (b), which prohibit certain transactions by a plan's fiduciary in connection with the plan and its assets.  Specifically, Count VII alleges that Liberty Life undertakes a prohibited transaction where it "seeks to withhold, recover and retain for its own use LTD benefits paid by Liberty Life that it determines were 'overpaid' to Plaintiff and the Benefits Class in the form of Veterans Disability Benefits."  (FAC ¶ 230.)  In so doing, Liberty Life purportedly "retains the recovered amounts in its own general accounts" and "uses these benefits for its own financial benefit and at the expense of Plaintiff and the Liberty Life Subclass, who lose the benefit."  (*Id*. ¶¶ 230-31.)

Liberty Life argues the accused conduct simply does not fall within the scope of the section.  The Court agrees.  Plaintiff seeks an expansive reading of section 406 that would render almost any wrongful benefits denial determination by an insurer a prohibited transaction under the statute.  Such errors are properly addressed elsewhere in the statute, such as through a claim seeking disability benefits under section 502(a)(1)(B)—asserted as Count I in the FAC.  The prohibited transactions statute is focused on misuse of plan assets or self-dealing by a fiduciary in

connection with its supervisory role over the plan.  A mere benefits denial determination is not the type of transaction this section was intended to address.  *See Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004) ("Congress enacted [section 406] 'to bar categorically a transaction . . . likely to injure the pension plan.").  Allegations of "a lawful decision to remain in full compliance with the explicit language of the Plan's terms" and the absence of a transaction "akin to a 'sale, exchange, or leasing of property, . . . [or] the lending of money or extension of credit," fail to state a claim under this section.  *Id.* at 1101.  Plaintiff attempts to distinguish this authority by arguing Liberty Life's decision was *not* "lawful," and pointing to cases that define "plan assets" broadly.  *See, e.g.*, *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1467 (9th Cir. 1995) (finding use of right to receive future residual distributions from a plan, after the plan's termination, as collateral in order to obtain a loan constituted use of a plan asset).  The Ninth Circuit follows a two-part test for determining whether a particular "item" constitutes a plan asset: "(1) whether the item in question may be used to the benefit (financial or otherwise) of the fiduciary, and (2) whether such use is at the expense of the plan participants or beneficiaries."  *Id.* Here, however, the Court is not persuaded that this test is applicable in the first instance, as Liberty Life is simply an insurer and no allegations support a finding that any assets of the *plan* are at issue.  Instead, according to the FAC, Hyundai or other plan sponsors pay premiums to Liberty Life in exchange for its promise, as an *insurer*, to pay benefits in accordance with the terms of the plans in question.  Thus, as noted, plaintiff's interpretation—unsupported by any binding authority directly on point—would transform any claim for an improper benefits denial by an insurer into a "prohibited transaction."  While the Court is aware of no Ninth Circuit authority directly on point, in light of the purpose of the provision (discussed above), the Court declines to so extend its scope.

Plaintiff has not identified an alternative theory to support this claim.  In light of the Court's finding that this theory fails as a matter of law, granting leave to amend would be futile.  Consequently, Count VII is **DISMISSED WITHOUT LEAVE TO AMEND**.

### 5.   Count XI

Count XI seeks declaratory and injunctive relief and restitution pursuant to the Declaratory

Judgment Act, 28 U.S.C. §§ 2201-02, based upon a purported violation of 38 U.S.C. § 5301(a), which protects VA benefits from attachment.  The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  The relevant portion of the exemption statute provides as follows:

> Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary

38 U.S.C. § 5301(a)(1).

Count XI alleges Liberty Life, merely by withholding or seeking to recover purported overpayments, "has made an 'attachment, levy or seizure'" in violation of the anti-attachment provision.  (FAC ¶ 288.)  Plaintiff claims that, under *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083 (9th Cir. 2012), Liberty Life cannot obtain an equitable lien over plaintiff's VA benefits.  *Bilyeu* addressed the question of whether an insurer could obtain an equitable lien by agreement against a beneficiary to recover overpayments due to an offset of her social security benefits.  *Bilyeu*, 683 F.3d at 1086-94.  The Ninth Circuit found that an equitable lien could not be established because the specific fund identified—the purported overpayments— had already been spent.  *Id*. at 1094.  However, Count X—which Liberty Life does not challenge—already seeks a declaratory judgment that the policy in question does not contain language sufficient to establish an equitable lien by agreement.  Count XI appears to go further, seeking a declaratory judgment that, as a matter of law, VA benefits can *never* be offset from payments due under a long-term disability policy.  However, the authorities cited by plaintiff merely stand for the uncontroversial and undisputed proposition that VA benefits cannot themselves be attached.  There is apparently no controversy as to that point, and so declaratory judgment as to that basic point is unnecessary.  Liberty Life cites authority suggesting social security offsets may be appropriate despite an analogous anti-attachment statute.  *See Cusson v.*

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1  *Liberty Life Assur. Co. of Boston*, 592 F.3d 215, 232 (1st Cir. 2010). Plaintiff puts forth no

2  authority supporting the proposition that VA benefits may never be offset as a matter of law, and

3  suggests no additional facts that could be asserted in amending the claim. Thus, Count XI is

4  **DISMISSED WITHOUT LEAVE TO AMEND**.

5        **6.   Count XII**

6        In Count XII, plaintiff alleges—in the alternative to certain of its prior claims, in the event

7  that Liberty Life is not found to be a fiduciary—that Liberty Life knowingly participated in a

8  fiduciary breach by a fiduciary (Hyundai and other plan administrators) in violation of section

9  502(a)(3). Specifically, the complaint alleges Liberty Life knowingly participated in Hyundai's

10  breach of its obligations under section 102 to provide an SPD that "reasonably apprise[d] . . .

11  participants and beneficiaries of their rights and obligations under the plan." (FAC ¶¶ 194, 294.)

12  Liberty Life argues plaintiff fails to plead adequately "what was false or misleading." (Dkt. No.

13  94 at 12 n.4.) At the pleading stage, the allegations in the complaint on this point are sufficient to

14  state a claim. Additionally, Liberty Life argues this is simply an end-run around this Court's

15  earlier order finding section 102 obligations were specific to the plan administrator. While it is

16  true that only the administrator is obligated to comply with section 102, a non-fiduciary may be

17  liable for knowingly participating in the administrator's breach of that duty. *See Cyr v. Reliance*

18  *Standard Life Ins. Co.*, 642 F.3d 1202, 1206 (9th Cir. 2011) (noting the Supreme Court in *Harris*

19  *Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000), "rejected the

20  suggestion that there was a limitation contained within [section 502(a)(3)] itself on who could be a

21  proper defendant in a lawsuit under that subsection"); *Solis v. Couturier*, 08-CV-02732, 2009 WL

22  1748724, at *4 (E.D. Cal. June 19, 2009) ("When the Supreme Court states that there is 'no limit [

23  . . . ] on the universe of possible defendants' who knowingly participate in a fiduciary's violation,

24  this Court must conclude that 'no limit' means 'no limit'") (alteration in original); *Daniels v.*

25  *Bursey*, 313 F. Supp. 2d 790, 808 (N.D. Ill. 2004) ("*Harris* makes clear that a nonfiduciary does

26  not have to labor under a duty imposed by a substantive provision of ERISA to be sued under §

27  502(a)(3). . . . Rather, the plaintiff must allege only that a fiduciary violated a substantive

28  provision of ERISA and the nonfiduciary knowingly participated in the conduct that constituted

the violation.").  Therefore, the motion as to Count XII is **DENIED**.

## IV.    CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** Hyundai's motion.  The Court **GRANTS IN PART** and **DENIES IN PART** Liberty Life's motion to dismiss as follows:

1.    Liberty Life's motion to dismiss Count III (seeking equitable relief and disgorgement pursuant to section 502(a)(3)) is **DENIED**.

2.    Liberty Life's motion to dismiss Count IV (for breach of fiduciary duty under section 404) is **GRANTED IN PART** and Count IV is **DISMISSED WITHOUT LEAVE TO AMEND** only insofar as it seeks to hold Liberty Life responsible for failings in the SPD.  It is otherwise **DENIED**.

3.    Liberty Life's motion to dismiss Count VI (co-fiduciary liability under section 405(a)) is **DENIED**.

4.    Liberty Life's motion to dismiss Count VII (accusing Liberty Life of undertaking prohibited transactions in violation of section 406(a) and (b)) is **GRANTED** and Count VII is **DISMISSED WITHOUT LEAVE TO AMEND**.

5.    Liberty Life's motion to dismiss Count XI (seeking declaratory and injunctive relief and restitution pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, based upon a purported violation of 38 U.S.C. § 5301(a)) is **GRANTED** and Count XI is **DISMISSED WITHOUT LEAVE TO AMEND**.

6.    Liberty Life's motion to dismiss Count XII (alleging, in the alternative, knowing participation in the breach of a fiduciary by a non-fiduciary under section 502(a)(3)) is **DENIED**.

This Order terminates Docket Numbers 87, 90.

**IT IS SO ORDERED.**

Dated: September 16, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California