R. Joseph Barton, CA Bar No. 212340
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile:  (202) 408-4699
Email:  jbarton@cohenmilstein.com

Michelle L. Roberts, CA Bar No. 239092
ROBERTS BARTOLIC LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, CA 94501
Telephone: (510) 992-6130
Facsimile:  (510) 280-7564
Email: mroberts@robertsbartolic.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| JAMES L. BUSH<br><br>Plaintiffs,<br><br>vs.<br><br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON; HYUNDAI MOTOR AMERICA<br><br>Defendants. | Case No:  14-cv-1507-YGR-EDL<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT BETWEEN PLAINTIFF AND DEFENDANT LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, AND CLASS SETTLEMENT NOTICES**<br><br>Date:  September 27, 2016<br>Time:  2:00 p.m.<br>Courtroom 1, 4th Floor<br>Honorable Yvonne Gonzalez Rogers |

2160810.1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on September 27, 2016 at 2:00 p.m., in Courtroom 1, 4th Floor of the Oakland Division of the United States District Court, Northern District of California, 1301 Clay St, Oakland, California, Plaintiff James L. Bush will move, and hereby does move, the Court for an order pursuant to Rule 23 of the Federal Rules of Civil Procedure as follows:

1.    For settlement purposes only, certifying the following "Settlement Class," pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure with respect to Counts III, IV, VI, X and XII, defined as follows:

> (a) Veterans who were honorably discharged from service in the United States Armed Forces and who are participants in ERISA-governed employee welfare benefit plans that provide LTD benefits insured by group LTD policies issued by Liberty Life; and (b) the beneficiaries of such participants.

2.    For settlement purposes only, certifying the "Settlement Subclass" pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to Count I, defined as follows:

> Members of the Settlement Class whose LTD benefits were reduced or offset by the amount of VA benefits paid or payable to that Settlement Subclass Member from January 1, 2008 through the Settlement Effective Date.

3.    Appointing Plaintiff James L. Bush as a Class Representative of the Settlement Class and the Settlement Subclass (collectively "the Settlement Classes").

4.    Appointing Absentee Settlement Class Member Adam Ripka as a Class Representative of the Settlement Classes.

5.    Appointing R. Joseph Barton of Cohen Milstein Sellers & Toll, PLLC as lead counsel for the Settlement Classes pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

6.    Appointing Michelle Roberts of Roberts Bartolic LLP as liaison counsel for the Settlement Classes pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

7.    Preliminarily approving the Settlement Agreement dated August 12, 2016 between Plaintiff and Liberty Life as fair, reasonable, and adequate pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

8.    Approving the proposed Class Settlement Notices as to form and content and the plan for dissemination of the Settlement Notices to the Settlement Classes as satisfying the requirements

of Rule 23(c)(2) and (e)(1) of the Federal Rules of Civil Procedure and due process.

9.    Pursuant to Rule 23(d) and (e) of the Federal Rules of Civil Procedure, setting various dates and deadlines in order for the Court to evaluate whether the Settlement should be given Final Approval (after distribution of the proposed Class Notices to the Settlement Classes and submission of any objections to or requests for exclusion from the Settlement, and for a fairness hearing on final approval of the Settlement) and to evaluate Plaintiff's counsel's request for an award of attorneys' fees and reimbursement of costs and expenses as follows:

| | |
|---|---|
| Last day for Liberty Life to send the Settlement Class Notice to its group policyholders | 30 days after the Preliminary Approval Date |
| Last day for Liberty Life to mail the Settlement Subclass Notice to Settlement Subclass Members | 30 days after the Preliminary Approval Date |
| Last day for Liberty Life to provide data regarding Settlement Subclass Members to Class Counsel | 30 days after Settlement Agreement executed |
| Last day for Liberty Life to file Declaration re: settlement class notices | 30 days before motion for final approval due |
| Last day for Class Counsel to file motion for award of attorneys' fees and costs | 30 days after the Preliminary Approval Date |
| Last day for requests for exclusion from the Settlement Subclass to be postmarked by Settlement Subclass Members | 90 days after the Preliminary Approval Date |
| Last day for Settlement Class Members to file objections to the settlement | 90 days after the Preliminary Approval Date |
| Last day for Class Counsel to file motion for final approval of settlement | 120 days after the Preliminary Approval Date |
| Hearing on motion for final approval of settlement and application for attorneys' fees and costs | At least 150 days after the Preliminary Approval Date |

This Motion is supported by the accompanying Memorandum of Points and Authorities, the Declaration of R. Joseph Barton ("Barton Decl."), the Declaration of Michelle L. Roberts ("Roberts Decl."), and the Proposed Order filed herewith, all of the pleadings and documents on file with the Court in this action, and further evidence and argument as may be submitted prior to the Court's decision on this motion.

-2-

Dated:  August 16, 2016                  Respectfully submitted


By:   /s/ R. Joseph Barton
   R. Joseph Barton (Cal Bar No. 212340)
   COHEN MILSTEIN SELLERS & TOLL PLLC
   1100 New York Ave. NW
   Suite 500, West Tower
   Washington, DC 20005
   Telephone: (202) 408-4600
   Facsimile:  (202) 408-4699
   Email: jbarton@cohenmilstein.com

   Michelle L. Roberts  (CA Bar No. 239092)
   ROBERTS BARTOLIC LLP
   1050 Marina Village Pkwy., Ste. 105
   Alameda, CA 94501
   Telephone: (510) 992-6130
   Facsimile:  (510) 280-7564
   Email: mroberts@robertsbartolic.com

   ***Attorneys for Plaintiff***

-3-

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

I.  HISTORY AND STATUS OF THE CASE ........................................................ 1
    A.  Factual Background ....................................................................... 1
        1.  James Bush ........................................................................ 1
        2.  Adam Ripka ........................................................................ 3
        3.  The Claims and Relief Requested ............................................ 4
    B.  Procedural Background ................................................................. 4

II.  TERMS OF THE SETTLEMENT ................................................................. 6

III.  THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ...... 8
    A.  The Settlement Is a Result of Serious, Informed, and Non-Collusive
        Negotiations ................................................................................ 9
    B.  The Settlement Provides Significant Benefits To the Settlement Classes And
        Is Well Within The Range of Reasonableness ................................... 11
    C.  The Settlement Has No Obvious Deficiencies ................................... 12
        1.  Any Differences Are Based on Legitimate Considerations ............ 13
        2.  There Is No Special Treatment of the Class Representative ........... 13
        3.  There Is No Collusion as to Attorneys' Fees and Costs ............... 13

IV.  THE SETTLEMENT CLASSES SHOULD BE CERTIFIED ........................... 15
    A.  The Requirements of Rule 23(a) Are Satisfied as to Both Settlement Classes ......... 15
        1.  The Requirement of Rule 23(a)(1) Are Satisfied ......................... 15
        2.  The Requirements of Rule 23(a)(2) Are Met Because There Are
            Questions of Law or Fact Common to the Settlement Classes ....... 16
        3.  The Requirements of Rule 23(a)(3) Are Met Because Plaintiff's
            Claims Arise Out of the Same Events and Practices ................... 17
        4.  The Requirements of Rule 23(a)(4) Are Met Because Plaintiff Has No
            Conflicts and Has and Will Vigorously Represent the Settlement
            Classes .......................................................................... 17
    B.  The Settlement Class and the Settlement Subclass Should be Certified Under
        Rule 23(b)(2) and Rule 23(b)(3), Respectively .............................. 19
        1.  The Requirements of Rule 23(b)(2) Are Satisfied With Respect to the
            Settlement Class ............................................................... 19
        2.  The Requirement of Rule 23(b)(3) Are Satisfied With Respect to the
            Settlement Subclass .......................................................... 20

V.  THE NOTICES AND PLAN OF NOTICE SHOULD BE APPROVED .............. 22

VI.  THE COURT SHOULD ESTABLISH DATES FOR EFFECTUATING FINAL
     APPROVAL OF THE SETTLEMENT ......................................................... 24

i

1

VII.    CONCLUSION.................................................................................................. 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abdullah v. U.S. Sec. Assoc., Inc.,*
   731 F.3d 952 (9th Cir. 2013) ......................................................................................16

*Aguilar v. Melkonian Enters. Inc.,*
   No. 1:05-CV-00032 OWW LJO, 2006 WL 3199074 (E.D. Cal. Nov. 3, 2006) ...................22, 23

*Akaosugi v. Benihana Nat'l Corp.,*
   282 F.R.D. 241 (N.D. Cal. 2012)..................................................................................16

*In re Alco Int'l. Grp., Inc., Sec. Litig.,*
   158 F.R.D. 152 (S.D. Cal. 1994) ..................................................................................18

*Amara v. Cigna Corp.,*
   775 F.3d 510 (2d Cir. 2014)..........................................................................................20

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997)...............................................................................................20, 22

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds,*
   133 S. Ct. 1184 (2013).................................................................................................16

*Anderson v. AB Painting & Sandblasting, Inc.,*
   578 F.3d 542 (7th Cir. 2009) ........................................................................................14

*Anderson-Butler v. Charming Charlie Inc.,*
   No. CIV. 2:14-01921 WBS, 2015 WL 4599420 (E.D. Cal. July 29, 2015) ...............................14

*Anderson-Butler v. Charming Charlie Inc.,*
   No. CIV 2:14-01921 WBS AC, 2015 WL 6703805 (E.D. Cal. Nov. 3, 2015) .............................8

*Angell v. City of Oakland,*
   No. 13-CV-00190 NC, 2015 WL 65501 (N.D. Cal. Jan. 5, 2015) ...............................................11

*In re Arakis Energy Corp. Sec. Litig.,*
   No. 95-cv-3431 (ARR), 1999 WL 1021819 (E.D.N.Y. Apr. 27, 1999) ......................................18

*Armstrong v. Davis,*
   275 F.3d 849 (9th Cir. 2001) ........................................................................................17

*Barnes v. AT&T Pension Benefit Plan-Nonbargained Program,*
   270 F.R.D. 488 (N.D. Cal. 2010)..................................................................................19

*Bellinghausen v. Tractor Supply Co.,*
   303 F.R.D. 611 (N.D. Cal. 2014)..............................................................................11, 12

i

*In re Bluetooth Headset Prods. Liab. Litig.*,
　654 F.3d 935 (9th Cir. 2011) .................................................................................14

*Boos v. AT&T*,
　252 F.R.D. 319 (W.D. Tex. 2008) ...........................................................................21

*Chavez v. Netflix, Inc.*,
　No. CGC-04-434884, 2005 WL 3048041 (Cal. Super. October 27, 2005) .................23

*Cigna Corp. v. Amara*,
　131 S. Ct. 1866 (2011)............................................................................................20

*City of Riverside v. Rivera*,
　477 U.S. 561 (1986)................................................................................................14

*The Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*,
　No. 15-CV-0224-YGR, 2016 WL 314400 (N.D. Cal. Jan. 25, 2016) (Judge
　Rogers).....................................................................................................................9

*Cohen v. Resolution Tr. Corp.*,
　61 F.3d 725 (9th Cir. 1995) *vacated on other grounds*, 72 F.3d 686 (9th Cir.
　1996) ...................................................................................................................12, 13

*Colesberry v. Ruiz Food Prods. Inc.*,
　No. CV F04-5516, 2006 WL 1875444 (E.D. Cal. June 30, 2006) ....................9, 22, 23

*Dalton v. Lee Publ'ns., Inc.*,
　No. 08-CV-1072 GPC NLS, 2014 WL 5325698 (S.D. Cal. Oct. 17, 2014)...............10

*Does I v. The Gap, Inc.*,
　No. CV-01-0031, 2002 WL 1000073 (D.N. Mar. I. May 10, 2002) .......................9, 10

*Ebarle v. Lifelock, Inc.*,
　No. 15-CV-00258-HSG, 2016 WL 234364 (N.D. Cal. Jan. 20, 2016)..........................9

*Eddings v. Health Net, Inc.*,
　No. CV 10-1744-JST, 2013 WL 169895 (C.D. Cal. Jan. 16, 2013) ............................8

*Eisen v. Carlisle & Jacquelin*,
　417 U.S. 156 (1974)................................................................................................23

*Firestone Tire & Rubber Co. v. Bruch*,
　489 U.S. 101 (1989)................................................................................................21

*Grant v. Capital Mgmt. Servs., L.P.*,
　No. 10-cv-2471-WQH (BGS), 2013 WL 6499698 (S.D. Cal. Dec. 11, 2013).........8, 12

*Guy v. Casal Inst. of Nev., LLC*,
　No. 2:13-CV-02263-APG, 2014 WL 1899006 (D. Nev. May 12, 2014) ....................23

*Hanlon v. Chrysler Corp,*
    150 F.3d 1011 (9th Circ. 1998)................................................................................17, 20

*Hawthorne v. Umpqua Bank,*
    No. 11-CV-06700-JST, 2014 WL 4602572 (N.D. Cal. Sept. 15, 2014).............................9

*Hesse v. Sprint Corp.,*
    598 F.3d 581 (9th Cir. 2010) ..............................................................................................12

*Hester v. Vision Airlines, Inc.,*
    No. 2:09-CV-00117-RLH-NJK, 2014 WL 1366550 (D. Nev. Apr. 7, 2014)...............................10

*In re Juniper Networks, Inc. Secs. Litig.,*
    264 F.R.D. 584 (N.D. Cal. 2009)........................................................................................21

*Kim v. Space Pencil, Inc.,*
    No. C 11-03796 LB, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) ...........................................24

*Knutson v. Schwan's Home Serv., Inc.,*
    No. 3:12-CV-00964-GPC-DHB, 2014 WL 3519064 (S.D. Cal. July 14, 2014) ..........................10

*La Fata v. Raytheon Co.,*
    207 F.R.D. 35 (E.D. Pa. 2002)............................................................................................21

*Lambeth v. Advantage Fin. Servs., LLC,*
    No. 1:15-CV-33-BLW, 2015 WL 3755843 (D. Idaho June 16, 2015)...........................................23

*Legaard v. Providence Health Plan,*
    300 F.R.D. 474 (D. Or. 2013) .............................................................................................19

*Lilly v. Jamba Juice Co.,*
    No. 13-CV-02998-JST, 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) .........................................24

*Lyon v. United States Immigration & Customs Enf't,*
    300 F.R.D. 628 (N.D. Cal. 2014), *modified,* 308 F.R.D. 203 (N.D. Cal. 2015) ........................23

*Margulies v. Tri-Cnty. Metro. Transp. Dist. of Or.,*
    No. 3:13-cv-00475-PK, 2013 WL 5593040 (D. Or. Oct. 10, 2013)..............................................23

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) ..............................................................................................17

*Nat'l. Rural Telecomms. Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004)..........................................................................................8

*Nen Thio v. Genji, LLC,*
    14 F. Supp. 3d 1324, 1332 (N.D. Cal. 2014) ....................................................................12

*In re Netflix Privacy Litig.,*
    No. 5:11-CV-00379 EJD, 2012 WL 2598819 (N.D. Cal. July 5, 2012)........................................23

iii

*Nunez v. Monterey Peninsula Eng'g,*
   867 F. Supp. 895 (N.D. Cal. 1994) ...................................................................................21

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco,*
   688 F.2d 615 (9th Cir. 1982) .............................................................................................8

*Ontiveros v. Zamora,*
   Civ. No. 2:08-567 WBS DAD, 2014 WL 3057506 (E.D. Cal. July 7, 2014)...................9

*Parsons v. Ryan,*
   754 F.3d 657 (9th Cir. 2014) ...............................................................................17, 19, 20

*Pulaski & Middleman, LLC v. Google, Inc.,*
   802 F.3d 979 (9th Cir. Sept. 21, 2015) .............................................................................21

*Rodriguez v. Hayes,*
   591 F.3d 1105 (9th Cir. 2010) ..........................................................................................19

*Santillan v. Ashcroft,*
   No. C 04-2686 MHP, 2004 WL 2297990 (N.D. Cal. Oct. 12, 2004) .............................19

*Santos v. Camacho,*
   No. CIV. 04-00006, 2008 WL 8602098 (D. Guam Apr. 23, 2008), *aff'd sub nom.*
   *Simpao v. Gov't of Guam,* 369 F. App'x 837 (9th Cir. 2010) ........................................13

*Schuchardt v. Law Office of Rory W. Clark,*
   No. 15-CV-01329-JSC, 2016 WL 232435 (N.D. Cal. Jan. 20, 2016) .............................11

*State v. eBay, Inc.,*
   No. 5:12-CV-05874-EJD, 2014 WL 4273888 (N.D. Cal. Aug. 29, 2014) ........................8

*Stockwell v. City & Cty of San Francisco,*
   749 F.3d 1107 (9th Cir. 2014) ..........................................................................................16

*In re Telectronics Pacing Sys, Inc.,*
   172 F.R.D. 271 (S.D. Ohio 1997) .....................................................................................18

*Torres v. Mercer Canyons, Inc.,*
   305 F.R.D. 646 (E.D. Wash. Apr. 8, 2015) ......................................................................17

*In re Toys R Us-Del., Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.,*
   295 F.R.D. 438 (C.D. Cal. 2014) .......................................................................................8

*Util. Reform Project v. Bonneville Power Admin.,*
   869 F.2d 437 (9th Cir. 1989) .............................................................................................8

*Vanwagoner v. Siemens Indus., Inc.,*
   No. 2:13-CV-01303-KJM-EFB, 2014 WL 7273642 (E.D. Cal. Dec. 17, 2014) .............9

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................................................16, 20

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998) .........................................................................................19

*Wang v. Chinese Daily News, Inc.*,
   737 F.3d 538 (9th Cir. 2013) ...........................................................................................16

*West v. Circle K Stores, Inc.*,
   No. CIV S-04-0438 WBS GGH, 2006 WL 1652598 (E.D. Cal. June 13, 2006) ...........9

*Whitaker v. Bennett Law, PLLC*,
   No. 13-cv-3145-L(NLS), 2014 WL 5454398 (S.D. Cal. Oct. 27, 2014)......................17

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
   594 F.3d 1087 (9th Cir. 2010) ........................................................................................21

**STATUTES**

ERISA §§ 102 and 104 ...............................................................................................................4

ERISA § 405 ..............................................................................................................................16

ERISA §§ 406(a) and (b) ............................................................................................................5

ERISA § 502 ..............................................................................................................................21

ERISA § 502(a)(1)(B)................................................................................................................21

ERISA §§ 502(a)(3)................................................................................................................5, 17

ERISA §§ 502(a)(3) and 503 ......................................................................................................4

### MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff James L. Bush respectfully submits this Memorandum of Points and Authorities in support of his motion to preliminarily approve the proposed Settlement between Plaintiff and Defendant Liberty Life Assurance Company of Boston ("Liberty Life") pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, to certify the proposed Settlement Classes pursuant to Rule 23(a) and 23(b)(2) and (3), to approve the proposed notice to the Settlement Classes, and to set various dates related to the approval of the Settlement.

Pursuant to the Settlement, Liberty Life has agreed, as of the date of Preliminary Approval, to cease reducing participants' long-term disability benefits ("LTD benefits") by the amount of benefits from the Department of Veterans Affairs ("VA benefits") and in addition to other important non-monetary provisions, Liberty Life has agreed to pay members of the Settlement Subclass an amount equal to 60% of any VA benefit offset applied to reduce his or her LTD benefits from January 1, 2008 through the Settlement Effective Date. This settlement resolves only a portion of the litigation, but resolves all claims against Liberty Life.  Given the uncertainties of establishing both liability and the amount of recovery, as well as the delay of litigation, Plaintiff submits that the Settlement is an excellent result that should be preliminarily approved by the Court.

## I.     HISTORY AND STATUS OF THE CASE

This is an action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, on behalf of a class of veterans who were honorably discharged from service in the United States Armed Forces and now are participants in ERISA-governed long-term disability plan ("LTD Plan") with benefits funded by group long-term disability policies issued by Liberty Life ("LTD Policies").  Both Plaintiff Bush and absentee class member Adam Ripka are participants in an LTD Plan insured by Liberty Life pursuant to an LTD Policy.

### A.     Factual Background

#### 1.     James Bush

Plaintiff Bush served in the United States Marine Corps and was honorably discharged at the rank of Sergeant in 1972.  Am. Compl. (ECF No. 77) ¶ 52.  He became an employee of Hyundai Capital America, Inc. ("Hyundai") in August 2008 and, a result of his employment, a participant in

1

1    the Hyundai Motor America Group Disability Income Plan ("the Hyundai LTD Plan"), which is an

2    ERISA-covered employee welfare benefit plan that provides LTD benefits to eligible participants

3    under an LTD Policy.  *Id*. ¶¶ 53-54; Def. Hyundai's Answer to Pls.' Am. Compl. (ECF No. 117)

4    ¶¶ 53-54; Def. Liberty Life's Answer to Pls.' Am. Compl. (ECF No. 115) ¶¶ 53-54.

5         Plaintiff became disabled and filed a claim for LTD benefits with Liberty Life, which Liberty

6    Life approved, finding that his disability began on October 30, 2011.  Am. Compl. ¶¶ 88-90; Liberty

7    Answer. ¶¶ 88, 90.  On February 1, 2013, the Department of Veterans Affairs granted Plaintiff's

8    claim for VA benefits, awarding him $3,354 per month effective February 1, 2012, which was

9    subsequently increased to $3,409 effective December 1, 2012 as a result of a cost of living

10   adjustment.  Am. Compl. ¶ 98.

11        In response to Liberty Life's July 2013 request for information about his disabilities and his

12   sources of income, Plaintiff advised Liberty Life that he had been receiving VA benefits.  *Id*. ¶¶ 100.

13   By letter dated August 14, 2013, Liberty Life informed Plaintiff that its LTD Policy "requires

14   [Liberty Life] to reduce your disability benefits by the amount of income you receive from other

15   sources, including VA benefits."  *Id*. ¶ 101.  As a result of the offset for the VA benefits and an

16   offset for Social Security Disability Insurance benefits (which is not in dispute in this case),

17   Plaintiff's monthly LTD benefit payment was reduced from $3,468.27 to $346.83.  *Id*. ¶¶ 105-06.

18   Without the offset of VA benefits, his monthly payment would be approximately $ 1,456.27.  *Id*. ¶

19   108.

20        Plaintiff made a written request on September 30, 2013 to Hyundai, the Plan Administrator,

21   for the summary plan description, the plan document, and other instruments under which the

22   Hyundai LTD Plan is established or maintained.  *Id*. at ¶ 128; Hyundai Answer. ¶ 128.  In response,

23   on November 25, 2013, Hyundai informed Plaintiff that the "Certificate of Coverage" and

24   "Summary Plan Description" sent to Plaintiff on September 9, 2013, "[wa]s the only document that

25   is available" describing the terms of the plan.  Am. Compl. ¶ 129.

26        Plaintiff appealed Liberty Life's decision to offset his LTD benefits by the amount of VA

27   benefits he received and requested a copy of the Liberty Life LTD Policy.  *Id*. ¶ 109; Liberty

28   Answer. ¶ 109.  On September 9, 2013, Liberty Life denied Plaintiff's appeal and cited the following

2

1   provisions of its policy:

2           *Benefits from Other Income*

3           *Benefits from Other Income means those benefits shown below:*

4                   1.   *The amount for which the Covered Person is eligible under:*
                    * * *
5                   c.  *any compulsory benefit act or law; or*
                    d.  *any other act or law of like intent.*
6

7   Am. Compl. ¶ 110.

8           Liberty Life also claimed in a letter dated September 3, 2013 that its LTD benefit payments

9   to Plaintiff for the period of April 27, 2013 through July 26, 2013, which did not include an offset of

10  his VA benefits, constituted an overpayment of his LTD benefits.  *Id*. at ¶ 115.  In that letter, Liberty

11  Life demanded that Plaintiff pay $27,450.90 to Liberty Life.  *Id*.  After Plaintiff did not make the

12  payment, an October 9, 2013 letter informed him that Liberty Life would then cease making any

13  LTD payments to him until the $27,450.90 amount was "paid in full."  *Id*. at ¶ 118.  Liberty Life

14  ceased making *any* payments as of October 23, 2013 and engaged a debt collection agency to collect

15  the $27,450.90 in alleged overpayments.  *Id*. at ¶¶ 119-120.

16          **2.    Adam Ripka**

17          The experience of Adam Ripka mirrors Plaintiff's.  Mr. Ripka is a veteran who was

18  honorably discharged in 2004.  Ripka Decl. (ECF No. 119-13) ¶ 2.  After serving in the Army, he

19  was employed by United Technologies Corporation ("UTC") as a Software Engineer, became a

20  participant in the UTC LTD Plan, which was insured by Liberty Life.  *Id*. ¶ 3.  After he became

21  disabled in 2009, he applied for and was determined to be eligible for LTD benefits, and while his

22  benefits letter mentioned other offsets, it did not mention anything about an offset for VA benefits.

23  *Id*. ¶ 4.  In November 2013, Liberty Life advised him that it would reduce his LTD benefits by his

24  VA Benefits and demanded payment of $45,448.50.  *Id*. ¶ 5.  When that amount was not paid,

25  Liberty Life threatened collection efforts and then ceased paying any benefits.  *Id*. ¶ 5.  Mr. Ripka

26  exhausted his internal remedies by sending an appeal letter to Liberty Life in February 2014; that

27  appeal was denied on July 14, 2014.  *Id*. ¶ 6.

28

### 3.    The Claims and Relief Requested

The Amended Complaint alleges that the terms of the LTD Policies do not provide for an offset of VA benefits against the LTD benefits.  Am. Compl. ¶¶ 168-79.  Alternatively, the Amended Complaint alleges that Liberty Life and the administrators of the LTD Plans insured by Liberty Life (*e.g.*, the Hyundai LTD Plan) breach their statutory and fiduciary duties and commit co-fiduciary breaches by failing to disclose the offset in the Certificate of Coverage, "Summary Plan Description" ("SPD"), and benefit determination letters.  *Id*. ¶¶ 180-93; 197-23; 234-71; 291-95.  Among the relief sought are (1)(a) a declaration that the plaintiff classes defined in the Amended Complaint are entitled to receive LTD benefits under the terms of the Liberty Life LTD Policies without offsetting VA benefits, or, in the alternative, (1)(b) an order that the terms of the Liberty Life LTD Policies or the terms of the insured LTD Plans be reformed to provide that VA benefits may not be offset against LTD benefits; and (2) an order requiring Liberty Life to compute and pay benefits to the plaintiff classes without offsetting VA benefits.  *Id*. at Prayer for Relief A-D.

### B.    Procedural Background

Plaintiff filed the original Complaint on April 1, 2014, alleging six causes of action arising under ERISA against Liberty Life and Hyundai.  ECF No. 1.  On July 22, 2014, Liberty Life filed a Motion to Dismiss Counts II, III, IV, and V under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  ECF No. 21.  Hyundai joined, in part, in Liberty Life's Motion on the ground that Counts II, III, and V are "impermissibly duplicative of the relief sought under Count I."  ECF No. 22.  On January 2, 2015, the Court issued a decision granting in part and denying in part the motion.  ECF No. 50 at 13.  Specifically, the Court dismissed with prejudice Counts II and IV, which alleged claims that Liberty Life violated ERISA §§ 102 and 104.  *Id*.  The Court denied the motion as to Liberty Life with respect to Counts III and V, which alleged that Liberty Life violated ERISA §§ 502(a)(3) and 503, respectively, and denied the motion in its entirety as to Hyundai.  *Id*.  Liberty Life and Hyundai filed Answers to the Complaint on January 22, 2015.  ECF Nos. 53, 54.

On April 20, 2015, Plaintiff filed the Amended Complaint, alleging a total of twelve counts against Defendants.  ECF No. 77.  Defendants moved to dismissed Plaintiff's Amended Complaint on June 11, 2015.  ECF Nos. 87, 90.  On September 16, 2015, the Court issued an order granting in

4

1   part and denying in part Defendants' Motions to Dismiss.  ECF No. 112.  Specifically, the Court

2   dismissed without leave to amend Counts VII and XI, concluding that Plaintiff had not stated a claim

3   against Liberty Life for violation of ERISA §§ 406(a) and (b), or a claim for declaratory relief that

4   the offset of VA benefits violated 38 U.S.C. § 5301(a).  *Id*. at 13.  The Court granted in part Liberty

5   Life's motion as to Count IV insofar as it sought to hold Liberty Life responsible for the alleged

6   failure to disclose in the SPDs that VA benefits may be offset against LTD benefits under the LTD

7   Policy.  *Id*.

8          The Court denied Liberty Life's motion as to Count III (seeking equitable relief and

9   disgorgement of profit pursuant to ERISA §§ 502(a)(3)), Count VI (alleging co-fiduciary liability

10  pursuant to Section 405(a)), and Count XII (alleging knowing participation in the breach of a

11  fiduciary by a non-fiduciary pursuant to Section 502(a)(3)).  *Id*.  The Court denied Hyundai's motion

12  in its entirety.  *Id*.  Liberty Life and Hyundai, on September 30, 2015 and October 5, 2015,

13  respectively, filed Answers to the Amended Complaint.  ECF Nos. 115, 117.  On October 16, 2015,

14  Plaintiff filed his Motion for Class Certification.  ECF No. 119.

15         During the course of discovery, Plaintiff's counsel propounded on Defendants multiple sets

16  of written discovery requests including requests for production of documents, interrogatories, and

17  requests for admission, and reviewed thousands of pages of documents produced by Defendants.

18  Barton Decl. ¶ 2; Roberts Decl. ¶ 2.  On May 18, 2015, Plaintiff filed a Motion to Compel against

19  Liberty Life as to two interrogatories that sought class-related information relevant to (a) identifying

20  the LTD Policies that insure benefits owed to residents of a number of states and contain the

21  disputed provisions concerning benefits that may be offset against LTD benefits and (b) identifying

22  individuals whose LTD benefits Liberty Life has determined may be reduced by VA benefits.  ECF

23  No. 81.  Liberty Life responded to the Motion to Compel asserting that the two interrogatories at

24  issue were overly broad and burdensome, and sought irrelevant information.  On July 20, 2015, the

25  Court ordered Liberty Life to supplement its responses to the two interrogatories at issue.  ECF No.

26  101.  On October 13, 2015, Plaintiff's counsel took the deposition of Deborah Beckett, a Benefits

27  Specialist at Hyundai.  Barton Decl. ¶ 8.

28         On May 14, 2015, Plaintiff and Defendants participated in an in-person mediation session

1  with Cathy Yanni of JAMS.  *Id.* ¶ 6.  After the mediation session, the Parties' counsel continued to

2  discuss settlement with the assistance of the mediator and separately.  *Id.* ¶ 7.  On November 19 and

3  20, 2015, the Parties participated in further in-person mediation sessions with Ms. Yanni.  *Id.* ¶ 9.

4  Following the in-person sessions in November 2015, Plaintiff and Liberty Life continued to engage

5  in settlement discussions by telephone and e-mail and exchange written settlement proposals through

6  January 2016.  *Id.* ¶ 10.  In January 2016, Plaintiff and Liberty Life reached an agreement on the

7  principal terms of the Settlement.  *Id.* ¶ 11.  Plaintiff and Liberty Life negotiated a final Settlement

8  Agreement, which was executed on August 12, 2016.  *Id.* ¶ 12.

9  **II.     TERMS OF THE SETTLEMENT**

10           The terms of the proposed settlement between Plaintiff and Liberty Life ("the Settlement"),

11  which are set forth in detail in the Settlement Agreement, provide both a monetary consideration and

12  non-monetary considerations.  Agmt. § 3.  Under the Settlement, effective as of the date of

13  preliminary approval of the Settlement by this Court, Liberty Life agrees that it will not reduce LTD

14  benefits payable under the current version of its group LTD Policies provided under ERISA-

15  governed employee welfare plans by the amount of VA benefits received by those participants for

16  the same disabling condition.  Agmt. § 3.1(a).  The terms of the Settlement do not prohibit Liberty

17  Life from seeking regulatory approval of revised LTD policy forms *that specifically* identify VA

18  benefits as other income that may apply to offset or reduce LTD benefits, and thereafter offsetting

19  VA benefits pursuant to such approved and issued policy forms.  Under the terms of the Settlement,

20  if Liberty Life begins using LTD policy forms that specifically identify VA benefits as other income

21  that may offset or reduce LTD benefits, it will modify the letter it sends to individuals whose claims

22  for LTD benefits payable under ERISA-governed employee welfare benefit plans are approved to

23  specifically identify VA benefits as other income that may offset or reduce LTD benefits.  Agmt.

24  § 3.1(b)-(c).  In short, no offset of LTD benefits for the amount of VA benefits received will be

25  taken until the approval and issuance of such revised LTD policies.  Additionally, the Settlement

26  provides that, to the extent that any Settlement Class Member submits a claim to Liberty Life and

27  that claim is approved, then any revised LTD policy form that would otherwise permit the offset of

28  VA benefits will not be applied to that Settlement Class Member's claim.  Agmt. § 3.1(a).  If Liberty

1   Life revises its LTD policy form to specifically include VA benefits as income that may offset LTD

2   benefits, Liberty Life will explicitly identify VA benefits as an LTD benefit offset in the Certificate

3   of Coverage, if that document continues to be provided to group policyholder customers, and in its

4   written communications advising participants of their benefit awards.  Agmt. § 3.1(b)-(c).

5          As to the monetary consideration provided by the Settlement, Liberty Life will pay to each

6   member of the Settlement Subclass an amount equal to sixty percent (60%) of any VA benefit offset

7   applied to reduce that Settlement Subclass Member's LTD benefits through the Settlement Effective

8   Date.  Agmt. § 3.2(a).  Liberty Life will make the payments directly to the Subclass members and

9   will bear all administrative expenses associated with making such payments.  Agmt. §§ 4.1 & 4.4.

10  Liberty Life also agrees to release Plaintiff and other members of the Subclass from claims for

11  recoupment of any alleged overpayment of LTD benefits that Liberty Life has determined VA

12  benefits may offset.  Agmt. § 3.2(b).  As the disclosures (*e.g.*, the Certificate of Coverage) are

13  provided by the Plan Administrators, the Settlement provides an incentive for the Plan

14  Administrators to provide the Notice and any revised Certificate of Coverage to the class members.

15  Agmt. § 8.2(a).

16         In exchange for these benefits, the Settlement Class will release and dismiss with prejudice

17  all claims asserted in the Amended Complaint against Liberty Life arising out of or related to the

18  offset of VA benefits from LTD benefits under Liberty Life's current LTD policy forms.  Agmt

19  § 8.1.  The Settlement Class will not release any claims that relate to Liberty Life's offset of VA

20  benefits under any revised LTD policy forms that may be approved by regulators and issued by

21  Liberty Life in the future, unless those claims are barred by collateral estoppel or *res judicata*

22  principles.  *Id*.  The Settlement Subclass will release and dismiss with prejudice all claims asserted in

23  the Amended Complaint against Liberty Life.  *Id*.  The Settlement Class, including the Settlement

24  Subclass, will release all claims against administrators of the LTD Plans insured by Liberty Life

25  (other than Hyundai) based on the factual allegations in the Amended Complaint.  *Id*. §§ 8.2 & 8.3.

26  Under the Settlement, Liberty Life will make a payment of $425,000 to resolve any claims for

27  attorneys' fees and costs.  Agmt. § 5.2.

28

7

III.     THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

As a matter of public policy, settlement is a strongly favored method for resolving disputes. *Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).  This is especially in class actions.  *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *In re Toys R Us-Del., Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 448 (C.D. Cal. 2014) (explaining "a strong judicial policy [] favors settlements, particularly where complex class action litigation is concerned") (internal citations and quotations omitted).  To protect the interests of the class, Federal Rule of Civil Procedure 23(e) provides that a class action cannot be settled without court approval.  Fed. R. Civ. P. 23(e)(1)(A).  "Approval under Rule 23(e) involves a two-step process in which (1) the court determines whether a proposed class action settlement deserves preliminary approval and, if so, directs notices to the class for comment and (2) after notice is given to class members, the court determines whether final approval is warranted."  *Anderson-Butler v. Charming Charlie Inc.*, No. CIV 2:14-01921 WBS AC, 2015 WL 6703805, at *1 (E.D. Cal. Nov. 3, 2015) (citing *Nat'l. Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004)).

The request for preliminary approval only requires an "initial evaluation" of the fairness of the proposed settlement.  *Manual for Complex Litigation* § 21.632 (4th ed. 2004).  The purpose of preliminary approval is to determine "whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a fairness hearing."  William B. Rubenstein *et al.*, *Newberg on Class Actions* § 13:10 (5th ed. 2013).  Because the approval is only preliminary, courts generally undertake a limited review of the proposed settlement.  *Id.*  "The general rule is that a court will grant preliminary approval where the proposed settlement is neither illegal nor collusive and is within the range of possible approval."  *Id.*  "Essentially, the court is only concerned with whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys."  *Grant v. Capital Mgmt. Servs., L.P.*, No. 10-cv-2471-WQH (BGS), 2013 WL 6499698, at *5 (S.D. Cal. Dec. 11, 2013); *see State v. eBay, Inc.*, No. 5:12-CV-05874-EJD, 2014 WL 4273888, at *5 (N.D. Cal. Aug. 29, 2014) (same); *Eddings v. Health Net, Inc.*, No.

8

1  CV 10-1744-JST (RZx), 2013 WL 169895, at *2 (C.D. Cal. Jan. 16, 2013) (same); *The Civil Rights*

2  *Educ. & Enf't Ctr. v. RLJ Lodging Tr.*, No. 15-CV-0224-YGR, 2016 WL 314400, at *11 (N.D. Cal.

3  Jan. 25, 2016) (Judge Rogers) (same).   The proposed Settlement readily satisfies the requirements

4  for preliminary approval.

5      **A.      The Settlement Is a Result of Serious, Informed, and Non-Collusive Negotiations**

6           The first factor is met where the settlement "appears to be … the product of informed,

7  vigorous, arms-length bargaining." *Ontiveros v. Zamora,* Civ. No. 2:08-567 WBS DAD, 2014 WL

8  3057506, at *14 (E.D. Cal. July 7, 2014*); see Colesberry v. Ruiz Food Prods. Inc.*, No. CV F04-

9  5516, 2006 WL 1875444, at *6 (E.D. Cal. June 30, 2006) (preliminarily approving settlement where

10  everything "indicates th[e] settlement is the product of arm's length negotiations and there is no

11  indication Plaintiffs or their attorneys have been improperly influenced by Defendants"); *Ebarle v.*

12  *Lifelock, Inc*., No. 15-CV-00258-HSG, 2016 WL 234364, at *6 (N.D. Cal. Jan. 20, 2016) ("An

13  initial presumption of fairness is usually involved if the settlement is recommended by class counsel

14  after arms' length bargaining.") (quotation marks and citation omitted).   The fact that experienced

15  counsel has been actively engaged in the litigation and has diligently pursued the necessary

16  discovery evidences the non-collusive nature of the settlement. *West v. Circle K Stores, Inc.,* No.

17  CIV S-04-0438 WBS GGH, 2006 WL 1652598, at *11 (E.D. Cal. June 13, 2006); *Does I v. The*

18  *Gap, Inc.*, No. CV-01-0031, 2002 WL 1000073, at *13 (D.N. Mar. I. May 10, 2002)*.*   The assistance

19  of a neutral mediator in the settlement negotiations further evidences the non-collusive nature of the

20  negotiations. *Vanwagoner v. Siemens Indus., Inc.*, No. 2:13-CV-01303-KJM-EFB, 2014 WL

21  7273642, at *9 (E.D. Cal. Dec. 17, 2014); *see Hawthorne v. Umpqua Bank,* No. 11-CV-06700-JST,

22  2014 WL 4602572, at *5 (N.D. Cal. Sept. 15, 2014) (finding no collusion where "[t]he settlement

23  was reached at arms-length with the use of a professional mediator and over the course of months of

24  effort by both parties").

25           In this case, a settlement was not reached until Plaintiff's counsel had conducted substantial

26  discovery.   Plaintiff's counsel did not only seek, obtain, and review over thousands of pages of

27  documents but also met and conferred with Liberty Life on discovery matters and, ultimately, moved

28  to compel Liberty Life to provide additional responses to two interrogatories.   Barton Decl. ¶ 3; Pl.'s

9

1   Mot. to Compel (ECF No. 81).  Plaintiff's counsel also took the deposition of Deborah Beckett, a

2   Benefits Specialists for Hyundai responsible for the administration of the company's health and

3   welfare benefits.  Barton Decl. ¶ 8.

4          The terms of the Settlement resulted from hard-fought negotiations over the course of fifteen

5   months.  *Id*. ¶¶ 6-12.  The Parties negotiated the principal terms of the agreement through many

6   conversations, including in-person mediation sessions with the mediator Cathy Yanni of JAMS and

7   continued telephonic settlement discussions afterwards with Ms. Yanni's assistance.  *Id*. ¶¶ 6-7, 9-

8   10.  After the Parties' first mediation session with Ms. Yanni on May 14, 2015, Plaintiff's counsel

9   continued to litigate the case vigorously, including the filing of a motion to compel on May 18, 2015

10  and a motion for class certification on October 16, 2015.  ECF Nos. 81, 119.  The Parties reached the

11  principal terms of the Settlement only (a) after Plaintiff had received and reviewed documents

12  produced by Liberty Life as part of its Rule 26(a) initial disclosures and responses to Plaintiff's

13  requests for production of documents and (b) after Plaintiff had received information provided by

14  Liberty Life about the LTD Policies issued by Liberty Life and the individuals whose LTD benefits

15  Liberty Life has determined may be reduced by the amounts those individuals received in VA

16  Benefits.  Barton Decl. ¶¶ 2-5; Roberts Decl. ¶ 2.  After reaching the principal terms of the

17  Settlement in January 2016, Plaintiff and Liberty Life spent additional time negotiating the detailed

18  terms of a formal agreement and finalizing them in the Settlement Agreement before its execution on

19  August 12, 2016.  Barton Decl. ¶ 12.

20         The opinion of "experienced plaintiffs' advocates and class action lawyers" is to be

21  considered on preliminary approval.  *See The Gap*, 2006 WL 1000073, at *13; *accord, Dalton v. Lee

22  Publ'ns., Inc.*, No. 08-CV-1072 GPC NLS, 2014 WL 5325698, at *3 (S.D. Cal. Oct. 17, 2014);

23  *Knutson v. Schwan's Home Serv., Inc.*, No. 3:12-CV-00964-GPC-DHB, 2014 WL 3519064, at *3

24  (S.D. Cal. July 14, 2014); *Hester v. Vision Airlines, Inc.*, No. 2:09-CV-00117-RLH-NJK, 2014 WL

25  1366550, at *5 (D. Nev. Apr. 7, 2014).  As previously demonstrated in their submission for

26  appointment as Class Counsel, Plaintiff's counsel are experienced in ERISA and class action

27  litigation.  Pl.'s Mot. for Class Cert. (ECF No. 119).  Plaintiff's counsel believe that the proposed

28  Settlement is an excellent result and that they received sufficient discovery to reach that conclusion.

1   Barton Decl. ¶ 16; Roberts Decl. ¶ 2.

2       Accordingly, the Settlement is a product of extensive arms-length negotiations aided by a

3   neutral professional mediator and conducted by informed and experienced counsel over a period of

4   ten months.

5   **B.   The Settlement Provides Significant Benefits To the Settlement Classes And Is Well Within The Range of Reasonableness**

6       While the Court's ultimate assessment of whether the proposed settlement is fair, reasonable,

7   and adequate depends upon many factors, at preliminary approval, the Court must only be satisfied

8   that the settlement "falls within the range of *possible* approval" and has no "obvious deficiencies."

9   *Angell v. City of Oakland,* No. 13-CV-00190 NC, 2015 WL 65501, at *7 (N.D. Cal. Jan. 5, 2015)

10  (emphasis added).  Determining whether a settlement "falls within the range of possible approval"

11  requires focus on "substantive fairness and adequacy" and balances plaintiffs' expected recovery

12  against the value of the settlement offer.  *Bellinghausen v. Tractor Supply Co*., 303 F.R.D. 611, 623

13  (N.D. Cal. 2014); *see Schuchardt v. Law Office of Rory W. Clark*, No. 15-CV-01329-JSC, 2016 WL

14  232435, at *10 (N.D. Cal. Jan. 20, 2016) (same).

15      Here, the Settlement Agreement provides that Liberty Life will not offset the Settlement

16  Class members' LTD benefits by the amount they received in VA benefits until an amendment to the

17  LTD Policies to explicitly include VA benefits as an offset is adopted and approved by the

18  appropriate regulatory agencies, the non-monetary component of the Settlement effectively provides

19  the declaratory and injunctive relief that Plaintiff seeks in this lawsuit.  Barton Decl. ¶ 13.  The

20  Settlement also provides  that, if, prior to the approval and issuance of such revised LTD policy

21  forms, a Settlement Class Member submits a claim to Liberty Life and that claim is approved, then

22  any revised LTD policy form that would otherwise permit the offset of VA benefits will not be

23  applied to that Settlement Class member's claim.  Agmt. § 3.1(a).  The monetary component of the

24  Settlement represents 60% of the amount that Settlement Subclass members could recover if the case

25  was successfully litigated through trial and the trier of fact agreed with Plaintiff on the proper

26  measure of recovery.  Barton Decl. ¶13.  Even without taking into account the other benefits of the

27  Settlement, this is an exceptional result for the Settlement Subclass.  *Id*. ¶ 16.  First, there is the

28  possibility that Plaintiff would prevail on some of his claims and not others, thereby reducing the

1   amount of any recovery.  Second, even if Plaintiff prevailed on the question of liability as to all of

2   his claims, Liberty Life could always contest the amount of recovery in further litigation.

3          Plaintiff's counsel recognizes and acknowledges the expense, risk, and length of continued

4   proceedings necessary to prosecute the litigation against Liberty Life through trial and appeals,

5   including the risk that all of Plaintiff's claims might be dismissed on a motion for summary

6   judgment, following a trial on the merits, or on appeal.  *Id.* ¶ 14.  Accordingly, Plaintiff's counsel

7   believes that both the monetary and the non-monetary component of the Settlement are well within

8   the range of reasonableness.

9          The scope of the releases in a proposed settlement is acceptable where the claims released are

10  limited to those based upon the facts set forth in the complaint.  *Nen Thio v. Genji, LLC*, 14 F. Supp.

11  3d 1324, 1332 (N.D. Cal. 2014); *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A

12  settlement agreement may preclude a party from bringing a related claim in the future even though

13  the claim was not presented and might not have been presentable in the class action, but only where

14  the released claim is based on the identical factual predicate as that underlying the claims in the

15  settled class action").  Here, the Settlement only releases claims based on allegations in the

16  Amended Complaint.  Agmt. § 8.1.

17         **C.    The Settlement Has No Obvious Deficiencies**

18         The final factor considered on preliminary approval is whether the agreement has any

19  obvious deficiencies, such as "unduly preferential treatment of class representatives or segments of

20  the class, or excessive compensation of attorneys."  *Grant*, 2013 WL 6499698, at *5; *see also*

21  *Bellinghausen*, 2014 WL 6694011, at *9.  This Settlement has no such deficiencies.

22         As the Ninth Circuit has recognized, "[a] class action settlement need not necessarily treat all

23  class members equally."  *Cohen v. Resolution Tr. Corp.*, 61 F.3d 725, 728 (9th Cir. 1995) *vacated on*

24  *other grounds*, 72 F.3d 686 (9th Cir. 1996).  Differential treatment is appropriate when it is

25  "rationally based on legitimate considerations."  *Id.*  In a case in which a subgroup of the class is

26  treated differently, the court must ensure that the settlement is "fair, reasonable and adequate to *all*

27  concerned."  *Id.* (emphasis added).  Where the disparate treatment is rationally based on legitimate

28  considerations and there was no indication of any collusion against them, the settlement may be

1    approved.  *See id.* at 727, 728 (approving such a settlement); *see also Santos v. Camacho,* No. CIV.

2    04-00006, 2008 WL 8602098, at *10 (D. Guam Apr. 23, 2008), *aff'd sub nom. Simpao v. Gov't of*

3    *Guam,* 369 F. App'x 837 (9th Cir. 2010).

### 1.    Any Differences Are Based on Legitimate Considerations

5           The Settlement Agreement generally treats all members of the Settlement Classes the same in

6    that, regardless of whether or not they have already incurred a claim under an LTD Policy, they all

7    receive the benefit of the Settlement in that LTD benefits will not be reduced by the amounts

8    received in VA benefits under existing LTD policy forms.  Any differences related to the monetary

9    consideration of the Settlement, which provides payment of an amount equal to 60% of any VA

10   benefit offset applied to reduce that Settlement Subclass Member's LTD benefits, are attributed to

11   the fact that those subclass members have incurred a claim under an LTD Policy and Liberty Life

12   has determined their VA benefits may offset their LTD benefits.  Agmt. § 1(j).   Members of the

13   Settlement Class who are not members of the Settlement Subclass will not benefit from the monetary

14   component of the Settlement as they have not incurred an LTD claim or, if they have, Liberty Life

15   has not reduced their LTD benefits by the amount of their VA benefits.  Thus, to the extent that the

16   Settlement contains provisions that only apply to one settlement class but not the other, those

17   differences are rationally based on the differences in those class members' circumstances.

### 2.    There Is No Special Treatment of the Class Representative

19          Here, Bush and Ripka are not treated any differently than any other members of the

20   Settlement Class.  Agmt. § 3.1.   Bush and Ripka, as all other members of the Settlement Subclass,

21   will receive a payment from Liberty Life of an amount equal to 60% of any VA benefit offset

22   applied to reduce their LTD benefits, on the same terms as any other members of the subclass

23   without any special treatment or additional benefits.  Agmt. § 3.2. As previously disclosed to the

24   Court, the only difference is that Bush had filed a separate, additional claim against Hyundai and as

25   such, claims against Hyundai are excluded from the release.

### 3.    There Is No Collusion as to Attorneys' Fees and Costs

27          The Ninth Circuit has advised courts to be concerned (a) "when counsel receive a

28   disproportionate distribution of the settlement, or when the class receives no monetary distribution

13

1   but class counsel are amply rewarded"; (b) "when the parties negotiate a 'clear sailing' arrangement

2   providing for the payment of attorneys' fees separate and apart from class funds, which carries 'the

3   potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for

4   counsel accepting an unfair settlement on behalf of the class'"; and (c) "when the parties arrange for

5   fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth*

6   *Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).  Such signs do not necessarily mean

7   that a settlement is improper, but only that it is supported by an explanation of why the fee is

8   justified and does not betray the class's interests. *Id.* at 949.

9          Another court in this District recently concluded that a settlement that provided *only*

10  *injunctive relief* but no monetary relief for class members was nonetheless fair based on the

11  following factors:  <u>First</u>, the parties only negotiated attorneys' fees after agreement was reached on

12  the key merits issues is favorable in showing class counsel did not allow their attorneys' fees to

13  interfere with the injunctive relief; <u>second</u>, the parties worked with neutral mediators; <u>third</u>,

14  comparing the Settlement Agreements to the relief originally sought in this case, the Agreements

15  largely accomplish the injunctive relief sought in the Complaint.  *G. F. v. Contra Costa Cty.*, No. 13-

16  CV-03667-MEJ, 2015 WL 7571789, at *11 (N.D. Cal. Nov. 25, 2015).  At this point, the question is

17  whether the agreement is preliminarily fair.  *See Anderson-Butler v. Charming Charlie Inc.*, No.

18  CIV. 2:14-01921 WBS, 2015 WL 4599420, at *11 (E.D. Cal. July 29, 2015) (granting preliminary

19  approval and reserving determination on reasonableness of attorneys' fees until plaintiffs filed

20  motion for attorneys' fees).

21         There are a number of reasons why the fees are reasonable in this settlement.  First, ERISA

22  contains a statutory fee shifting provision and the amount of attorneys' fees are not "capped or

23  measured by the amount in controversy." *Anderson v. AB Painting & Sandblasting, Inc.*, 578 F.3d

24  542, 545-46 (7th Cir. 2009) ("Fee-shifting statutes remove th[e] normative decision from the court"

25  about the proportionality of fees to the amount of damages because "Congress has already

26  determined that the claim was worth bringing" no matter how small in comparison to the costs to

27  bring the claim.); *see City of Riverside v. Rivera*, 477 U.S. 561, 580 (1986) (rejecting argument that

28  attorneys' fees in more than 7 times the determined damages created "a windfall.").  <u>Second</u>, the

1   amount of attorneys' fees and costs agreed to be paid by Liberty Life is *less than* the total lodestar

2   incurred by Plaintiffs' counsel to litigate this case.  Barton Decl. ¶ 19; Roberts Decl. ¶ 3.  <u>Third</u>, the

3   parties negotiated the fee award only *after* agreement had been reached on the underlying terms.

4   Barton Decl. ¶ 21.  <u>Fourth,</u> the negotiation of the underlying claims and the fees were reached with

5   the assistance of an experienced mediator, Cathy Yanni.  *Id.*  In fact, the amount of the fees was the

6   result of a mediator's proposal made by Ms. Yanni which, prior to her determining the amount of the

7   fees, both sides had agreed that they would accept her determination as binding.  *Id.*  Prior to her

8   making that determination, Plaintiff's counsel had provided Ms. Yanni with their billing records.  *Id.*

9   <u>Fifth</u>, the injunctive relief to be received by the Class is effectively most, if not *all*, *of the relief*

10  against Liberty Life if they had been entirely successful on their remaining claims.  As to the

11  Subclass whose LTD benefits have been reduced because Liberty Life has offset their VA benefits

12  against their LTD benefits, each of them will receive from Liberty Life a payment equal to 60% of

13  what was offset, which is a significant monetary benefit to the Subclass.  *Supra* II.  Finally, there is

14  no arrangement that any fees not awarded will revert to Liberty Life.

15  **IV.   THE SETTLEMENT CLASSES SHOULD BE CERTIFIED**

16          Pursuant to the Settlement, Plaintiff seeks certification of the Settlement Classes as defined in

17  Plaintiff's Notice of Motion and Motion.  Specifically, Plaintiff requests pursuant to the Settlement

18  that the Settlement Class be certified under Rule 23(a) and Rule 23(b)(2) and the Settlement

19  Subclass be certified under Rule 23(a) and Rule 23(b)(3) with opt-out rights.

20          **A.   The Requirements of Rule 23(a) Are Satisfied as to Both Settlement Classes**

21          Rule 23(a) sets forth four prerequisites for class certification: "(1) the class is so numerous

22  that joinder of all members is impracticable; (2) there are questions of law or fact common to the

23  class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of

24  the class; and (4) the representative parties will fairly and adequately protect the interests of the

25  class."  Fed. R. Civ. P. 23(a).  Here, these requirements are all met with respect to each Settlement

26  Class.

27          **1.   The Requirement of Rule 23(a)(1) Are Satisfied**

28          "The numerosity requirement is not tied to any fixed numerical threshold, but courts

1    generally find [it] satisfied when a class includes at least forty members." *Akaosugi v. Benihana*

2    *Nat'l Corp.*, 282 F.R.D. 241, 253 (N.D. Cal. 2012).  Pursuant to Plaintiff's stipulation with Liberty

3    Life, Stip. (ECF No. 120-18) ¶ 1, Liberty Life has agreed that Rule 23(a)(1) is met as to the Liberty

4    Life Class defined in the Amended Complaint, which is the same as the Settlement Class.  Am.

5    Compl. ¶ 10.  Also, during the course of discovery, Liberty Life has identified 59 veterans whose

6    LTD benefits were offset by the amount they received in VA benefits during the Class Period.

7    Barton Decl. ¶ 4.   Thus both Settlement Classes satisfy Rule 23(a)(1).

8               **2.      The Requirements of Rule 23(a)(2) Are Met Because There Are Questions**
9                         **of Law or Fact Common to the Settlement Classes**

10              Commonality requires only that there are questions of law or fact common to the class.  Fed.

11   R. Civ. P. 23(a)(2).  Not "every question in the case, or even a preponderance of questions," need be

12   "capable of classwide resolution."  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir.

13   2013) (citing *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 357 (2011)).  A single common question

14   will suffice even though the Rule "refers to common 'questions of law or fact' in the plural."

15   *Stockwell v. City & Cty of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014) (quoting *Dukes*, 564

16   U.S. at 357)); *Abdullah v. U.S. Sec. Assoc., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (clarifying Rule

17   23(a)(2) requires "a single significant question of law or fact").  A common question of law or fact

18   does not have to be one that "will be answered, on the merits, in favor of the class." *Amgen, Inc. v.*

19   *Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1191 (2013).  A common question only "must be of

20   such a nature that it is capable of class-wide resolution—which means that determination of its truth

21   or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

22   *Dukes*, 564 U.S. at 350.

23              Here, questions common to the Settlement Class include those concerning (1) the adequacy

24   of Liberty Life's disclosures in its LTD Policy, the Certificate of Coverage and its form benefit

25   determination letter regarding the offset of VA Benefits, (2) whether Liberty Life violated ERISA

26   § 405, or knowingly participated in fiduciary breaches by providing the Certificate of Coverage and

27   a Summary Plan Description template document available to the Plan Administrators; and (3)

28   whether the terms of the LTD Policy create an equitable lien on allegedly overpaid benefits that is

enforceable under ERISA § 502(a)(3).  For the Settlement Subclass, a determination by the Court

that Liberty Life's group LTD Policies do not allow an offset for VA benefits would necessarily

resolve a common question for all class members – that is, whether the Liberty Life LTD Policies

allow an offset of the amount received in VA benefits.

### 3.   The Requirements of Rule 23(a)(3) Are Met Because Plaintiff's Claims Arise Out of the Same Events and Practices

Typicality requires that "the claims *or* defenses of the representative parties are typical of the

claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3) (emphasis added).  Typicality is met when

the class representative's claims "are reasonably coextensive with those of absent class members;

they need not be substantially identical."  *Parsons v. Ryan,* 754 F.3d 657, 685 (9th Cir. 2014)

(quoting *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1020 (9th Circ. 1998)).  "The Ninth Circuit is

clear that when a policy or practice is at issue that affects all class members, typicality exists."

*Torres v. Mercer Canyons, Inc.,* 305 F.R.D. 646, 653 (E.D. Wash. Apr. 8, 2015) (citing *Parsons*, 754

F.3d at 685 and *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)).  Here, Liberty Life's

"challenged conduct is a policy or practice that affects all class members," making Plaintiff's claims

typical of the Settlement Classes.  Plaintiff challenges what Plaintiff contends is Liberty Life's

uniform interpretation of a provision of its LTD Policies to permit offsets of LTD benefits for the

amount received in VA benefits.  Am. Compl. ¶ 26.  Similarly, Plaintiff challenges the adequacy of

substantially similar communications to Settlement Class members and whether the Liberty Life

LTD Policies permit the offset LTD benefits for the amounts received in VA benefits.  *Id*. ¶¶ 26-27.

### 4.   The Requirements of Rule 23(a)(4) Are Met Because Plaintiff Has No Conflicts and Has and Will Vigorously Represent the Settlement Classes

Adequacy of representation requires a determination (1) that the named plaintiffs and their

counsel have no conflicts of interest with other class members; and (2) that the named plaintiffs and

their counsel will prosecute the action vigorously on behalf of the class.  *In re Mego Fin. Corp. Sec.

Litig.*, 213 F.3d 454, 462 (9th Cir. 2000); *Whitaker v. Bennett Law, PLLC*, No. 13-cv-3145-L(NLS),

2014 WL 5454398, at *6 (S.D. Cal. Oct. 27, 2014) (applying these criteria to plaintiff class).  There

is no conflict where the class is "not divided into conflicting discrete categories" and where "each

17

1   potential plaintiff has the same problem." *Hanlon v. Chrysler Corp*, 150 F.3d at 1021 (9th Circ.

2   1998)); *see In re Alco Int'l. Grp., Inc., Sec. Litig.*, 158 F.R.D. 152, 154 (S.D. Cal. 1994) (finding

3   adequacy where "the named plaintiffs' interests are not antagonistic to those of the remainder of the

4   Class").  Here, on behalf of the Settlement Subclass, Plaintiff challenges the same interpretation of

5   the Liberty Life LTD Policies that Liberty Life has applied to offset benefits owed to all members of

6   the subclass.  Similarly, the Settlement Class is not "divided into conflicting discrete categories"

7   because all class members received the same disputed disclosures.  Stip. ¶ 2-5 (admitting all

8   Policies, Certificates and Benefit Letters contained the same disclosures).  Furthermore, Plaintiff's

9   counsel has done substantial work to both negotiate the proposed Settlement and confirm through

10  discovery that the Settlement is in the interests of the Settlement Classes.  Plaintiff has been involved

11  throughout this process, through multiple telephone calls and attending some of the in-person

12  mediation sessions with Ms. Yanni.  Barton Decl. ¶¶ 6-7, 9-10; Roberts Decl. ¶ 4.  At all times,

13  Plaintiff and their counsel have acted in the interests of the Settlement Classes.  *Id.*  As such, the

14  requirements of Rule 23(a)(4) are satisfied.  Barton Decl. ¶ 18; Roberts Decl. ¶ 4.

15         "Courts have generally permitted the addition or substitution of class representatives when

16  there is no showing of prejudice to defendants and such addition or substitution would advance the

17  purposes served by class certification."  *In re Arakis Energy Corp. Sec. Litig.*, No. 95-cv-3431

18  (ARR), 1999 WL 1021819, at *13 (E.D.N.Y. Apr. 27, 1999).  There is no requirement under Rule 23

19  that a class representative have "sued individually" or have sought to intervene as a plaintiff; rather,

20  a "class member can be passive" and substituted "when, and if, required."  *In re Telectronics Pacing*

21  *Sys, Inc.*, 172 F.R.D. 271, 283 (S.D. Ohio 1997); *Manual for Complex Litigation, supra*, § 21.26

22  ("The Court may permit intervention by a new representative or may simply designate that person as

23  a representative in the order granting class certification.").  Here, absentee class member Adam

24  Ripka seeks to be appointed as a class representative to provide additional representation. Ripka

25  Decl. ¶ 12.

26

27

28

**B.      The Settlement Class and the Settlement Subclass Should be Certified Under Rule 23(b)(2) and Rule 23(b)(3), Respectively**

In addition to satisfying the requirements of Rule 23(a), a proposed class action must also satisfy one of the subsections of Rule 23(b).  Fed. R. Civ. P. 23(b).

**1.      The Requirements of Rule 23(b)(2) Are Satisfied With Respect to the Settlement Class**

Certification under Rule 23(b)(2) is appropriate where (1) "the party opposing the class has acted or refused to act on grounds that apply generally to the class, [(2)] so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"  Fed. R. Civ. P. 23(b)(2).  "Action or inaction is directed to a class within the meaning of [Rule 23(b)(2)] even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.'"  *Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488, 497 (N.D. Cal. 2010) (quoting 1966 Advisory Committee's Note to Rule 23(b)(2)).  The requirements of Rule 23(b)(2) are met as to the Settlement Class.

**a)      Liberty Life Has Acted or Refused to Act on Grounds Generally Applicable to the Settlement Class**

Under Rule 23(b)(2), "it is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole . . . [e]ven if some class members have not been injured by the challenged practice."  *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998); *see Rodriguez v. Hayes,* 591 F.3d 1105, 1125 (9th Cir. 2010) ("The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)").  When there is a set of "policies and practices" that is "generally applicable to the class," a challenge to such practices "easily falls within the scope of Rule 23(b)(2)."  *Santillan v. Ashcroft*, No. C 04-2686 MHP, 2004 WL 2297990, at *12 (N.D. Cal. Oct. 12, 2004); *Legaard v. Providence Health Plan*, 300 F.R.D. 474, 485 (D. Or. 2013) (certifying 23(b)(2) class in case challenging denial of benefits policy that allegedly violated ERISA); *Parsons*, 754 F.3d at 688 ("These requirements [of [Rule 23(b)(2)] are unquestionably satisfied when

19

1   members of a putative class seek uniform injunctive or declaratory relief from policies or practices

2   that are generally applicable to the class as a whole."). Here, there is no real dispute about how

3   Liberty Life interprets or applies the LTD Policies as to the offset for VA benefits or to substantially

4   similar disclosures were made to members of the Settlement Class. Stip. ¶¶ 2-5 (admitting all LTD

5   Policies, Certificates and Benefit Letters contained the same disclosures). Thus the first requirement

6   of Rule 23(b)(2) is met.

> **b)** **The Settlement Class Primarily Seeks Declaratory and Injunctive Relief**

9   Rule 23(b)(2) applies to cases that seek "injunctive or declaratory relief" for the class.

10  *Dukes*, 131 S. Ct. at 2557-58 ("The key to the (b)(2) class is the 'indivisible nature of the injunctive

11  or declaratory remedy warranted' " such as "conduct that was remedied by a single classwide

12  order."). As the Ninth Circuit explained, the relief meets that standard where the injunction would

13  provide "uniform changes in [defendants'] policy and practice." *Parsons*, 754 F.3d at 689; *Cigna*

14  *Corp. v. Amara*, 131 S. Ct. 1866, 1880-81 (2011) (finding remedies for breach of fiduciary duty

15  were equitable)**.** The Complaint primarily seeks such relief about the interpretation of the LTD

16  Policy, the adequacy of the disclosures, and Liberty Life's ability to recoup alleged overpayments.

17  Am. Compl. at Prayer for Relief ¶¶ A-C, E, G-L. As such, the declaratory and injunctive relief

18  sought by the Settlement Class is ideally suited for certification under Rule 23(b)(2). *See Amara v.*

19  *Cigna Corp.*, 775 F.3d 510, 523 (2d Cir. 2014) (finding Rule 23(b)(2) certification appropriate in a

20  case challenging the adequacy of defendants' disclosures and requesting reformation of the plan

21  consistent with the plan as disclosed to participants).

> **2.** **The Requirement of Rule 23(b)(3) Are Satisfied With Respect to the Settlement Subclass**

24  Certification under Rule 23(b)(3) is appropriate when (1) "common questions predominate

25  over any questions affecting only individual members," and (2) "a class action is superior to other

26  available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

27  These requirements are met as to the Settlement Subclass.

28

20

### a)  Common Questions Predominate

Predominance tests whether the class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  When the common questions "present a *significant aspect* of the case and . . . can be resolved for all members of the class in a single adjudication," predominance is met.  *Hanlon*, 150 F.3d at 1022 (emphasis added).  When "[a] common nucleus of facts and potential legal remedies dominates th[e] litigation," common issues predominate.  *Id*.

Courts frequently have found "that common issues predominate over individual ones in the context of ERISA [benefit] claims." *La Fata v. Raytheon Co.*, 207 F.R.D. 35, 44 (E.D. Pa. 2002) (listing cases).  Common issues predominate when plaintiff "seek[s] the same relief under the same theories on behalf of the entire class." *Boos v. AT&T*, 252 F.R.D. 319, 325-26 (W.D. Tex. 2008) (certifying ERISA § 502(a)(1)(B) benefit claims).  "Essentially, [ERISA § 502] (a)(1)(B) allows an action in the form of breach of contract, the contractual instrument being the [] plan." *Nunez v. Monterey Peninsula Eng'g*, 867 F. Supp. 895, 906 (N.D. Cal. 1994).  Proof for such a claim "is likely to turn on the interpretation of terms in the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Even if the calculation of monetary relief was an issue (which it is not), the Ninth Circuit recently and repeatedly re-affirmed that "damage calculations alone cannot defeat certification." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 986 (9th Cir. Sept. 21, 2015) (quoting and reaffirming *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) and reversing denial of class certification).  For the reasons explained above, all questions regarding the interpretation of the LTD Policies and payment of benefits are common for all members of the Settlement Subclass.  As a single adjudication will resolve the central issues as to their claims, the predominance requirement is met.

### b)  The Superiority Requirement Is Met

The superiority requirement involves an assessment of "'the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis.'" *In re Juniper Networks, Inc. Secs. Litig.*, 264 F.R.D. 584, 592 (N.D. Cal. 2009)).  Among the factors to consider are the following:

1

2
(A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing of a class action.

3

4

5
Fed. R. Civ. P. 23(b)(3).

6
First, the Settlement Subclass has an interest in a unitary resolution of the question of Liberty

7
Life's interpretation of the LTD Policies as allowing LTD benefits to be offset by the amount of VA

8
benefits received than to have each subclass member proceed separately, particularly as Plaintiff is

9
aware of (and Liberty Life has identified) no other litigation involving the claims asserted in this

10
litigation.  Am. Compl. ¶ 49.  Second, it is appropriate to concentrate the claims in this District.

11
Defendants admitted that jurisdiction and venue are proper and do business in this District.  Liberty

12
Answer. ¶ 6; Hyundai Answer. ¶ 6.  As Liberty Life provides LTD insurance to employees of many

13
large employers who are headquartered or have significant presence in this District, significant

14
numbers of the members of the Settlement Class are likely here.  Barton Decl. ¶ 5.  In considering

15
whether to certify a settlement class, manageability is not an issue.  *Amchem*, 521 U.S. at 620.  Thus,

16
the superiority requirement is met.

17
**V.      THE NOTICES AND PLAN OF NOTICE SHOULD BE APPROVED**

18
Once the parties obtain preliminary approval of the settlement, Rule 23(e) requires that the

19
court must direct notice in a reasonable manner to all class members who would be bound by the

20
proposed settlement. Fed. R. Civ. P. 23(e)(1)(B); *Colesberry*, 2006 WL 1875444, at *7. While the

21
precise form of notice is discretionary with the court, a proper notice should (1) describe the facts

22
underlying the action and the class, (2) describe the terms of the settlement, (3) disclose any benefits

23
provided to class representatives, (4) provide information regarding attorney's fees, (5) state the time

24
and place of the final hearing, (6) provide counsel's contact information and instructions on how to

25
object and/or make inquiries, and (7) explain the procedure for allocation.  *Manual for Complex*

26
*Litigation, supra*, § 21.312; *see Colesberry*, 2006 WL 1875444, at *7 (approving notice that

27
provided such information); *Aguilar v. Melkonian Enters. Inc.*, No. 1:05-CV-00032 OWW LJO,

28
2006 WL 3199074, at *5 (E.D. Cal. Nov. 3, 2006) (same).  Here, the proposed notices to the

1    Settlement Classes provide information on all of these subjects and inform class members about their

2    rights under the Settlement as well as their right to be heard at the final fairness hearing.  Agmt. Exs.

3    A & B.

4            For any class certified under Rule 23(b)(3), Rule 23(c)(3) requires that the notice inform

5    class members of the following: "(i) the nature of the action; (ii) the definition of the class certified;

6    (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through

7    an attorney if the member so desires; (v) that the court will exclude from the class any member who

8    requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of

9    a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).  Here, the proposed

10   notice to the Settlement Subclass meets these requirements.  Agmt. Ex. B.  Thus the form of the

11   proposed notices to the Settlement Classes should be approved

12           "Rule 23(e) gives the court 'virtually complete' discretion as to the manner of service of the

13   settlement notice."  *Colesberry*, 2006 WL 1875444, at *7; *see* Fed. R. Civ. P. 23(c)(2)(B) (requiring

14   "the best notice practicable under the circumstances").  It is well-established that notice sent by first

15   class mail is sufficient when the names and addresses of the class members are known.  *Eisen v.*

16   *Carlisle & Jacquelin*, 417 U.S. 156, 173-77 (1974); *Manual for Complex Litigation, supra*, § 21.311

17   (explaining that individual notice via mail is preferred when names and addresses are known).  In

18   such circumstances, courts have authorized notice only by mail.  *E.g.*, *Colesberry*, 2006 WL

19   1875444, at *7; *Aguilar*, 2006 WL 3199074, at *5.  In the last 10 to 15 years, courts have begun to

20   approve of notice via electronic mail as an alternative to U.S. mail.  *E.g.*, *Margulies v. Tri-Cnty.*

21   *Metro. Transp. Dist. of Or.*, No. 3:13-cv-00475-PK, 2013 WL 5593040, at *21 (D. Or. Oct. 10,

22   2013) (approving notification by email and finding that "'email is an efficient and nonintrusive

23   method of communication.'"); *Guy v. Casal Inst. of Nev., LLC*, No. 2:13-CV-02263-APG, 2014 WL

24   1899006, at *7 (D. Nev. May 12, 2014) (same); *In re Netflix Privacy Litig.*, No. 5:11-CV-00379

25   EJD, 2012 WL 2598819, at *4 (N.D. Cal. July 5, 2012) (approving use of email notice); *Chavez v.*

26   *Netflix, Inc.*, No. CGC-04-434884, 2005 WL 3048041, at *2 (Cal. Super. October 27, 2005)

27   (approving summary notice via email).  Here, the members of the Settlement Subclass (*i.e.*, those

28   who actually had an offset applied to their LTD benefits) will receive notice by U.S. Mail.  Agmt.

§ 6.1(b).  That notice fully complies with Rule 23(c)(3) and the case authority cited above.

In certifying a class under Rule 23(b)(2), the Court "*may direct appropriate notice to the class.*" Fed. R. Civ. P. 23(c)(2)(A) (emphasis added).  "[N]otice to the [Rule 23(b)(2)] class is not required but may be appropriate depending on the circumstances. *Lyon v. United States Immigration & Customs Enf't*, 300 F.R.D. 628, 643 (N.D. Cal. 2014), *modified,* 308 F.R.D. 203 (N.D. Cal. 2015*)* (citing Fed. R. Civ. P. 23(c)(2)); *Lambeth v. Advantage Fin. Servs., LLC*, No. 1:15-CV-33-BLW, 2015 WL 3755843, at *3 (D. Idaho June 16, 2015) (comparing requirement in Rule 23(c)(2)(A) with requirement in Rule 23(c)(2)(B) that the court " must direct" notice to class members)).  Where a settlement does not release any monetary claims of a class certified under Rule 23(b)(2),"[c]ourts typically require less notice." *Lilly v. Jamba Juice Co*., No. 13-CV-02998-JST, 2015 WL 1248027, at *8-9 (N.D. Cal. Mar. 18, 2015) (requiring no notice where settlement released no monetary claims of Rule 23(b)(2) class); *Kim v. Space Pencil, Inc*., No. C 11-03796 LB, 2012 WL 5948951, at *4 (N.D. Cal. Nov. 28, 2012).  Here, Plaintiff requests that the Settlement Class be certified under Rule 23(b)(2).  *Supra* IV.  The members of the Class who are not also members of the Settlement Subclass (*i.e.,* for which the only relief sought or obtained is prospective injunctive relief) will receive notice through the same method by which they received their disclosures and other information about their LTD benefits.  Agmt. § 6.1(a).  Accordingly, these procedures are consistent with due process, meet the requirements of Rule 23, and should be approved.

## VI.   THE COURT SHOULD ESTABLISH DATES FOR EFFECTUATING FINAL APPROVAL OF THE SETTLEMENT

In order to send out an effective Notice, Plaintiff requests a date for the Final Approval Hearing in order to provide for a sufficient amount of time for the mailing of the Notices, for Class Members to file any objections to or, if applicable, requests for exclusion from the Settlement, and for Class Counsel to respond to any objections.  As such, Plaintiff's counsel requests that the Court establish the dates set forth below:

| | |
|---|---|
| Last day for Liberty Life to send  the Settlement Class Notice to its group policyholders | 30 days after the Preliminary Approval Date |
| Last day for Liberty Life to mail the Settlement Subclass Notice to Settlement Subclass Members | 30 days after the Preliminary Approval Date |

24

| Last day for Liberty Life to provide data regarding Settlement Subclass Members to Class Counsel | 30 days after Settlement Agreement executed |
|---|---|
| Last day for Liberty Life to file Declaration re: settlement class notices | 30 days before motion for final approval due |
| Last day for Class Counsel to file motion for award of attorneys' fees and costs | 30 days after the Preliminary Approval Date |
| Last day for requests for exclusion from the Settlement Subclass to be postmarked by Settlement Subclass Members | 90 days after the Preliminary Approval Date |
| Last day for Settlement Class Members to file objections to the settlement | 90 days after the Preliminary Approval Date |
| Last day for Class Counsel to file motion for final approval of settlement | 120 days after the Preliminary Approval Date |
| Hearing on motion for final approval of settlement and application for attorneys' fees and costs | At least 150 days after the Preliminary Approval Date |

## VII.    CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion to preliminarily approve the proposed Settlement, certify the Settlement Classes, approve the proposed Settlement Class Notices, authorize their distribution to the Settlement Classes, and set dates outlined above.

Dated:  August 16, 2016                    Respectfully submitted

By:   /s/ R. Joseph Barton
R. Joseph Barton (Cal Bar No. 212340)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile:  (202) 408-4699
Email: jbarton@cohenmilstein.com


Michelle L. Roberts  (CA Bar No. 239092)
ROBERTS BARTOLIC LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, CA 94501
Telephone: (510) 992-6130
Facsimile:  (510) 280-7564
Email: mroberts@robertsbartolic.com

*Attorneys for Plaintiff*