## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is made and entered into by and between Plaintiff James Bush, individually and on behalf of the Settlement Class Members and Settlement Subclass Members (as defined below), on the one hand, and Defendant Liberty Life Assurance Company of Boston ("Liberty Life"), on the other hand.  Defendant Hyundai Motor America ("Hyundai") is not a party to or released by this Agreement.  Plaintiff and Liberty Life are collectively referred to as the "Parties" or individually as a "Party."

## <u>RECITALS</u>

This Agreement is made for the following purpose and with reference to the following facts:

A.     On April 1, 2014, Plaintiff filed a Complaint against Liberty Life and Hyundai entitled *James L. Bush v. Liberty Life Assurance Company of Boston; Hyundai Motor America* in the United States District Court for the Northern District of California (the "Court"), Case No. 3:14-cv-01507-YGR-EDL (the "Action"), on behalf of himself and a putative class consisting of (a) Veterans who were honorably discharged from service in the United States Armed Forces and who are participants in employee welfare benefit plans governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA") that provide long-term disability ("LTD") benefits funded by group LTD policies issued by Liberty Life, and (b) the beneficiaries of such participants.  The Complaint asserted claims on behalf of the putative class against Liberty Life related to the offset or reduction of the amounts that the putative class members received in benefits through the United States Department of Veterans Affairs ("VA benefits") from their LTD benefits payable under group LTD policies issued by Liberty Life, as well as claims arising from or related to disclosures and notifications of the potential or actual offset of VA benefits.   Liberty Life filed a Motion to Dismiss some of those claims, which the Court granted in part and denied in part in its Order dated January 2, 2015.  Thereafter, on April 20, 2015, Plaintiff filed an Amended Complaint that alleged additional claims for relief arising under ERISA and a non-ERISA claim for declaratory relief.  Liberty Life again moved to

-1-

dismiss some of the claims alleged in the Amended Complaint.  In its Order dated September 16, 2015, the Court dismissed Plaintiff's non-ERISA claim seeking a declaration that Liberty Life's offset of VA benefits violated 38 U.S.C. § 5301(a), and certain breach of fiduciary duty claims, including the claim that Liberty Life engaged in transactions prohibited by ERISA, without leave to amend.

B.      From approximately July 2014 through April 2015, the Parties engaged in discovery and motion practice, including Motions to Dismiss the Complaint, Motions to Dismiss the Amended Complaint, and a Motion to Compel discovery filed by Plaintiff against Liberty Life.  On October 15, 2015, Plaintiff filed a Motion for Class Certification based on the remaining claims alleged in the Amended Complaint and sought appointment of Plaintiff Bush and absentee Class Member, Adam Ripka, as Class Representatives.

C.      On May 14, 2015, the Parties and their respective counsel engaged in a full-day mediation session with Cathy Yanni of JAMS. The Parties continued their settlement discussions and held an additional day of mediation on November 19, 2015.  The Parties thereafter agreed to continue the hearing on the Motion for Class Certification to allow further settlement negotiations.  Ms. Yanni remained involved throughout the settlement negotiation process and, with her assistance, the Parties reached an agreement in principle to resolve the individual and class claims against Liberty Life on January 6, 2016, and thereafter reached an agreement as to the maximum amount of attorneys' fees and costs that Settlement Class Counsel (defined below) may seek against Liberty Life on January 18, 2016.

D.      Liberty Life disputes the claims and contentions alleged in the Action and, by entering into this Agreement, does not admit any liability or wrongdoing of any kind or that any class can or should be certified, except for settlement purposes.

E.      Plaintiff and Settlement Class Counsel believe that the Action has merit and have examined and considered the benefits to be obtained under this Agreement, the risks associated with the continued prosecution of this complex and potentially time-consuming litigation, and

the likelihood of class certification and success on the merits. Settlement Class Counsel have fully investigated the facts and law relevant to the Action, have conducted formal and informal discovery, and have conducted independent investigation. Settlement Class Counsel and the Settlement Class Representatives have concluded that the settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class Members.

F.     The Parties enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation and to avoid the risks of litigation. The Parties desire to settle the Action with respect to all claims alleged against Liberty Life in the Amended Complaint arising from or related to the offset or reduction of the amounts received in VA benefits from LTD benefits payable under group LTD policies issued by Liberty Life, as well as all claims against Liberty Life arising from or related to disclosures and notifications of the potential or actual offset of VA benefits on or after January 1, 2008. This Agreement is intended to bind the Parties and all Settlement Class Members who are not excluded from the Settlement Subclass (as defined below), and who agree that the Action as to Liberty Life is being compromised and settled pursuant to the terms and conditions set forth in this Agreement.

**NOW**, **THEREFORE**, in light of the foregoing, in consideration of the terms and conditions set forth herein, which the Parties acknowledge are good and valuable consideration for this Agreement, the Parties hereby agree and stipulate, by and through their respective counsel of record, subject to approval by the Court, as follows:

1.     **Additional Definitions**

As used in this Agreement and its incorporated Exhibits, the following terms have the following meanings:

(a)     "Class Period" means January 1, 2008 through the Settlement Effective Date (as defined below).

(b)     "Defense Counsel" refers to Frank Falzetta and Robert J. Guite of Sheppard, Mullin, Richter & Hampton LLP, counsel for Liberty Life.

(c)     "Final Approval Order and Judgment" means the final order and judgment entered by the Court in this Action upon final approval of this Class Action Settlement (as defined below).

(d)     "Lead Settlement Class Counsel" means R. Joseph Barton of Cohen Milstein Sellers & Toll PLLC.

(e)     "Liaison Settlement Class Counsel" means Michelle Roberts of Roberts Bartolic LLP.

(f)     "Plan Administrator" means (i) the person specifically designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, another person that the Secretary of Labor has prescribed.

(g)     "Plan Sponsor" means (i) the employer in the case of an employee benefit plan established or maintained by a single employer, (ii) the employee organization in the case of a plan established or maintained by an employee organization, or (iii) in the case of a plan established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan.

(h)     "Preliminary Approval Date" means the date of entry of the Court's Order Granting Preliminary Approval of the Class Action Settlement described below.

(i)      "Settlement Class" or "Settlement Class Member" means:  (a) Veterans who were honorably discharged from service in the United States Armed Forces and who are participants in ERISA-governed employee welfare benefit plans that provide LTD benefits insured by group LTD policies issued by Liberty Life; and (b) the beneficiaries of such participants.

(j)     "Settlement Subclass" or "Settlement Subclass Member" means Members of the Settlement Class whose LTD benefits were reduced or offset by the amount of VA benefits paid

-4-

or payable to that Settlement Subclass Member from January 1, 2008 through the Settlement Effective Date.  Excluded from the Settlement Subclass are persons who timely opt-out of the settlement by following the procedures set forth herein.

(k)      "Settlement Class Counsel" or "Plaintiff's Counsel" refers to R. Joseph Barton of Cohen, Milstein Sellers & Toll PLLC and Michelle Roberts of  Roberts Bartolic LLP.

(l)      "Settlement Class Notice" means the form of notice  to be provided by Liberty Life to its group policyholder customers, substantially in the form of Exhibit A hereto.

(m)      "Settlement Subclass Notice" means the Notice of Class Action Settlement to be provided by Liberty Life to Settlement Subclass Members by first class U.S. Mail, substantially in the form of Exhibit B hereto.

(n)      "Settlement Class Representatives" refers to the named Plaintiff, James L. Bush and/or absentee Class Member, Adam Ripka.

(o)      "Settlement Effective Date" means the date on which the Settlement embodied in this Agreement shall become effective and is the date on which all of the following have occurred: (a) execution of this Agreement by or on behalf of all Parties and their counsel; (b) certification of the proposed Settlement Class; (c) entry of a Final Approval Order and Judgment by the Court approving this Agreement in accordance with the terms herein (which terms include, but are not limited to, the Court's retention of jurisdiction over the enforcement of this Agreement); and (d) the expiration of the time to take any appeals or writs from such Final Approval Order and Judgment, with no appeals or writs having been filed or if any appeal is filed, upon the final resolution of any appeals taken from such Final Approval Order and Judgment such that no further appeal or writ may be taken from it.

2.      **Certification of Settlement Class and Approval of the Settlement**

2.1      **Preliminary Approval Motion.**  As soon as practicable after this Agreement is signed, the Settlement Class Representatives shall move for an order requesting that the Court certify the Settlement Class and the Settlement Subclass and preliminarily

approve the settlement embodied by this Agreement (the "Class Action Settlement").  The motion shall request that the Court: (a) preliminarily approve this Agreement as being the product of serious, informed, non-collusive negotiations, having no obvious deficiencies, not improperly granting preferential treatment to the proposed Settlement Class Representatives or segments of the Settlement Class, and falling within the range of possible approval; (b) stay all proceedings in the Action against Liberty Life until the Court renders a final decision on approval of the Class Action Settlement; (c) certify the Settlement Class pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure ("FRCP") and the Settlement Subclass pursuant to Rule 23(b)(3) of the FRCP; (d) appoint Plaintiff James L. Bush and/or Adam Ripka as Settlement Class Representatives for settlement purposes only; (e) appoint Settlement Class Counsel as Class Counsel for settlement purposes only; and (f) set the date and time of the final approval hearing.  Settlement Class Counsel will prepare initial drafts of the motion for preliminary approval and supporting documents and provide such drafts to Defense Counsel at least seven calendar days before filing.

      2.2    **Defendants' Non-Opposition.** Liberty Life may join in the Settlement Class Representatives' motion for preliminary approval, or file its own brief statement of non-opposition, but will not object to or oppose final certification of the Settlement Classes at the Court or on any appeal consistent with the terms of this Agreement.  Liberty Life does not consent to certification of any class for any purpose other than effectuating this Class Action Settlement and disputes that any class should or could be certified for any other purpose.

      2.3    **Preliminary Approval Order.**  The Court is expected to enter an order preliminarily approving the settlement and enter an order certifying (a) the Settlement Class pursuant to Rule 23(b)(2) of the FRCP, and (b) the Settlement Subclass pursuant to Rule 23(b)(3) of the FRCP, and make findings supporting those conclusions, subject to final findings, final approval of the Class Action Settlement, and entry of the Final Approval Order

-6-

and Judgment.  The preliminary approval order that will be proposed to the Court shall be substantially in the form of Exhibit C hereto.

      2.4    **Motion for Final Approval.**  Within the time set by the Court, Settlement Class Counsel shall file a motion for final approval of the Class Action Settlement and for entry of a Final Approval Order and Judgment.  Settlement Class Counsel will prepare initial drafts of the motion for final approval and supporting documents and provide such drafts to Defense Counsel and at least seven calendar days before filing.  Liberty Life may join in the Settlement Class Representatives' motion or file its own brief statement of non-opposition, but Liberty Life will not oppose final approval of the Agreement.  Settlement Class Members shall be able to request copies of the motion and supporting papers from Settlement Class Counsel, or to view the motion and brief at www.LLACOBSettlement.com, or another website designated by the Court.  At the time of the final approval hearing by the Court, and if the Court provides final approval of the settlement, the Parties shall request that the Court immediately execute and enter the Final Approval Order and Judgment substantially in the form of Exhibit D hereto.

      2.5    **Identification of Subclass Members**.  Within 30 days of the date on which this Agreement is executed, Liberty Life will provide to Class Counsel (to the extent not previously provided) a list identifying the full name and last known address of each Settlement Subclass Member (or the name of any representative of any estate associated with any deceased Settlement Subclass Member known to Liberty Life), the Settlement Subclass Member's claim number, the Settlement Subclass Member's Plan Administrator or Plan Sponsor (and policy number) and the amount of the VA benefits offset.   No later than 14 days before the motion for Final Approval is due, Liberty Life will provide a list to Settlement Class Counsel identifying each Settlement Subclass Member and the amount to be paid to each Settlement Subclass Member pursuant to this Agreement.   Lead Settlement Class

Counsel shall file along with the motion for final approval a complete list of all Settlement Subclass Members who have validly and timely excluded themselves from the Class. If Defense Counsel or Liberty Life receive any requests for exclusion from Settlement Subclass Members or any communications from Class Members regarding the settlement or the litigation, they will promptly forward such communications to Lead Settlement Class Counsel.

2.6 **Parties' Cooperation.** The Parties shall take all necessary and reasonable steps to achieve certification of the Settlement Class, preliminary and final approval of the Class Action Settlement, and entry of a Final Approval Order and Judgment, including, without limitation, responding to objections, addressing any appeals or appellate issues, and obtaining any further orders from the Court as may be necessary.

3. **Settlement Terms, Payments and Procedures**

3.1 For the Settlement Class, Liberty Life agrees that, as of the Preliminary Approval Date:

(a) Liberty Life will not claim any offset for or reduce a participant's LTD benefits by the amount of VA benefits that the participant received (or was eligible to receive) or seek reimbursement for any alleged overpayment of LTD benefits resulting from a participant's receipt of VA benefits under the current version of its group LTD policies funding LTD benefits provided under ERISA-governed employee welfare benefit plans. This Agreement does not prohibit Liberty Life from seeking regulatory approval of revised LTD policy forms that specifically identify VA benefits as other income that may apply to offset or reduce LTD benefits, and thereafter offsetting VA benefits pursuant to such approved and issued LTD policy forms so long as Liberty Life has also complied with paragraphs (b) and (c) of this Section. If, prior to the approval and issuance of such revised LTD policy form, a Settlement Class Member submits a claim to Liberty Life and that claim is approved, then any revised LTD policy form

-8-

that would otherwise permit the offset of VA benefits will not be applied to that Settlement Class Member's claim.   Pursuant to this Section, the fact that a Settlement Class Member was eligible to receive VA benefits prior to the approval and issuance of such revised LTD policy forms will not preclude Liberty Life from offsetting or reducing LTD benefits by the amount of VA benefits that he or she actually receives unless Liberty Life approves that Settlement Class Member's LTD claim and the date of the Settlement Class Member's disability (as defined in the applicable group LTD policy) is prior to the approval and issuance of such revised LTD policy forms.

(b)     If Liberty Life begins using LTD policy forms that specifically identify VA benefits as other income that may offset or reduce LTD benefits, Liberty Life will also specifically identify VA benefits as other income that may offset LTD benefits in the document titled Certificate of Coverage that it provides to its group policyholder customers and distribute such Certificate of Coverage to its group policyholder customers in advance of any such offset or reduction, so long as Liberty Life continues to provide a document titled Certificate of Coverage to its group policyholder customers.

(c)     If Liberty Life begins using LTD policy forms that specifically identify VA benefits as other income that may offset or reduce LTD benefits, Liberty Life will modify the letter it sends to individuals whose claims for LTD benefits payable under ERISA-governed employee welfare benefit plans are approved to specifically identify VA benefits as other income that may offset or reduce LTD benefits.

3.2     For the Settlement Subclass, Liberty Life agrees to do the following:

(a)     Liberty Life will pay each Settlement Subclass Member (or the representative of his or her estate if deceased) who does not timely opt-out of the Settlement Subclass an amount equal to 60% of any VA benefit offset applied to reduce that Settlement Subclass Member's LTD benefits from January 1, 2008 through the Preliminary Approval Date (the "Settlement Amount").   Liberty Life currently estimates that the Settlement Amount to be

-9-

paid to the Settlement Subclass is approximately $795,000.00, assuming all Settlement Subclass Members participate in the settlement, but may be higher as of the Preliminary Approval Date.

(b)     On or after the Preliminary Approval Date, Liberty Life will not initiate or pursue any reimbursement claim against any Settlement Subclass Member and will cease any efforts to collect and will not receive any amounts from any Settlement Subclass Member related to an alleged overpayment of LTD benefits resulting from a Settlement Subclass Member's receipt, or eligibility to receive, VA benefits during the Class Period.

(c)     Liberty Life represents that neither it, nor any of its collection agents, has made any adverse report to any credit reporting agency related to any attempt to collect, or collection of, any VA benefit offset from LTD benefits payable under a group LTD policy funding benefits under an ERISA-governed employee welfare benefit plan.

4.     **Payment to Settlement Subclass**

4.1     **Administration of Settlement.**  The Settlement Subclass Members are identifiable from Liberty Life's business records as they presently receive, or formerly received, LTD benefits from Liberty Life.  As Liberty Life has previously, or is presently, administering LTD claims for the Settlement Subclass Members, including the payment of LTD benefits, and to avoid unnecessary costs for settlement administration, (a) no third-party settlement administrator is necessary, and (b) Settlement Subclass members will not be required to submit any claim form or other information to receive payment under this Settlement. Instead, Liberty Life will issue and deliver settlement checks directly to the Settlement Subclass Members who do not timely opt-out of the Settlement Subclass.

4.2     **Timing & Manner of Payment.**  Liberty Life shall distribute the amount due to each Settlement Subclass Member no later than 45 days after the Settlement Effective Date by way of a settlement check mailed to the Settlement Subclass Member's last known address.  In the event that Liberty Life receives any notice that the address to which the check was mailed was undeliverable, Liberty Life will inform Lead Settlement Class

Counsel and will attempt to locate a new or updated address.  If a new address is identified, Liberty Life will re-mail the settlement check to the new address.

        4.3    **Reports Regarding Payment.**  Within 30 days of issuing payments to the Subclass, Liberty Life will file a declaration with the Court confirming that checks have been issued and mailed to the Subclass members.  If any checks remain uncashed more than 180 days after the Settlement Effective Date, Settlement Class Counsel and Liberty Life will confer and make recommendations to the Court regarding those payments.

        4.4    **Administrative Expenses Related to Payments.**   Liberty Life will bear all administrative expenses in issuing and making payments to Settlement Subclass Members.

    5.    **<u>Attorneys' Fees & Expenses</u>**

        5.1    **Motion for Class Counsel's Attorneys' Fees & Expenses.**  Within the time set by the Court, Settlement Class Counsel will file any motion requesting that the Court approve an award of attorney's fees and litigation expenses.  After the motion is filed, Settlement Class Members shall be able to request copies of the motion and supporting papers from Lead Settlement Class Counsel, or to view the motion and memorandum at www.LLACOBSettlement.com, or another website approved by the Court.

        5.2    **Agreement Regarding Class Counsel's Attorneys' Fees & Expenses.**  So long as Settlement Class Counsel's request does not seek payment in excess of the attorneys' fees and expenses incurred, Liberty Life will agree to pay and will not oppose a motion by Settlement Class Counsel for an award of attorneys' fees and litigation expenses of up to a combined total of $425,000.00.  The amount ultimately awarded by the Court to be paid by Liberty Life cannot exceed $425,000.00 and shall be the only fees and costs paid to Settlement Class Counsel by Liberty Life under this Agreement or to Settlement Class Counsel by Liberty Life in connection with the Action, and Liberty Life shall not otherwise be liable for any payment to Settlement Class Counsel in connection with this Action.

-11-

5.3     **Time & Manner of Payment of Class Counsel's Attorneys' Fees & Expenses.**  Liberty Life shall pay attorneys' fees and expenses, as approved by the Court, to Settlement Class Counsel within 45 days of the Settlement Effective Date by a check payable as directed by Lead Settlement Class Counsel.

5.4     **Effect of Reduction of Award of Class Counsel's Attorney's Fees & Expenses.**  Any reduction by the Court or by an appellate court of the fees and costs awarded to Settlement Class Counsel will not be considered a material modification of this Agreement and shall not affect any of the Parties' rights and obligations under this Agreement, and shall only serve to reduce the amount of the fees and costs payable to Settlement Class Counsel and increase the amounts payable to Settlement Subclass Members.  If the Court or an appellate court reduces the amount of attorneys' fees and costs sought by Settlement Class Counsel pursuant to Section 5.2, then any such reduction will not revert back to Liberty Life, but instead will be distributed to Settlement Subclass Members on a *pro rata* basis in proportion to the Settlement Amount payable to each Settlement Subclass Member pursuant to Section 3.2 above.

5.5     **Defendants' Attorneys' Fees & Expenses**.  Liberty Life will bear its own attorneys' fees, expenses and costs including any incurred by Defense Counsel.  No amount of the attorneys' fees, expenses or costs of this Litigation incurred by Liberty Life will be paid by or charged to Settlement Class Counsel or any Settlement Class member.

6.     **Settlement Class Notice**

6.1     **Method of Providing Notice.**  Within the time set by the Court, Liberty Life will provide Class Notice to the Settlement Classes as follows:

(a)     *For the Settlement Class*:  Liberty Life will provide the Settlement Class Notice via email or U.S. Mail to its group policyholder customers who presently have group LTD policies in force that provide LTD benefits under employee welfare benefit plans governed by ERISA, in the form of Exhibit A hereto, advising that the Court has ordered that the

-12-

Settlement Class Notice be provided to employees who are participants in its LTD Plan in the same manner that other notices and information about the Plan are provided.

(b)     *For the Settlement Subclass*: Liberty Life will send to each Settlement Subclass Member (or the representative of his or her estate if deceased), as identified from Liberty Life's business records, the Settlement Subclass Notice by first class U.S. mail in the form of Exhibit B hereto, to the last known address of each Settlement Subclass Member or representative of such Settlement Subclass Member's estate.  To the extent that any such mail is returned as undeliverable, Liberty Life will inform Lead Settlement Class Counsel and will attempt to locate a new or updated address, via the National Change of Address database or similar commercial source, and if a new or additional address is identified, will re-mail the Notice to the new address.

6.2     **Contents**.  The Settlement Class Notice and the Settlement Subclass Notice (Exhibits A and B hereto) will contain a brief description of the nature of the litigation, the claims, the financial and other significant terms of the Agreement, the benefits of the settlement and the release the procedure for, and consequences of opting-out and objecting to this Agreement, the attorneys' fees and costs sought by Class Counsel and the date of the final approval hearing, in the form approved by the Court.

6.3     **Declaration Regarding Class Notice and Adequacy of Class Notice.** Within the time set by the Court, but no later than 30 days before the filing date for the motion for final approval of the Class Action Settlement, Liberty Life shall file a declaration with the Court confirming that Liberty Life provided the Settlement Class Notice and the Settlement Subclass Notice in accordance with the Court's preliminary approval order and any subsequent orders the Court might make as to the notice to be provided the Settlement Class.

6.4     **Class Notice Costs and Expenses.**   Costs and expenses to provide the Settlement Class Notices, including the costs of any website for purposes of this Settlement, will be paid by Liberty Life.  No costs or expenses incurred by Liberty Life or the Plan

-13-

Administrators in providing Class Notice to the Settlement Class or Settlement Subclass will be charged to Plaintiff, Settlement Class Counsel or any member of the Settlement Class or the Settlement Subclass.

      6.5    **Extent of Responsibilities.**  Unless otherwise required by the Court, nothing else other than set forth in this Agreement shall be required of Liberty Life or Defense Counsel to provide notice of the proposed settlement and the final approval hearing.

      7.    <u>**Exclusions from the Settlement Classes and Objections**</u>

      7.1    **Non-Exclusion of Settlement Class Members.**  No exclusion or opt-out right will be available to Settlement Class Members who are not also Settlement Subclass Members.

      7.2    **Form and Manner for Requests for Exclusion.**  Settlement Class Counsel will propose that Settlement Subclass Members will have until 90 days from the Preliminary Approval Date to exclude themselves from the Settlement Subclass by sending a letter, by first class United States mail, to Lead Settlement Class Counsel and to Defense Counsel at the addresses set forth in the Settlement Subclass Notice containing:  (1) the title of the Action; (2) the full name, address, telephone number, and email address of the person requesting exclusion; (3) a statement that he or she requests to be excluded from the Settlement Subclass, and (4) a signature by the person who wishes to exclude themselves from the Settlement.  Opt-out letters must be submitted individually and cannot be made on behalf of a group of Settlement Subclass Members.

      7.3    **Effect of Requests for Exclusion.**  Settlement Subclass Members who timely opt-out of the Class Action Settlement shall:  (a) be excluded from the Class; (b) have no right to receive any benefits under the Class Action Settlement; (c) not be bound by the terms of the Class Action Settlement; and (d) have no right to object to the terms of the Class Action Settlement or to be heard at the final fairness hearing.  Any such opt-out request must be made in accordance with the terms set forth in this Agreement and the Settlement Subclass

-14-

Notice or as modified by the Court, and will be timely only if postmarked no later than 90 days after entry of the Preliminary Approval Date, or as determined by the Court (the "Exclusion Period").  Unless otherwise determined by the Court, the delivery date will be the date the request for exclusion is deposited in the U.S. Mail as evidenced by the postmark.

        7.4     **Effect of Exclusion.**  Notwithstanding anything else in this Agreement, if more than ten (10) Settlement Subclass Members opt-out of this settlement, Liberty Life shall have the option to terminate this Agreement at its sole discretion so long as Liberty Life exercises this option by giving notice of such termination in writing to Settlement Class Counsel a minimum of 10 days before the deadline for filing the motion for final approval. Settlement Subclass Members cannot both object to and opt-out of this settlement.  Any Settlement Subclass Member who attempts to both object to and opt-out of this settlement will be deemed to have opted out and will forfeit the right to object to this settlement or any of its terms.  If Liberty Life exercises this option, this Agreement shall be null and void and of no force and effect as described in Paragraph 10.2 below.

        7.5     **Objections to the Settlement.**  The motion for preliminary approval will request that any objections to this Class Action Settlement must be filed with the Court, with service copies to Settlement Class Counsel and Defense Counsel, no later than 90 days after the Preliminary Approval Date.  To be considered by the Court, the objection must include: (1) the name and case number of the Action; (2) the Settlement Class Member's name and postal address; (3) a statement made under penalty of perjury that the person is a member of the Settlement Class and/or Settlement Subclass; (4) a detailed statement of each objection, including, if available, the factual and legal basis for each objection; and (5) a statement of whether the Settlement Class Member intends to appear, either in person or through counsel, at the final approval hearing, and, if through counsel, a statement identifying the counsel's name, postal address, phone number, and email address.

7.6     **Cooperation With Respect to Objections and Request for**

**Exclusions.**  With respect to any objections not filed with the Court, Settlement Class

Counsel, Defense Counsel and Liberty Life will promptly file any such objections with the

Court upon receipt.  With respect to any requests for exclusion, Settlement Class Counsel and

Defense Counsel will provide each other with a list of the names of persons who have

requested exclusion from the Settlement Subclass within 7 days after the end of the Exclusion

Period.

8.     **Releases**

8.1     **Release of Liberty Life.**  Upon entry of the Final Approval Order and

Judgment, the Settlement Class Representatives and the members of the Settlement Class

(including the Settlement Subclass), and their respective heirs, assigns, successors, agents,

attorneys, executors and representatives (the "Releasing Parties") shall be deemed to have, and

by operation of this Agreement and the Final Approval Order and Judgment shall have, fully,

finally, irrevocably and forever released Liberty Life and all of its past or present directors,

officers, employees, agents, insurers, shareholders, members, attorneys, advisors, consultants,

representatives, partners, affiliates, related companies, parents, subsidiaries (whether or not

wholly owned), predecessors, successors, and assigns (collectively, the "Liberty Life Released

Parties"), from any and all liabilities, claims, causes of action, damages (whether actual,

compensatory, statutory, punitive or of any other type), penalties, costs, attorneys' fees, losses or

demands, whether known or unknown, existing or suspected or unsuspected, that were or could

have been asserted against Liberty Life based on the factual allegations contained in the

Complaint and Amended Complaint filed in the Action and that relate to or arise out of Liberty

Life's offset of VA benefits from LTD benefits under its current LTD policies (the "Released

Claims").  This Agreement is not intended to release, and does not release, any claims that relate

to Liberty Life's offset of VA benefits under any revised LTD policy forms that may be

-16-

approved by regulators and issued by Liberty Life after the Settlement Effective Date, unless those claims are barred by collateral estoppel or *res judicata* principles.

8.2    **Release of Certain Plan Administrators by Settlement Class**.  Upon entry of the Final Approval Order and Judgment and the satisfaction of the below conditions, the Settlement Class Representatives and the members of the Settlement Class, and their respective heirs, assigns, successors, agents, attorneys, executors and representatives shall be deemed to have, and by operation of this Agreement and the Final Approval Order and Judgment shall have, fully, finally, irrevocably and forever released the Plan Administrators of any Plans insured by Liberty Life -- other than Hyundai -- (the "Released Plan Administrators") from any and all liabilities, claims, causes of action, damages (whether actual, compensatory, statutory, punitive or of any other type), penalties, costs, attorneys' fees, losses or demands, whether known or unknown, existing or suspected or unsuspected, that were or could have been asserted against the Released Plan Administrators based on the factual allegations contained in the Complaint and Amended Complaint filed in the Action, and that relate to or arise out of the offset of VA benefits from LTD benefits under Liberty Life's current LTD policies (the "Plan Administrator Released Claims").   The Release of the Plan Administrator Released Claims by the Settlement Class is conditioned upon the following:

(a)    The Plan Administrator must disseminate the Settlement Class Notice as set forth in Section 6.1(a) of this Agreement to the participants in its Plan(s);

(b)    The Plan Administrator (or any of its agents) must not impose any offset for or initiate or pursue any claim for reimbursement against any Settlement Class Member based on Liberty Life's current LTD policies.

(c)    Until the time that the terms of its LTD policy specifically identifies VA benefits as other income that may offset or reduce LTD benefits and a Certificate of Coverage, which specifically identifies VA benefits as other income that may offset LTD benefits, has been distributed to the participants of its Plan, the Plan Administrator (or anyone acting on behalf of

-17-

the Plan for which it is an Administrator) must not initiate or pursue any reimbursement claim against any Settlement Class Member related to an alleged overpayment of LTD benefits resulting from a Settlement Class Member's receipt, or eligibility to receive, VA benefits any time on or after January 1, 2008.

        8.3     **Release of Plan Administrators by Settlement Subclass**.  Upon entry of the Final Approval Order and Judgment and the satisfaction of the conditions in in this paragraph, the Settlement Class Representatives and the members of the Settlement Subclass, and their respective heirs, assigns, successors, agents, attorneys, executors and representatives, shall be deemed to have, and by operation of this Agreement and the Final Approval Order and Judgment shall have, fully, finally, irrevocably and forever released the Plan Administrators -- other than Hyundai -- from any and all of the Plan Administrator Released claims.  Members of the Class will receive the Settlement Subclass Notice as provided in Section 6.1(b) of this Agreement.  The Release of the Plan Administrator Released Claims by the Settlement Subclass is conditioned upon the following:  The Plan Administrator (or any of its agents) must not impose any offset for or initiate or pursue any claim against any Settlement Subclass Member related to the Subclass Member's receipt of or eligibility to receive VA benefits based on a disability incurred before the Settlement Effective Date.  Any Plan Administrator of Plans insured by Liberty Life --  other than Hyundai -- that satisfies this condition will be released as to the Released Claims by the Settlement Subclass Members.  The Release of any particular Plan Administrator is not dependent on all other Plan Administrators of Plans insured by Liberty Life satisfying the above conditions.

        8.4     **Limitation on Releases of Liberty Life Related Parties and the Released Plan Administrators.**  This Agreement is not intended to release, and does not release, any claims against Hyundai.  This Agreement is not intended to release, and does not release, any claims against any of the Liberty Life Released Parties or the Released Plan

-18-

Administrators under any Liberty Life's current or revised LTD policy that do not relate or arise out of the offset of VA benefits.

8.5     **Liberty Life's Defendants' Release of the Settlement Subclass.** Upon entry of the Final Approval Order and Judgment, the Liberty Life Released Parties shall be deemed to have, and by operation of this Agreement and the Final Approval Order and Judgment shall have, fully, finally, irrevocably and forever released the Settlement Class Representatives and the Settlement Subclass, from any and all claims or causes of action that relate to or arise out of any alleged overpayment of LTD benefits resulting from the Subclass Member's receipt of VA benefits as well as any costs, attorneys' fees, losses or demands, whether known or unknown, existing or suspected or unsuspected, that could have been asserted against the Settlement Class Representatives and the Settlement Subclass.

8.6     **Liberty Life's Defendants' Release of the Settlement Class.** Upon entry of the Final Order and Judgment the Liberty Life Released Parties shall be deemed to have, and by operation of this Agreement and the Final Order shall have fully, finally, and forever released, relinquished and discharged the Settlement Class Representatives, each Settlement Class Member and Settlement Class Counsel from each and every claim for attorneys' fees, costs, expenses or sanctions, that relate to the filing, commencement, prosecution or settlement of this Action whether such Claim arises under ERISA or any federal law, state law, foreign law, common law doctrine, rule, regulation or otherwise.

8.7     **Release of Unknown Claims.**  By operation of this Agreement and the entry of Final Approval Order and Judgment, and with regard to the Released Claims only, the releasing parties agree to and hereby waive any and all provisions, rights and benefits which they now have or in the future may be conferred to them by section 1542 of the California Civil Code ("Section 1542") or any comparable statutory or common law provision of any other jurisdiction against that relate to or arise out of Liberty Life's offset of VA benefits from LTD benefits under its current LTD policies.  Section 1542 reads as follows:

<u>CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE</u>:  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Although the releases granted under this Agreement are not general releases, the releasing parties nonetheless expressly acknowledge that, to the extent permitted by law, they are waiving in connection with the Released Claims as to the Liberty Life Released Parties only the protections of Section 1542 and of any comparable statutory or common law provision of any other jurisdiction..

9.  **Dismissal of Claims Against Liberty Life and Court's Retention of Jurisdiction**

The Final Approval Order and Judgment shall include provisions for (a) dismissal of all claims asserted against Liberty Life in the Action with prejudice, and (b) the Court's retention of jurisdiction over the Parties and all Settlement Class Members to enforce the terms of this Agreement and the Final Approval Order and Judgment.

10.  **Termination Provisions and Severability**

10.1  **Effect of Invalidity of Immaterial Provision.**  If any immaterial provision of this Agreement is declared by the Court to be invalid, void, or unenforceable, the remaining provisions of this Agreement will continue in full force and effect.  If the Court orders or proposes material modifications of, or additions to, this Agreement, its exhibits, any proposed order for preliminary or final approval and judgment, the Parties each agree to exercise their judgment in good faith and not reject proposed modifications that are merely technical or otherwise immaterial to the substance of the Agreement.

10.2  **Termination for Lack of Court Approval or Modification of Material Terms**.  If the Court refuses to approve this Class Action Settlement, grant Preliminary Approval Order or enter the Final Approval Order, or if the Court requires that any material term

-20-

of this Class Action Settlement Agreement be modified, or if the Agreement otherwise terminates as provided herein, and unless cured as described in Section 10.3 below: (i) the Agreement shall be of no force or effect; (ii) any Preliminary Approval Order and all of its provisions will be vacated; (iii) the Action will revert to the status that existed before this Agreement's execution date; (iv) any certification of the Settlement Class and/or the Settlement Subclass will be vacated without prejudice to Plaintiff or the Settlement Class Representatives' right or ability to file a motion for class certification; and (v) no term or draft of this Agreement, or any part or aspect of the Parties' settlement discussions, negotiations, or documentation (including without limitation any declarations and briefs filed in support of the motions for preliminary or final approval) will have any effect or be admissible into evidence, for any purpose, in this Action or any other proceeding.

         10.3    **Notice of Termination and Cure.**  If any of the events described in Section 10.2 above occur before the Settlement Effective Date, either Lead Settlement Class Counsel or Defense Counsel may void this Settlement by providing written notice to counsel for all other Parties to the Settlement within fourteen days (14) days after the event prompting the right to terminate.  The Notice of Termination as to the events set forth in Section 10.2 or any other portion of this Settlement will not become effective to void the Settlement if, within thirty (30) days of the event triggering the Notice of Termination, the Parties reach a written agreement to modify this Settlement Agreement to resolve the issue that gave rise to the Notice of Termination.

        11.    **<u>No Admission of Liability</u>**

         11.1    This Agreement constitutes a compromise and settlement of disputed claims.  No action taken by the Parties, either previously or in connection with the negotiations or proceedings connected with this Agreement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, an acknowledgement or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever to any

-21-

other party, or an acknowledgement or admission that the Action is appropriate for class treatment for any purpose other than this Agreement.

11.2     Neither this Agreement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Class Action Settlement, is, may be deemed to be, or may be used as an admission or evidence of the validity or infirmity of any claim made by the Settlement Class Representative, Settlement Class Members, or Settlement Class Counsel or any defense by Liberty Life.

11.3     Except as provided herein, neither this Agreement nor any of its terms shall be offered or used as evidence by any of the Parties, Settlement Class Members, or their respective counsel in the Action or in any other action or proceeding; provided, however, that nothing contained in this section shall prevent this Agreement from being used, offered, or received in evidence in any proceedings to enforce, construe or finalize the settlement and this Agreement, or from being used in defense of any claims released under the Agreement.

11.4     To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit or other proceeding which may be instituted, prosecuted, or attempted in breach of this Agreement or bring claims released under the Agreement.  Any Party or person released by this Agreement may file this Agreement and/or the Final Approval Order and Judgment in any action that may be brought against it in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim or issue preclusion or similar defense or counterclaim in any court or administrative or other tribunal.

## 12.  **Summary of Timeline**

The Parties will propose to the Court that the order granting preliminary approval of the settlement (Exhibit C) should include the following timeline regarding settlement:

| Last day for Liberty Life to send the Settlement Class Notice to its group policyholders | 30 days after the Preliminary Approval Date |
|---|---|
| Last day for Liberty Life to mail the Settlement Subclass Notice to Settlement Subclass Members | 30 days after the Preliminary Approval Date |
| Last day for Class Counsel to file motion for award of attorneys' fees and costs | 30 days after the Preliminary Approval Date |
| Last day for requests for exclusion from the Settlement Subclass to be postmarked by Settlement Subclass Members | 90 days after the Preliminary Approval Date |
| Last day for Settlement Class Members to file objections to the settlement | 90 days after the Preliminary Approval Date |
| Last day for Class Counsel to file motion for final approval of settlement | 120 days after the Preliminary Approval Date |
| Hearing on motion for final approval of settlement and application for attorneys' fees and costs | At least 150 days after the Preliminary Approval Date |

13.    **CAFA Notices**

13.1    **CAFA Notice.**  No later than 10 days following the filing of the Motion for Preliminary Approval, Liberty Life, at its own expense, shall prepare and provide notices of the Parties' proposed settlement as required by 28 U.S.C. § 1715.

13.2    **CAFA Notice Provided to Class Counsel.**  Defense Counsel will provide Settlement Class Counsel with a copy of the CAFA notice and materials within five (5) days after such notices have been sent.

14.    **Extensions of Time**

Unless otherwise ordered by the Court, Lead Class Counsel and Defense Counsel may jointly agree in writing to reasonable extensions of time to carry out any provisions of this Agreement.

15.    **Integration**

This Agreement and its exhibits constitutes a single, integrated written contract expressing the entire agreement of the Parties relating to the subject matter hereof, and all prior or contemporaneous agreements, understandings, representations and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged herein.  No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any party hereto, except as provided herein.  This Agreement may not be changed, altered or modified

-23-

except in writing and signed by Lead Class Counsel and Liberty Life, and may not be discharged except by performance in accordance with its terms or by a writing signed by Lead Class Counsel and Liberty Life.

16.    **Construction and Intent**

16.1    This Agreement is executed voluntarily by each of the Parties without any duress or undue influence on the part, or on behalf, of any of them.  This Agreement has been negotiated at arms-length by parties of equal bargaining power, and drafted jointly by Settlement Class Counsel and Defense Counsel.  Each of the Parties has had full opportunity to review and consider the contents of this Agreement, has read and fully understands the provisions of this Agreement, and has relied on the advice and representation of legal counsel of its own choosing.  In the event that a dispute arises with respect to this Agreement, no Party shall assert that any other Party is the drafter of this Agreement or any part hereof, for purposes of resolving ambiguities that may be contained herein.  If any provision of this Agreement shall be deemed ambiguous, such provision shall not be construed against any Party on the basis of the identity of the purported drafter of this Agreement or such provision hereof.

16.2    The Parties represent and agree that they have been advised to discuss this Agreement with an attorney, that they have carefully read and fully understand all provisions of this Agreement, that they are entering into this Agreement voluntarily and that they have the capacity to enter into this Agreement.  Further, the Parties represent and acknowledge that, in executing this Agreement, they do not rely and have not relied upon any representation or statement not set forth herein made by any of the Parties or any of the Parties' agents, representatives or attorneys with regard to the subject matter, basis or effect of this Agreement.

16.3    The various headings used in this Agreement are solely for the Parties' convenience and may not be used to interpret this Agreement.  The headings and the

-24-

formatting of the text in the definitions do not define, limit, extend or describe the Parties' intent or the scope of this Agreement.

16.4     The exhibits to this Agreement are integral parts of the Agreement and are incorporated into this Agreement as though fully set forth herein.  Any inconsistency between this Agreement and the attached exhibits will be resolved in favor of this Agreement.

16.5     The Recitals are incorporated by this reference and are part of this Agreement.

17.     **Later Discovered Facts**

The Parties acknowledge that they may later discover facts different from or in addition to those they now know or believe to be true regarding the matters released or described in this Agreement, and, even so, they agree that, except with respect to any representations made in this Agreement, the Agreement, including without limitation the releases and waivers contained herein, shall remain effective in all respects notwithstanding any later discovery of any different or additional facts.  The Parties assume any and all risk of any mistake in connection with the true facts involved in the matters, disputes or controversies released or described in this Agreement or with regard to any facts now unknown to the Parties relating thereto.

18.     **Cooperation**

The Parties acknowledge that it is their intent to consummate this Agreement and agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Agreement and to exercise their best efforts to obtain preliminary and final approval from the Court.

19.     **No Prior Assignments**

The Parties hereto represent, covenant and warrant that they have not assigned, transferred, encumbered or purported to assign, transfer or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights released and discharged by this Agreement.

-25-

20.   **Binding on Successors and Assigns**

This Settlement Agreement binds and benefits the Parties' respective beneficiaries, successors, assigns, legatees, heirs and personal representatives.

21.   **Signatories**

21.1   Each person executing this Agreement in a representative capacity represents and warrants that he or she is empowered to do so.

21.2   This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts. The Agreement may be executed by facsimile or email signature.

The foregoing is agreed to by the following.

Dated: August ___, 2016     **SETTLEMENT CLASS REPRESENTATIVES**

By: _____
      JAMES L. BUSH

Dated: August **5**, 2016     By: _____
      ADAM RIPKA

Dated: August ___, 2016     **LIBERTY LIFE ASSURANCE COMPANY OF BOSTON**

By: _____
      REBECCA SCHECHTER
      Its: Executive Vice President, Commercial Insurance and
             President, Liberty Mutual Benefits

-26-

20.   **Binding on Successors and Assigns**

This Settlement Agreement binds and benefits the Parties' respective beneficiaries, successors, assigns, legatees, heirs and personal representatives.

21.   **Signatories**

21.1   Each person executing this Agreement in a representative capacity represents and warrants that he or she is empowered to do so.

21.2   This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts.  The Agreement may be executed by facsimile or email signature.

The foregoing is agreed to by the following.

Dated: August _11_ , 2016      **SETTLEMENT CLASS REPRESENTATIVES**

By: _____
        JAMES L. BUSH

Dated: August ___, 2016

By: _____
        ADAM RIPKA

Dated: August ___, 2016      **LIBERTY LIFE ASSURANCE COMPANY OF BOSTON**

By: _____
        REBECCA SCHECHTER
        Its:  Executive Vice President, Commercial Insurance and
               President, Liberty Mutual Benefits

-26-

**FOR PLAINTIFFS ON BEHALF OF THE SETTLEMENT CLASSES**

**ROBERTS BARTOLIC LLP**

Dated: August 9, 2016

By: _____
    MICHELLE ROBERTS, ESQUIRE
    LIAISON SETTLEMENT CLASS COUNSEL

Dated: August 5, 2016

**COHEN MILSTEIN SELLERS & TOLL PLLC**

By: _____
    R. JOSEPH BARTON, ESQUIRE
    LEAD SETTLEMENT CLASS COUNSEL

APPROVED AS TO FORM
ONLY

**FOR DEFENDANT**

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**

Dated: August ___, 2016

By: _____
    FRANK FALZETTA, ESQUIRE
    ROBERT J. GUITE, ESQUIRE
    DEFENSE COUNSEL

-27-

477900834.10

20.    <u>Binding on Successors and Assigns</u>

This Settlement Agreement binds and benefits the Parties' respective beneficiaries, successors, assigns, legatees, heirs and personal representatives.

21.    <u>Signatories</u>

21.1    Each person executing this Agreement in a representative capacity represents and warrants that he or she is empowered to do so.

21.2    This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts.  The Agreement may be executed by facsimile or email signature.

The foregoing is agreed to by the following.

Dated: August ___, 2016        **SETTLEMENT CLASS REPRESENTATIVES**

By: _____
JAMES L. BUSH

Dated: August ___, 2016        By: _____
ADAM RIPKA

Dated: August _8_, 2016        **LIBERTY LIFE ASSURANCE COMPANY OF BOSTON**

By: _____
REBECCA SCHECHTER
Its: Executive Vice President, Commercial Insurance and
President, Liberty Mutual Benefits

-26-

**FOR PLAINTIFFS ON BEHALF OF THE SETTLEMENT CLASSES**

**ROBERTS BARTOLIC LLP**

Dated: August ___, 2016

By: _____
     MICHELLE ROBERTS, ESQUIRE
     LIAISON SETTLEMENT CLASS COUNSEL

Dated: August ___, 2016

**COHEN MILSTEIN SELLERS & TOLL PLLC**

By: _____
     R. JOSEPH BARTON, ESQUIRE
     LEAD SETTLEMENT CLASS COUNSEL

**APPROVED AS TO FORM ONLY**

**FOR DEFENDANT**

Dated: August 12, 2016

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**

By: _____
     FRANK FALZETTA, ESQUIRE
     ROBERT J. GUITE, ESQUIRE
     DEFENSE COUNSEL

-27-