1   R. Joseph Barton, CA Bar No. 212340
    **BLOCK & LEVITON LLP**
2   1735 20th St NW,
    Washington, DC 20009
3   Telephone: (202) 734-7046
    Fax: (617) 507-6020
4   Email: jbarton@blockesq.com

5   Michelle L. Roberts, CA Bar No. 239092
    **ROBERTS BARTOLIC LLP**
6   1050 Marina Village Pkwy., Ste. 105
    Alameda, CA 94501
7   Telephone: (510) 992-6130
    Facsimile:  (510) 280-7564
8   Email: mroberts@robertsbartolic.com

9   Attorneys for Plaintiff, the Class & Subclass

10

11

12

13

14                     **UNITED STATES DISTRICT COURT**

15                    **NORTHERN DISTRICT OF CALIFORNIA**

16                            **OAKLAND DIVISION**

17

18   JAMES L. BUSH                          Case No:  14-cv-1507-YGR-EDL

19              Plaintiff,                   **PLAINTIFF'S NOTICE OF MOTION AND
                                             MOTION FOR FINAL APPROVAL OF CLASS
20        vs.                                ACTION SETTLEMENT BETWEEN
                                             PLAINTIFF AND DEFENDANT LIBERTY
21   LIBERTY LIFE ASSURANCE COMPANY          LIFE ASSURANCE COMPANY OF BOSTON**
     OF BOSTON; HYUNDAI MOTOR
22   AMERICA
                                             Date:  February 28, 2017
23              Defendants.                  Time:  2:00 p.m.
                                             Courtroom 1, 4th Floor
24                                           Honorable Yvonne Gonzalez Rogers

25

26

27

28

SMRH:480658590.7

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on February 28, 2017 at 2:00 p.m., in Courtroom 1, 4th Floor of the Oakland Division of the United States District Court, Northern District of California, 1301 Clay St, Oakland, California, Plaintiff James L. Bush will and hereby does move the Court to do all the following:

(1)  Finally approve the Settlement Agreement dated August 12, 2016 between Plaintiff, on behalf of the Class previously certified by the Court, and Defendant Liberty Life Assurance Company of Boston;

(2)  Enter final judgment in this action in the form of the [Proposed] Order and Final Judgment submitted herewith; and

(3)  Retain continuing jurisdiction over the implementation, interpretation, administration, and consummation of the settlement.

This Motion is supported by the accompanying Memorandum of Points and Authorities, the Motion for Preliminary Approval of Class Action Settlement, the Proposed Order filed herewith, the Declarations of R. Joseph Barton, Michelle L. Roberts, and Ming Siegel, all the pleadings and documents on file with the Court in this action, and further evidence and argument as may be submitted prior to the Court's decision on this motion.

Dated:  January 25, 2017                    Respectfully submitted

By:   /s/ Michelle Roberts
Michelle L. Roberts (CA Bar No. 239092)
ROBERTS BARTOLIC LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, CA 94501
Telephone: (510) 992-6130
Facsimile:  (510) 280-7564
Email: mroberts@robertsbartolic.com

*Attorneys for Plaintiff. the Class & Subclass*

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES……………………………………………..1

I.    INTRODUCTION…………………………………………………………………..1

II.   SUMMARY OF SETTLEMENT TERMS ……………………………………………..1

III.  PROCEDURAL BACKGROUND……………………………………………………..4

   A. The Ninth Circuit Favors Settlement of Class Action Lawsuits That Are
      The Product of Arms-Length Negotiation……………………………………..6

   B. The Proposed Settlement is Fair, Reasonable, and Adequate……………………..7

      1. The Strength of Plaintiff's Case Compared to the Amount of
         Settlement Supports Approval of the Settlement……………………………..8

      2. The Risk, Expense, Complexity, and Likely Duration of Further
         Litigation Supports Approval of the Settlement……………………………..11

      3. The Risk of Maintaining Class Action Status throughout Trial
         Supports Approval of the Settlement………………………………………..12

      4. The Amount Recovered Supports Approval of the Settlement……………………...12

      5. The Extent of Discovery Completed and the Stage of Proceedings
         Supports Approval of the Settlement………………………………………..15

      6. The Experience and Views of Class Counsel Supports Approval of
         The Settlement………………………………………………………………15

      7. The Lack of a Governmental Investigation Supports Approval……………………..16

      8. The Reaction of Class Members to the Proposed Settlement
         Supports Approval of the Settlement………………………………………..17

   C. The Notice Fairly Advises the Class about the Terms of the Settlement………………17

   D. The Court Should Confirm Class Certification under Rules 23(b)(2) and (b)(3)……….19

IV.   CONCLUSION………………………………………………………………………19

1

2

# **TABLE OF AUTHORITIES**

**Page(s)**

3 Cᴀsᴇs

*Boyd v. Coventry Health Care Inc.*,
    299 F.R.D. 451 (D. Md. 2014)..................................................................................13

*In re Charles Schwab Corp. Sec. Litig.*,
    No. 08–1510, 2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) ..........................................8

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ..............................................................................17, 18

*Elliott v. Rolling Frito-Lay Sales, LP*,
    No. 11-01730, 2014 WL 2761316 (C.D. Cal. June 12, 2014) (31%) ...........................13

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980) *aff'd*, 661 F.2d 939 (9th Cir. 1981) ............................16

*In re First Capital Holdings Corp. Fin. Products Sec. Litig.*,
    No. MDL 901, 1992 WL 226321 (C.D. Cal. June 10, 1992) ......................................15

*In re Fremont Corp. Litig.*,
    No 07-2693, D.E. 277 & D.E. 286 (C.D. Cal. Aug. 10, 2011)......................................13

*Glass v. UBS Fin. Servs., Inc.*,
    No. 06-4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) *aff'd*, 331 F. App'x 452
    (9th Cir. 2009)......................................................................................................13

*In re Google Referrer Header Privacy Litig.*,
    87 F. Supp. 3d 1122 (N.D. Cal. 2015) ......................................................................17

*Greko v. Diesel U.S.A., Inc.*,
    No. 10-02576, 2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ......................................13

*Hannington v. Sun Life & Health Ins. Co.*,
    711 F.3d 226 (1st Cir. 2013) ..................................................................................10

*Hawthorne v. Umpqua Bank*,
    No. 11-CV-06700-JST, 2014 WL 4602572 (N.D. Cal. Sept. 15, 2014)...........................7

*In re Heritage Bond Litig.*,
    No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .........................8, 10, 11, 17

*Holbrooks v. Sun Life Assur. Co. of Canada*,
    570 F. App'x 831 (10th Cir. 2014) ..........................................................................10

SMRH:480658590.7

*In re Howrey LLP*,
   Case No. 14-03062, 2014 WL 3427304 (N.D. Cal. July 14, 2014)......................................6

*Johansson-Dohrmann v. Cbr Sys., Inc.*,
   No. 12-1115, 2013 WL 3864341 (S.D. Cal. July 24, 2013) .........................................11

*Khanna v. Intercon Sec. Sys., Inc.*,
   No. 09-2214, 2014 WL 1379861 (E.D. Cal. Apr. 8, 2014) .........................................13

*Linney v. Cellular Alaska P'ship*,
   No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997).........................8, 15

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002).........................................16

*In re McKesson HBOC, Inc. ERISA Litig.*,
   391 F. Supp. 2d 844 (N.D. Cal. 2005) .........................................19

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir.2000) .........................................11, 13

*Mehling v. New York Life Ins. Co.*,
   248 F.R.D. 455 (E.D. Pa. 2008).........................................13, 14

*Nat'l. Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ......................................... *passim*

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) .........................................6, 7, 8, 12

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................... *passim*

*Oppenlander v. Standard Oil Co.*,
   64 F.R.D. 597 (D. Colo. 1974) .........................................12

*In re Portal Software, Inc. Sec. Litig.*,
   No. 03-5138, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) (25%) .........................................13

*Reynolds v. Beneficial Nat'l Bank*,
   288 F.3d 277 (7th Cir. 2002) .........................................12

*Riley v. Sun Life & Health Ins. Co.*,
   657 F.3d 739 (8th Cir. 2011) .........................................10

*In re RJR Nabisco Sec. Litig.*,
   MDL No. 818, 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) .........................................16

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .........................................6, 16

-iii-

*State of W. Va. v. Chas. Pfizer & Co.*,
    314 F. Supp. 710 (S.D.N.Y. 1970), aff'd, 440 F.2d 1079 (2d Cir. 1971).....................................10

*Stratton v. Glacier Ins. Admin'rs, Inc.*,
    No. 1:02-cv-06213, 2007 WL 274423 (E.D. Cal. Jan. 29, 2007)..................................18

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1982) .....................................10

*In re Toys R Us-Del., Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014) .....................................6, 7

*Van Ba Ma v. Covidien Holding, Inc.*,
    No. 12-2161, 2014 WL 2472316 (C.D. Cal. May 30, 2014) .....................................17

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) .....................................6

*Vanwagoner v. Siemens Indus., Inc.*,
    No. 2:13-CV-01303-KJM-EFB, 2014 WL 7273642 (E.D. Cal. Dec. 17, 2014) .....................................7

*In re Veritas Software Corp. Sec. Litig.*,
    No. C-03-0283 MMC, 2005 WL 3096079 (N.D. Cal. Nov. 15, 2005), *vacated in
    part on other grounds*, 496 F.3d 962 (9th Cir. 2007) .....................................12, 15

*Williams v. Rohm & Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2011) .....................................13

*Woo v. Home Loan Grp. L.P.*,
    No. 07-202, 2008 WL 3925854 (S.D. Cal. Aug. 25, 2008) .....................................8

STATUTES

29 U.S.C. § 1001 *et seq.*.....................................1, 2, 3

CAFA, 28 U.S.C. § 1711, *et seq.*.....................................16

OTHER AUTHORITIES

Fed. R. Civ. P. 23 .....................................4, 6, 19

*Manual for Complex Litigation, Third*, § 30.41 (1995) .....................................6

*5 Moore Federal Practice*, § 23.85[2][b] .....................................8

SMRH:480658590.7

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff James L. Bush, individually and as the Court-appointed Class Representative, on behalf of the Settlement Classes, respectfully submits this Memorandum of Points and Authorities in support of his Motion for Final Approval of the Class Action Settlement.  Plaintiff previously submitted to this Court a proposed Settlement Agreement and Release (the "Settlement") of the above-captioned action (the "Action"), which was preliminarily approved on the record on September 27, 2016 (D.E. # 163).[1]  Subsequently, the Parties have taken steps to effectuate the Settlement and the Court's Order granting preliminary approval of the Settlement.  Plaintiff now respectfully requests the Court grant final approval of the Settlement.

## I.    INTRODUCTION

On April 1, 2014, Plaintiff brought this action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq*., on behalf of a class of veterans who were honorably discharged from service in the United States Armed Forces and now are participants in ERISA-governed long-term disability plan ("LTD Plan") with benefits funded by group long-term disability policies issued by Liberty Life ("LTD Policies").  Plaintiff challenged, among other things, Liberty Life's reduction of participants' long-term disability benefits ("LTD benefits") by the amount of benefits received from the Department of Veterans Affairs ("VA benefits").  Following over two years of contentious litigation, on August 12, 2016, Plaintiff and Liberty Life executed the Settlement, which provides for both a substantial monetary benefit exceeding 1.4 million dollars, and significant non-monetary benefits.  As previously described in the Motion for Preliminary Approval and as more fully explained below, this Settlement provides an excellent result for the Class without the risk and delay of further litigation.  *See e.g.*, D.E. No. 154 (Pl. Prelim. Approv. Mem.).

## II.    SUMMARY OF SETTLEMENT TERMS

The terms of the proposed Settlement provide both monetary and non-monetary

---

[1] The Settlement Agreement is attached as Exhibit 1 to Plaintiff's Notice of Motion and Motion for Class Certification, Preliminary Approval Of Class Action Settlement Between Plaintiff And Defendant Liberty Life Assurance Company Of Boston, And Class Settlement Notices (hereinafter cited to as "Agmt").  *See* D.E. No. 154-1-154-5.

1

considerations.  Agmt. § 3.  Under the Settlement, as of September 27, 2016, the date of preliminary approval of the Settlement by this Court, Liberty Life ceased reducing LTD benefits payable under the current version of its group LTD Policies provided under ERISA-governed employee welfare plans by the amount of VA benefits received by those participants for the same disabling condition. Agmt. § 3.1(a).

The Settlement does not prohibit Liberty Life from seeking regulatory approval of revised LTD policy forms *that specifically* identify that VA benefits  received may be applied to offset or reduce LTD benefits, and thereafter offsetting the amount of VA benefits received  pursuant to such approved and issued policy forms.  In the event that Liberty Life begins using these revised LTD policy forms, it will modify the letter that it sends to individuals whose claims for LTD benefits are payable under ERISA-governed employee welfare benefit plans to specifically identify that the amount of VA benefits received may offset or reduce LTD benefits.  Agmt. § 3.1(b)-(c).   Liberty Life will also explicitly identify VA benefits as an LTD benefit offset in the Certificate of Coverage, if that document continues to be provided to group policyholder customers, and in its written communications advising participants of their benefit awards.  *Id.*  In short, Liberty Life has agreed not to offset LTD benefits by the amount of VA benefits any Settlement Class Member receives until Liberty Life obtains the necessary regulatory approval of any revised LTD policies and agreed to make additional disclosures if the policy forms are revised.

The Settlement also provides that to the extent that any Settlement Class Member submits a claim to Liberty Life and that claim is approved, then any subsequently revised LTD policy form that would otherwise permit the offset of VA benefits will not be applied to that Settlement Class Member's claim.  Agmt. § 3.1(a).  In other words, Class Members who become disabled prior to the issuance of a revised policy with a VA offset provision will not be affected by the revised policy.

The Settlement requires Liberty Life to pay each member of the Settlement Subclass an amount equal to sixty percent (60%) of any VA benefit offset applied since January 1, 2008 to reduce that Settlement Subclass Member's LTD benefits through the Settlement Effective Date. Agmt. § 3.2(a).  Liberty Life will make the payments directly to the Subclass members and will bear all administrative expenses associated with making such payments.  Agmt. §§ 4.1 & 4.4.  The total

2

1  amount of all the settlement payments is $1,421,437.90.  Declaration of R. Joseph Barton ISO Final

2  Approval ("Second Barton Decl."), ¶ 2.  Liberty Life also agrees to release Plaintiff and other

3  members of the Settlement Subclass from claims for recoupment of any alleged overpayment of

4  LTD benefits that Liberty Life has determined VA benefits may offset.  Agmt. § 3.2(b).

5       In exchange for these benefits, the Settlement Class will release and dismiss with prejudice

6  all claims asserted in the Amended Complaint against Liberty Life arising out of or related to the

7  offset of VA benefits from LTD benefits under Liberty Life's current LTD policy forms.  Agmt.

8  § 8.1.  The Settlement Class will not release any claims that relate to Liberty Life's offset of VA

9  benefits under any revised LTD policy forms that may be approved by regulators and issued by

10  Liberty Life in the future, unless those claims are barred by collateral estoppel or *res judicata*

11  principles.  *Id.*  The Settlement Subclass will release and dismiss with prejudice all claims asserted in

12  the Amended Complaint against Liberty Life.  *Id.*  The Settlement Class, including the Settlement

13  Subclass, will release all claims against administrators of the LTD Plans ("Plan Administrators")

14  insured by Liberty Life[2] based on the factual allegations in the Amended Complaint.  *Id.* §§ 8.2 &

15  8.3.

16       The Settlement requires Liberty Life to provide the Settlement Class Notice to the Plan

17  Administrators with the request that they distribute the Settlement Class Notice to employees who

18  are LTD plan participants, in the same manner that other notices and Plan information are provided,

19  in order to obtain a release from claims asserted in the Amended Complaint.  Agmt. § 8.2(a).

20  Therefore, the Settlement provides an incentive for the Plan Administrators to provide the Settlement

21  Class Notice.  *Id.*  In addition, for the Plan Administrators to be released by the Settlement Class,

22  they must not impose any offset for or pursue any claim for reimbursement against any Settlement

23  Class Member based on Liberty Life's current LTD policies (Agmt. § 8.2(b)), and must not pursue

24  any offset or claim for reimbursement unless and until Liberty Life specifically identifies VA

25  benefits as income that may offset LTD benefits, including in the document titled Certificate of

26

27       [2] The Settlement excluded Defendant Hyundai Motor America ("Hyundai") from the group of
LTD Plan administrators; however, pursuant to a separate settlement reached between Plaintiff and

28  Hyundai, the Court dismissed Hyundai from this lawsuit with prejudice.  D.E. No. 184.

3

1   Coverage that it provides to its group policyholder customers, if Liberty Life continues to provide

2   such a document.  (Agmt. § 3.1(b)).

3          Finally, under the Settlement, Liberty Life will make a payment of $425,000 to resolve any

4   claims for attorneys' fees and costs.  Agmt. § 5.2.

5   **III.    PROCEDURAL BACKGROUND**

6          The full procedural history of this Action is described in Plaintiff's Unopposed Notice of

7   Motion and Motion for Class Certification, Preliminary Approval of Class Action Settlement

8   Between Plaintiff and Defendant Liberty Life Assurance Company of Boston, and Class Settlement

9   Notices ("Pl. Prelim. Approv. Mem.") filed on August 16, 2016.  *See* D.E. No. 154 at 4-6.  The

10  Court held a hearing on September 27, 2016, where it granted preliminary approval of the class

11  action settlement on the record.  D.E. No. 161 (Civil Minutes).  In the September 27, 2016 Order

12  Granting Plaintiff's Motion for Class Certification, Preliminary Approval of Class Action Settlement

13  Between Plaintiff and Defendant Liberty Life Assurance Company of Boston, and Settlement Class

14  Notices (the "Preliminary Approval Order"), the Court certified the following:

15
16      For settlement purposes, Counts III, IV, VI, X and XII are certified pursuant to Rule
        23(b)(2) of Federal Rule of Civil Procedure on behalf of the "Liberty Life Settlement Class"
17      defined as follows:

18          (a) Veterans who were honorably discharged from service in the United States
            Armed Forces and who are participants in ERISA-governed employee welfare
19          benefit plans that provide LTD benefits insured by group LTD policies issued
            by Liberty Life; and
20
            (b) the beneficiaries of such participants.
21
22      For settlement purposes, Count I is certified pursuant to Rule 23(b)(3) of the Federal Rules of
        Civil Procedure on behalf of the "Liberty Life Settlement Subclass" defined as follows:
23
        Members of the Settlement Class whose LTD benefits were reduced or offset by the amount
24      of VA benefits paid or payable to that Settlement Subclass Member from January 1, 2008
        through the Settlement Effective Date.
25

26  D.E. No. 163.  The Court appointed Plaintiff Bush as a Class Representative of the Liberty Life

27  Settlement Class and the Liberty Life Settlement Subclass (collectively "the Settlement Classes").

28  The Court appointed Absentee Settlement Class Member Adam Ripka as a Class Representative of

1    the Settlement Classes.  The Court also approved the Settlement Class Notice and Settlement

2    Subclass Notice (collectively, "the Notices") for dissemination per the terms of the Settlement.

3           On October 26, 2016, Liberty Life sent the approved Settlement Subclass Notice to the

4    Liberty Life Settlement Subclass members (or the representative of the estate of any deceased

5    settlement subclass member) via First Class U.S. Mail at the most current address known to Liberty

6    Life.  D.E. No. 180 (Declaration of Kerry Brooks) at ¶ 3.  It also sent an additional copy of the

7    Settlement Subclass Notice to a Class member at an updated address that Class Counsel provided to

8    Liberty Life.  *Id.* at ¶ 6.  On October 27, 2016, a website containing important documents related to

9    the lawsuit, including the information in the Notices, went live at www.llacobssettlement.com.

10   Second Barton Decl., ¶ 3.  The website was the product of collaboration between Class Counsel and

11   counsel for Liberty Life.  *Id.*  As of December 21, 2016, (nearly two months following mailing),

12   none of the settlement subclass notices Liberty Life sent were returned by the U.S. Postal Service as

13   undeliverable.  *Id.* at ¶ 7.

14          Additionally, Liberty Life identified all group policyholder customers who presently have

15   ERISA-governed LTD policies and sent those customers electronic correspondence on October 27,

16   2016 regarding the settlement along with the Settlement Class Notice for distribution to their

17   employees who are eligible for LTD coverage.  *Id.* at ¶ 4.  Liberty Life also sent notice to former

18   group policyholder customers either electronically or by First Class U.S. Mail.  *Id.* at ¶ 5.

19          In response to the Settlement Subclass Notice, one Settlement Subclass Member, Guy M.

20   Hendricks, filed an objection with the Court challenging the percentage of the settlement.  D.E. No.

21   178.  Mr. Hendricks' primary challenge to the settlement amount is that he should receive 100% of

22   the benefits Liberty Life required him to pay for the VA Benefit offset.  *Id.* at 1-2.  This is because

23   he alleges that Liberty Life required him to reimburse it by 100% of the benefits that Mr. Hendricks

24   received and it did so after Plaintiff challenged its policy by filing this lawsuit.  *Id.*  He further stated

25   that, "I understand that this is my objection and I agree to abide by the courts [sic] final ruling."

26   Other than the one objection from Mr. Hendricks, no other Class member filed an objection either

27   with the Court or Class Counsel.  Second Barton Decl., ¶ 4; *see also* Declaration of Ming Siegel.

28

5

IV.     **THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL**

Settlement is a strongly favored method for resolving disputes, especially in class action cases. *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *In re Toys R Us-Del., Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 448 (C.D. Cal. 2014) (explaining "a strong judicial policy [] favors settlements, particularly where complex class action litigation is concerned") (internal citations and quotations omitted). To protect the interests of the class, Federal Rule of Civil Procedure 23(e) provides that a class action cannot be settled without court approval. Fed. R. Civ. P. 23. "Approval under Rule 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l. Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing to *Manual for Complex Litigation, Third*, § 30.41, at 236–37 (1995)).

Pursuant to the Settlement and the Preliminary Approval Order (and as stated in the Notices), the time for filing objections has now passed and the Court received only one objection to the Settlement. No Settlement Subclass Members opted out of the Settlement. Accordingly, this Settlement is ready for Final Approval and should be finally approved by the Court.

**A. The Ninth Circuit Favors Settlement of Class Action Lawsuits That Are the Product of Arms-Length Negotiation.**

"[V]oluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice*, 688 F.2d at 625. Indeed, the Ninth Circuit "particularly" favors settlement in class action lawsuits. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008); *see also Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits"); *In re Howrey LLP*, Case No. 14-03062, 2014 WL 3427304, at *5 (N.D. Cal. July 14, 2014) (same).

Further, the Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. W. Publ'g*

*Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  One court has gone so far as to conclude that such agreements are "entitled to a presumption of fairness."  *In re Toys R Us-Delaware, Inc.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014).  "[I]ntrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.  *Officers for Justice*, 688 F.2d at 625.

This settlement is entitled to a presumption of fairness given that there was clearly no collusion here.  As detailed in the Motion for Preliminary Approval, the parties negotiated the terms of this Settlement over the course of fifteen months with the assistance of a private mediator.  D.E. 154 (Pl. Prelim. Approv. Mem.) at 9-11; D.E. No. 155 (Declaration of R. Joseph Barton ISO Motion for Preliminary Approval ("First Barton Decl.")), ¶¶ 6-12.  Following agreement on the principle terms of the Settlement in January 2016, Plaintiff and Liberty Life spent additional time negotiating the detailed terms of a formal agreement and finalizing them in the Settlement Agreement before its execution on August 12, 2016.  First Barton Decl. ¶ 12.  During this time, the Parties held a telephone conference with the Court in order to come to an agreement on contested terms.  *See* D.E. No. 144 (Civil Minutes).  Given the parties drawn out negotiations with the assistance of a neutral, the Settlement is non-collusive.  *Vanwagoner v. Siemens Indus., Inc.*, No. 2:13-CV-01303-KJM-EFB, 2014 WL 7273642, at *9 (E.D. Cal. Dec. 17, 2014); *see Hawthorne v. Umpqua Bank,* No. 11-CV-06700-JST, 2014 WL 4602572, at *5 (N.D. Cal. Sept. 15, 2014) (finding no collusion where "[t]he settlement was reached at arms-length with the use of a professional mediator and over the course of months of effort by both parties").

## B.  The Proposed Settlement is Fair, Reasonable, and Adequate.

To determine that the proposed class action settlement is fair, reasonable, and adequate, the Court will balance several factors which may include, among others, some or all of the following:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625 (citations omitted); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1040-41 (same); *In re Charles Schwab Corp. Sec. Litig.*, No. 08–1510, 2011 WL 1481424, at *4 (N.D. Cal. Apr. 19, 2011) (same). "'The relative degree of importance to be attached to any particular factor will depend upon . . . the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case.'" *Woo v. Home Loan Grp. L.P.*, No. 07-202, 2008 WL 3925854, at *3 (S.D. Cal. Aug. 25, 2008), *quoting Officers for Justice*, 688 F.2d at 625.

As shown below, all the relevant factors here weigh overwhelming in favor of approval.

### 1. The Strength of Plaintiff's Case Compared to the Amount of Settlement Supports Approval of the Settlement.

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *DIRECTV*, 221 F.R.D. at 526 (quoting 5 *Moore Federal Practice*, § 23.85[2][b]). In performing that balancing, "a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class." *Id.*; *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, *6 (N.D. Cal. July 18, 1997) ("While it remains a possibility that a more favorable result might have been achieved had class counsel pursued this case to trial and beyond, that is not for this Court to decide."). Indeed, the Ninth Circuit has explicitly warned against reaching a conclusion as to the merits of the case in analyzing a proposed class action settlement:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor [the Court of Appeals] is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wastefulness and expensive litigation that induce consensual settlements.

*Officers for Justice*, 688 F.2d at 625. Rather, the question is whether the settlement constitutes "a fair resolution of the issues in this case." *DIRECTV*, 221 F.R.D. at 526; *see also In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, *6 (C.D. Cal. June 10, 2005) (explaining that

1   in "most situations" the settlement must be "clearly inadequate" for this factor to weigh against

2   approval).

3          In this case, Plaintiff's and the Classes' claims turn on the question of whether Liberty Life

4   is permitted to offset VA Benefits based upon the language of the LTD policy.  Amended Compl., ¶

5   1.  Specifically, the question is whether Liberty Life is authorized to take the offset based on

6   Section 4 of the LTD Policy, which describes a covered person's "Benefits from Other Income"

7   that may be offset against the person's LTD benefits awarded under the Policy.  *Id.* at ¶ 64.

8   Benefits from Other Income include:

> 1. The amount for which the Covered Person is eligible under:
>    a. Workers' or Workmen's Compensation Law;
>    b. occupational disease law;
>    c. any compulsory benefit act or law; or
>    d. any other act or law of like intent.
>
> 2. The amount of any disability benefits which the Covered Person is eligible to receive under:
>    a. any other group insurance plan of the Sponsor;
>    b. any governmental retirement system as a result of his job with the Sponsor.
>
> 3. The amount of benefits the Covered Person receives under the Sponsor's Retirement Plan as follows: (a) The amount of any Disability Benefits, or Retirement Benefits the Covered Person voluntarily elects to receive as retirement payment under the Sponsor's Retirement Plan; and (b) the amount the Covered Person is eligible to receive as retirement payments when you reach the later of age 62, or normal retirement age as defined in the Sponsor's plan. [or]
>
> 4. The amount of Disability and/or Retirement Benefits under the United States Social Security Act, the Canada Pension Plan, the Quebec Pension Plan, or any similar plan or act, for which:
>    a. the Covered Person receives or is eligible for; and
>    b. his spouse, child or children receives or are eligible for because of his Disability; or
>    c. his spouse, child or children receives or are eligible for because of his eligibility for Retirement Benefits.
>
> These Benefits from Other Income, except Retirement Benefits, must be payable as a result of the same Disability for which we pay a benefit.

25   *Id.*  Liberty Life's position is that VA benefits are "any compulsory benefit act or law" or

26   "any other act or law of like intent."  *Id.* at ¶ 110-11.  Plaintiff's position is that VA Benefits

27   are not considered a compulsory benefit or similar to other compulsory benefits.  *Id.* at ¶¶

28   144-167.  Although Plaintiff is confident in the strength of his position that VA Benefits are

1    not offsetable under the terms of the LTD Policy, there is conflicting authority on this issue.

2    *Compare Riley v. Sun Life & Health Ins. Co.*, 657 F.3d 739, 742 (8th Cir. 2011) (holding

3    that VA Benefits are not subject to offset) and *Hannington v. Sun Life & Health Ins. Co.*,

4    711 F.3d 226, 233-34 (1st Cir. 2013) (same) with *Holbrooks v. Sun Life Assur. Co. of*

5    *Canada*, 570 F. App'x 831, 834-35 (10th Cir. 2014) (reaching different conclusion).  At the

6    hearing on preliminary approval, this Court commented that the outcome of this case was

7    far from a certain win for Plaintiff and the Class.  Second Barton Decl., ¶ 5.

8          Despite Class Counsel's confidence in the strength of the claims, there is certainly no

9    guarantee that Plaintiff and the Class would be successful on summary judgment or at trial, and even

10    if successful in the trial court, there is no certainty that any judgment in favor of Plaintiff would

11    necessarily be affirmed on appeal.  Even when class counsel is "confident of the strength of their

12    case, it is imprudent to presume ultimate success at trial and thereafter."  *Heritage Bond Litig.*, 2005

13    WL 1594403, *7; *State of W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970),

14    aff'd, 440 F.2d 1079 (2d Cir. 1971) ("It is known from past experience that no matter how confident

15    one may be of the outcome of litigation, such confidence is often misplaced.").  Indeed, there are

16    notable instances in which a class action settlement was rejected and the class subsequently lost on

17    the merits or recovered less than it would have under the proposed settlement. *See Heritage Bond*

18    *Litig.*, 2005 WL 1594403 *7 n.5 (discussing one such instance); *In re Sumitomo Copper Litig.*, 189

19    F.R.D. 274, 282 (S.D.N.Y. 1982) (discussing others).  Even if this Court was to value highly the

20    strength of Plaintiff's claims at this point, there is no guarantee that this would be the Court's

21    ultimate view of the merits or that, even if this was the Court's ultimate view, that such a view

22    would be adopted on appeal.  Because of the risk that Plaintiff and the Class would receive nothing

23    at judgment, the Settlement, which provides reimbursement of 60% of VA Benefits offset through

24    the date of preliminary approval along with the non-monetary relief described above is a reasonable

25    compromise.  Thus, this factor weighs heavily in support of approval.

26    / / /

27

28

1
2

**2.  The Risk, Expense, Complexity, and Likely Duration of Further Litigation Supports Approval of the Settlement.**

3

In assessing whether the proposed settlement is fair, reasonable, and adequate, "the Court

4

must balance against the continuing risks of litigation (including the strengths and weaknesses of the

5

plaintiff's case), the benefits afforded to members of the Class, and the immediacy and certainty of a

6

substantial recovery."  *Johansson-Dohrmann v. Cbr Sys., Inc.*, No. 12-1115, 2013 WL 3864341, at

7

*4 (S.D. Cal. July 24, 2013), *citing In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th

8

Cir.2000).

9

The expense, risk, and length of continued proceedings necessary to prosecute this case

10

against Liberty Life through trial and appeals are substantial.  Second Barton Decl., ¶ 5.  If this

11

litigation were to continue, it might not be finally resolved for years given the amount of additional

12

time needed to reach trial.  *See* D.E. No. 146 (Revised Stip. Setting Case Schedule).  Although

13

considerable fact discovery has been completed, and Plaintiff had already filed his motion for class

14

certification, expert discovery had not yet been completed and would likely consume more time, as

15

would Liberty Life's opposition to class certification, which was not filed due to the settlement.  *See*

16

D.E. No. 146 (Revised Stip. & Order Withdrawing Class Cert. Mot.).  Plaintiff would also have to

17

prevail on summary judgment or at least defeat Defendants' motion for summary judgment.

18

Assuming all of those hurdles were overcome, the parties would then engage in evidentiary motions

19

and trial if the matter were not resolved on summary judgment.  Prosecuting this case through trial

20

would both entail significant risks and require significant expenditures for experts by all parties and

21

countless hours of attorney time.  And even if Plaintiff were to prevail at trial, Liberty Life would

22

undoubtedly appeal any adverse decision to the Ninth Circuit and, if it lost there, could seek *en banc*

23

review or a writ of certiorari from the United States Supreme Court or both.  Such appeals would be

24

time consuming and might lead to the reversal, in whole or in part, of any favorable verdict.  In

25

*DIRECTV*, the settlement was reached on "the eve of trial;" nonetheless, the court recognized that

26

avoiding a trial and the subsequent appeals in a complex case "strongly militates in favor of

27

settlement rather than further protracted and uncertain litigation."  *DIRECTV*, 221 F.R.D. at 527;

28

*Heritage Bond Litig.*, 2005 WL 1594403, *7 (same).

11

1    If this litigation were to continue, there is a real possibility that the Settlement Subclass

2   members might collect little or nothing and would not receive any payment until well into the future.

3   By contrast, the proposed settlement provides a prompt, substantial and assured cash benefit to the

4   Settlement Subclass members within a few months.  Agmt. § 4.2.  A prompt, certain recovery is

5   considerably more valuable to the Settlement Subclass members than an uncertain recovery at some

6   undetermined point in the future.  The *DIRECTV* court colorfully summarized the law on this factor,

7   as follows: "It has been held proper to take the bird in hand, stead of a prospective flock in the

8   bush." *DIRECTV*, 221 F.R.D. at 526 (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597 at

9   624 (D. Colo. 1974)); *see also Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002)

10   ("To most people, a dollar today is worth a great deal more than a dollar ten years from now.").  This

11   is especially true for the Settlement Subclass Members who are receiving long-term disability

12   benefits because they are unable to return to work and are only receiving a portion of their pre-

13   disability earnings.  Accordingly, the factors of risk, expense, complexity, and likely duration of

14   further litigation weigh heavily in favor of approving the Settlement.

15
    ### 3.  The Risk of Maintaining Class Action Status throughout Trial Supports Approval of the Settlement.

16    Where there is no risk involved in maintaining class action status, this factor simply "favors

17   neither approval nor disapproval of the settlement." *In re Veritas Software Corp. Sec. Litig.*, No. C-

18   03-0283 MMC, 2005 WL 3096079, at *5 (N.D. Cal. Nov. 15, 2005), *vacated in part on other*

19   *grounds*, 496 F.3d 962 (9th Cir. 2007).  The Parties reached a settlement prior to Liberty Life's filing

20   of an opposition to Plaintiff's motion for class certification.  D.E. No. 146.  In connection with the

21   preliminary approval of the settlement, the Court certified the Settlement Classes for settlement

22   purposes.  D.E. No. 163.  Had the case not settled, Liberty Life almost assuredly would have

23   opposed class certification.  Although Plaintiff's counsel believes that the claims are suitable for

24   certification, there was certainly a risk that the Court may not have certified the claims.

25
    ### 4.  The Amount Recovered Supports Approval of the Settlement.

26    While courts have approved class action settlements with cash components amounting to

27   only a small fraction of the potential recovery, *see Officers for Justice,* 688 F.2d at 628, this is not

28   such a case.  Here, the cash component of the settlement to Settlement Subclass Members represents

1   a significant 60% percent of the amount of VA Benefits Liberty Life offset or recouped through the

2   date of preliminary approval.  Agmt. § 3.2. This compares very favorably with settlements that have

3   been approved throughout this Circuit.  *E.g.*, *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d at 459

4   (17%); *Elliott v. Rolling Frito-Lay Sales, LP,* No. 11-01730, 2014 WL 2761316, at *7 (C.D. Cal.

5   June 12, 2014) (31%); *Khanna v. Intercon Sec. Sys., Inc.,* No. 09-2214, 2014 WL 1379861, at *8

6   (E.D. Cal. Apr. 8, 2014) (19% of maximum damages); *Greko v. Diesel U.S.A., Inc.,* No. 10-02576,

7   2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) (24%); *In re Omnivision Technologies, Inc.,* 559

8   F. Supp. 2d at 1042 (9% of maximum damages); *In re Portal Software, Inc. Sec. Litig.,* No. 03-5138,

9   2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007) (25%); *Glass v. UBS Fin. Servs., Inc.,* No. 06-

10  4068, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (25% of maximum damages) *aff'd,* 331 F.

11  App'x 452 (9th Cir. 2009). The recovery percentage here also exceeds numerous approved ERISA

12  class action settlements that recovered far, far less.  *In re Fremont Corp. Litig.*, No 07-2693, D.E.

13  277 at 10 & D.E. 286 (C.D. Cal. Aug. 10, 2011) (approving settlement recovering 11% of maximum

14  losses) (Second Roberts Decl., ¶ 2, Exh. 1); *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 463

15  (D. Md. 2014) (approving settlement that recovered 3.2% of estimated maximum damages);

16  *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011) (settlement recovered

17  24.3% of maximum damages); *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa.

18  2008) (20% recovery).  Thus, even without taking into account the other benefits obtained by the

19  Settlement; this is an exceptional result for the Class.

20        But there are other benefits to the settlement that will result in more money in Settlement

21  Subclass members' pockets.  As of the Preliminary Approval Date, Liberty Life will not claim any

22  offset or reduce a participant's LTD benefits by the amount of VA benefits that the Settlement Class

23  Member received.  Agmt. § 3.1.  Liberty Life will also not seek reimbursement for any alleged

24  overpayment of LTD benefits resulting from a participant's receipt of VA benefits under the current

25  version of its group LTD policies funding LTD benefits in ERISA-governed plans.  *Id.*  Liberty Life

26  may seek regulatory approval of revised LTD policy forms that specifically identify VA benefits as

27  an offset, but Liberty Life will not apply the offset to any participant who has an approved LTD

28

13

1   claim with a date of disability (as defined in the applicable group LTD policy) prior to the issuance

2   of the revised LTD policy.  Agmt. § 3.1(a).

3       With respect to Mr. Hendricks' objection, his only complaint with the 60% reimbursement is

4   that Liberty Life required him to reimburse it 100% of VA benefits it claimed as an offset, and it did

5   so after it had been put on notice by this lawsuit that the offset was in error.  D.E. No. 178 at 1-2.

6   However, Mr. Hendricks' objection does not undermine the excellent result that this provides to

7   Plaintiff and the Class.  First, Mr. Hendricks' request for 100% reimbursement does not factor in the

8   risk of losing and receiving nothing.  Although Liberty Life may have been on notice that there was

9   a challenge to its VA benefit offset, as noted above, the authority is mixed on whether or not the

10  offset is permissible.  Second, Mr. Hendricks ignores that the timing of the cessation of the offset

11  was a product of compromise during the settlement negotiations.  Under the typical settlement, a

12  defendant does not agree to do anything (or cease doing something) until after the settlement is

13  completely final – and in the context of a class action, that means after final approval has been

14  granted and the time for an appeal by any class member has either expired or been resolved.  But

15  under the terms of the Settlement in this case, Liberty Life agreed to cease taking any VA benefit

16  offsets once the settlement received preliminary approval.  Agmt. § 3.  That, of course, meant that

17  Liberty Life could continue to claim VA benefit offset until the date of preliminary approval.  *See*

18  *id.*.  Mr. Hendricks will receive most of his VA benefit that Liberty Life  recouped or offset through

19  the date of preliminary approval and he will not see any VA benefit offset applied to his claim after

20  September 27, 2016.  *Id.*  While Plaintiff Bush, Class Representative Ripka and Class Counsel

21  would like to have seen 100% of the offsets returned, they recognize that insisting on that amount

22  would provide no incentive for Liberty Life to settle this case – at least not until there were

23  significant findings on the merits.  Finally, Subclass members like Mr. Hendricks had the option to

24  exclude themselves from the case.  Agmt. § 7.  If Mr. Hendricks truly believed that his claims were

25  strong enough that there was a virtual certainty that they would have resulted in a 100% recovery of

26  the offsets, he could have opted out and pursued his claim separately.  As such, Mr. Hendricks'

27  desire for more money should not diminish the overwhelming weight of this factor in favor of

28  approving the Settlement.

1

2

### 5.   The Extent of Discovery Completed and the Stage of Proceedings Supports Approval of the Settlement.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

The amount of discovery and stage of proceedings favor approval of a settlement where they demonstrate counsel's familiarity with the case and enough information to make informed decisions. *See Linney*, 151 F.3d at 1239; *Omnivision*, 559 F. Supp. 2d at 1042.  As explained in the Motion for Preliminary Approval, the settlement was not reached until Plaintiff's counsel had conducted substantial discovery.  Pl. Prelim. Approv. Mem. at 9-10.  Plaintiff's counsel reviewed thousands of pages of documents, met and conferred with Liberty Life on discovery matters, moved to compel Liberty Life to provide additional responses to two interrogatories, and took the deposition of a Benefits Specialists for Hyundai responsible for the administration of the company's health and welfare benefits.  *Id.*; Pl's. Mot. to Compel (ECF No. 81).  The Parties reached the principle terms of the Settlement only (a) after Plaintiff had received and reviewed documents produced by Liberty Life as part of its Rule 26(a) initial disclosures and responses to Plaintiff's requests for production of documents and (b) after Plaintiff had received information provided by Liberty Life about the LTD Policies issued by Liberty Life and the individuals whose LTD benefits Liberty Life has determined may be reduced by the amounts those individuals received in VA Benefits.  Pl. Prelim. Approv. Mem. at 10.  This Court also required Plaintiff's counsel to file an explanation of the elements of each of the claims in the case, which necessitated counsel considering the amount and type of proof that would be required.  D.E. No. 110.  At the time that they negotiated settlement, Class Counsel had more than sufficient fact discovery to understand the nature of the claims, Defendants' likely arguments and defenses in response and to understand the evidence.  As such, this factor militates in favor of approval of the Settlement.

23

24

### 6.   The Experience and Views of Class Counsel Supports Approval of the Settlement.

25

26

27

28

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *DIRECTV*, 221 F.R.D. at 528; *see also Veritas*, 2005 WL 3096079 *3 (expressing a similar statement); *In re First Capital Holdings Corp. Fin. Products Sec. Litig.*, No. MDL 901, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992) (finding

1    belief of counsel that the proposed settlement represented the most beneficial result for the class to

2    be a compelling factor in approving settlement).  Indeed, "the fact that experienced counsel involved

3    in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."

4    *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) *aff'd*, 661 F.2d 939 (9th Cir.

5    1981); *see also Omnivision*, 559 F. Supp. 2d at 1043 ("The recommendations of plaintiffs' counsel

6    should be given a presumption of reasonableness." (citations and quotations omitted)).  Absent fraud

7    or collusion, the trial judge "should be hesitant to substitute its own judgment for that of counsel."

8    *DIRECTV*, 221 F.R.D. at 527.  The extensive experience of Class Counsel in representing plaintiffs

9    in class action litigation generally and in employee benefits ERISA litigation in particular has been

10   set forth previously.  *See e.g.*, D.E. No. 119 (Pl. Mot. For Class Cert.) & Pl. Prelim. Approv. Mem.

11   Plaintiff's counsel believe that the proposed Settlement is an excellent result and that they received

12   sufficient discovery to reach that conclusion.  D.E. No. 155 (First Barton Decl.) ¶ 16; D.E. No. 156

13   (First Roberts Decl.) ¶ 2; Second Roberts Decl., ¶ 2.

14              **7.   The Lack of a Governmental Investigation Supports Approval**

15            This case was not assisted in any way by any governmental inquiry or prosecution.

16   Accordingly, this was not a case where Plaintiff could ride the coattails of a governmental agency's

17   investigation and findings.  *E.g., Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 360

18   (S.D.N.Y. 2002) (noting with approval that settlement "negotiations were made without the benefit

19   of any governmental or agency investigation or prosecution"); *In re RJR Nabisco Sec. Litig.*, MDL

20   No. 818, 1992 WL 210138, at *8 (S.D.N.Y. Aug. 24, 1992) (approving settlement and noting that

21   plaintiffs' counsel, not a governmental agency, exclusively developed the facts in aid of the

22   plaintiffs' case).  A settlement obtained without the government's help is a factor in favor of

23   approval.  *W. Publ'g Corp.*, 563 F.3d at 964.

24            Further, under CAFA, 28 U.S.C. § 1711, *et seq.*, Liberty Life directed Epic Legal Noticing to

25   send the required CAFA notice to 57 officials, which included the Attorney General of the United

26   States and the state Insurance Commissioners of each of the 50 states, the District of Columbia and

27   the U.S. Territories.  D.E. No. 181 (Declaration of Stephanie J. Fiereck, Esq. on Implementation of

28

16

CAFA Notice).  No government agency has raised a concern or sought to intervene.  Because Epic complied with the CAFA notice requirement on August 25, 2016 and no objections from a government official have been received, this factor favors the settlement.  *In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1134 (N.D. Cal. 2015); *see also Van Ba Ma v. Covidien Holding, Inc.*, No. 12-2161, 2014 WL 2472316, at *4 (C.D. Cal. May 30, 2014).

### 8.   The Reaction of Class Members to the Proposed Settlement Supports Approval of the Settlement.

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *DIRECTV*, 221 F.R.D. at 529.  Even when a small percentage of class members raise objections, a small number of objections actually weighs *in favor of* approving the settlement.  *Id.* (finding that where 47 persons who constituted less than 1% of class members filed objections, this raises a factor in favor of settlement); *Heritage Bond Litig.,* 2005 WL 1594403, *10 (finding presence of only one objection weighed in favor of the settlement); *see Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 class members objected and 500 opted-out).  Here, only Mr. Hendricks filed an objection to the settlement and no one opted out.  Mr. Hendricks is only one of eighty Settlement Subclass Members who received the notice of the Settlement.  He constitutes 1.25% of the Subclass and an infinitesimal percentage of the thousands of persons who constitute the Class.   Accordingly, the reaction by the Class to the Settlement supports approval of the Settlement.

### C.  The Notice Fairly Advises the Class about the Terms of the Settlement.

As explained in Plaintiff's Motion for Preliminary Approval (D.E. No. 154), the precise form of Notice to the Class is discretionary, but courts and commentators generally conclude that an adequate Notice provides the following information:  (1) descriptions of the facts underlying the action and of the class; (2) a description of the terms of the settlement; (3) disclosure of any benefits provided to class representatives; (4) information regarding attorneys' fees; (5) the time and place of the final hearing; (6) counsel's contact information and instructions on how to object and/or make inquires; and (7) explanation of the procedure for allocation.  Pl. Prelim. Approv. Mem. at 22-23; *see*

1    *Churchill,* 361 F.3d at 575 (finding notice sufficient if it "*generally* describes the terms of the

2    settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

3    forward and be heard.") (emphasis added).

4          As another court in this Circuit explained, the Class Notice should meet the standards of both

5    "clarity and conciseness." *Stratton v. Glacier Ins. Admin'rs, Inc.,* No. 1:02-cv-06213, 2007 WL

6    274423, *15 (E.D. Cal. Jan. 29, 2007).  Here, the Class Notices meet these standards.  The

7    Settlement Class Notice is 7 pages and provides detailed information about the Settlement.  D.E. No.

8    154-2.  The Settlement Subclass Notice is 10 pages and also provides detailed information about the

9    Settlement.  D.E. No. 154-3.  On October 26, 2016, in accordance with the Settlement and the

10   Court's Order, Liberty Life sent the approved notice to the settlement subclass members (or the

11   representative of the estate of any deceased settlement subclass member) via First Class U.S. Mail at

12   the most current address known to Liberty Life.  Brooks Decl., ¶ 3.  It also sent an additional copy of

13   the settlement subclass notice to a Class member at an updated address that Class Counsel provided

14   to Liberty Life.  *Id.* at ¶ 6.  As of December 21, 2016 (nearly two months following mailing), none

15   of the settlement subclass notices Liberty Life sent were returned by the U.S. Postal Service as

16   undeliverable.  *Id.* at ¶ 7.  Both Notices directed Class Members to a website that went live on

17   October 27, 2015, www.LLACOBSettlement.com, which contains information about the Settlement

18   and access to important case-related documents.  D.E. Nos. 154-2, 154-3.  Additionally, Liberty Life

19   identified all group policyholder customers who presently have ERISA-governed LTD policies and

20   sent those customers electronic correspondence on October 27, 2016 regarding the settlement along

21   with the settlement class notice for distribution to their employees who are eligible for LTD

22   coverage.  *Id.* at ¶ 4.  Liberty Life also sent notice to former group policyholder customers either

23   electronically or by First Class U.S. Mail.  *Id.* at ¶ 5.

24         The Notices and their distribution constituted the best practicable notice to members of the

25   Settlement Classes, was reasonably calculated to apprise members of the Settlement Classes of

26   pertinent information, and was reasonable and constituted due, adequate and sufficient notice to all

27   persons entitled to be provided with notice.  Accordingly, the Notices satisfy the requirements of the

28

18

1  Federal Rules of Civil Procedure 23(c)(2) and (e), the United States Constitution (including the Due

2  Process Clause), and any other applicable law.

3        **D.  The Court Should Confirm Class Certification under Rules 23(b)(2) and (b)(3).**

4        The Court preliminarily certified the Liberty Life Settlement Class under Rule 23(b)(2) and

5  the Liberty Life Settlement Subclass under Rule 23(b)(3) for settlement purposes only.  D.E. 163 at

6  ¶¶ 1, 2.  Nothing has changed about the Class since the preliminary certification was granted and no

7  Class Member has objected to the certification.  As described in detail in the Preliminary Approval

8  Memorandum, this settlement is especially well-suited for certification under Rule 23(b)(2) and

9  (b)(3).  Pl. Prelim. Approv. Mem. at 15-22.

10        The Notices, as approved by the Court and implemented by Liberty Life, provided detailed

11  information about the settlement, including:  (1) a description of the litigation and the proceedings;

12  (2) a comprehensive summary of its terms; (3) notice of Class Counsel's intent to request attorney's

13  fees and reimbursement of expenses up to $425,000; (4) detailed information about the Released

14  Claims; and (5) information on how to object to certification, the settlement, or the request for fees

15  and expenses.  D.E. Nos. 154-2, 154-3.  In addition, the Notices provided information about how to

16  receive additional information.  *Id.*  It also provided Class Members with contact information for

17  Class Counsel, information on the email address for inquiries, and a website address for further

18  information.  *Id.*

19        The forms and methods of notice employed here constitute valid, due, and sufficient notice to

20  members of the Class.  *E.g.*, *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 844, 848

21  (N.D. Cal. 2005).  For all the reasons stated above, the forms and methods of notice satisfy the

22  requirements of Rule 23 and due process. Accordingly, certification should be confirmed for

23  purposes of final approval of the settlement.

24  **V.  CONCLUSION**

25        For all the foregoing reasons and taking into consideration the interest of the Class in timely

26  relief and the expense and uncertain outcome of continued litigation, the proposed Settlement should

27  be finally approved. Plaintiff requests that the Court:

28        (1)  Finally approve the Settlement Agreement dated August 12, 2016 between Plaintiff,

on behalf of the Class previously certified by the Court, and Defendant Liberty Life Assurance Company of Boston;

(2)     Enter final judgment in this action in the form of the [Proposed] Order and Final Judgment submitted herewith; and

(3)     Retain continuing jurisdiction over the implementation, interpretation, administration, and consummation of the settlement.

Dated:  January 25, 2017                    Respectfully submitted

By:   /s/ Michelle L. Roberts
Michelle L. Roberts  (CA Bar No. 239092)
ROBERTS BARTOLIC LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, CA 94501
Telephone: (510) 992-6130
Facsimile:  (510) 280-7564
Email: mroberts@robertsbartolic.com

***Attorneys for Plaintiff, the Class & Subclass***